# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

CARNEGIE INSTITUTION OF WASHINGTON and
M7D CORPORATION,

               Plaintiffs,

     v.

FENIX DIAMONDS LLC,

               Defendant.

Case No. 1:20-cv-00200 (JSR)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 1

        A.   Factual Background .................................................................................. 1

        B.   Plaintiffs' Patents ..................................................................................... 2

        C.   Procedural History ................................................................................... 3

III.    LEGAL STANDARDS ........................................................................................... 4

IV.     PLAINTIFFS' COMPLAINT MEETS THE REQUIREMENTS OF *IQBAL* AND *TWOMBLY*. .................. 4

        A.   Plaintiffs have adequately pleaded direct infringement. .................................................. 4

        B.   Plaintiffs have adequately pleaded inducement of infringement. ................................... 10

        C.   Plaintiffs have adequately pleaded willful infringement.................................................. 13

        D.   At a minimum, Plaintiffs should be granted leave to replead. ....................................... 15

V.      CONCLUSION....................................................................................................... 15

TABLE OF AUTHORITIES

CASES

*3D Sys., Inc. v. Formlabs, Inc.*,
   No. 13 CIV. 7973, 2014 WL 1904365 (S.D.N.Y. May 12, 2014)....................................12, 13

*3rd Eye Surveillance, LLC v. United States*,
   124 Fed. Cl. 438 (2015) ...........................................................................................................9

*Artrip v. Ball Corp.*,
   735 F. App'x 708 (Fed. Cir. 2018) ...........................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................4, 10

*BioMérieux, S.A. v. Hologic, Inc.*,
   No. CV 18-21 (LPS), 2018 WL 4603267 (D. Del. Sept. 25, 2018)..........................................8

*Carson Optical Inc. v. eBay Inc.*,
   202 F. Supp. 3d 247 (E.D.N.Y. 2016) ..............................................................................10, 12

*CG Technology Development, LLC v. Zynga, Inc.*,
   No. 16-cv-859-RCJ-VCF, 2017 WL 662489 (D. Nev. Feb. 17, 2017) .............................14, 15

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017).........................................................................................12, 13

*ColorQuick, L.L.C. v. FedEx Office & Print, Servs., Inc.*,
   No. 09-cv-572, 2010 WL 11628964 (E.D. Tex. May 21, 2010) ........................................11, 15

*Dresser, LLC v. VRG Controls, LLC*,
   No. 18 C 1957, 2018 WL 10426611 (N.D. Ill. Nov. 28, 2018)................................................8

*Gamevice, Inc. v. Nintendo Co.*,
   No. 18-CV-01942-RS, 2018 WL 5310792 (N.D. Cal. Aug. 6, 2018) ..............................14, 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)...........................................................................................................10, 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016).............................................................................................................13

*Holotouch, Inc. v. Microsoft Corp.*,
    No. 17 CIV. 8717 (AKH), 2018 WL 2290701 (S.D.N.Y. May 18, 2018) ....................4, 9, 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)...........................................................................................11

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) .........................................13

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013)........................................................................................7, 8

*L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*,
    No. 16-CV-06534-FPG, 2016 WL 8813198 (W.D.N.Y Sept. 16, 2016) ................................9

*LaserDynamics USA, LLC v. Cinram Group, Inc.*,
    No. 15 CIV. 1629 (RWS), 2015 WL 6657258 (S.D.N.Y. Oct. 30, 2015)........................12, 13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)............................................................................................7

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) .......................................................................................9

*Macronix Int'l Co. v. Spansion Inc.*,
    No. 3:13CV679-REP, 2013 WL 5741683 (E.D. Va. Oct. 2, 2013)..........................................9

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed Cir. 2005)...........................................................................................10

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
    No. CV 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017).......................7, 9, 15

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)............................................................................................4

*Nichia Corp. v. VIZIO, Inc.*,
    No. 2:16-CV-1453-JRG, 2017 WL 3836141 (E.D. Tex. July 24, 2017)..................................7

*NNCrystal US Corp. v. Nanosys, Inc.*,
    No. CV 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020) ........................................7

*Official Publ'ns, Inc. v. Kable News Co.*,
    884 F.2d 664 (2d Cir. 1989)................................................................................................9

*Polaris PowerLED Techs., LLC v. Vizio, Inc.*,
    No. SACV181571 JVS, 2019 WL 3220016 (C.D. Cal. May 7, 2019)....................................11

*Signify N. Am. Corp. v. Axis Lighting Inc.*,
No. 19cv5516 (DLC), 2020 WL 1048927 (S.D.N.Y. Mar. 4, 2020)......................................14

*Susan McKnight, Inc. v. United Indus. Corp.*,
273 F. Supp. 3d 874 (W.D. Tenn. 2017).................................................................................14

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
607 F. Supp. 2d 470 (S.D.N.Y. 2009)....................................................................................10

*United States v. Daugerdas*,
No. 09CR581, 2020 WL 364601 (S.D.N.Y. Jan. 22, 2020) ....................................................8

*Välinge Innovation AB v. Halstead New England Corp.*,
No. CV 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .......................13, 15

*W. Express Bancshares, LLC v. Green Dot Corp.*,
No. 19CV4465 (DLC), 2019 WL 4857330 (S.D.N.Y. Oct. 2, 2019)....................................11

*Wechsler v. Hunt Health Sys., Ltd.*,
216 F. Supp. 2d 347 (S.D.N.Y. 2002)......................................................................................9

**STATUTES**

35 U.S.C. § 271(g) .............................................................................................................5, 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 6 ............................................................................................4

Federal Rule of Civil Procedure 8 ............................................................................................7

Federal Rule of Civil Procedure 11 ..........................................................................................9

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 4, 7

**PATENTS**

U.S. Patent No, 6,858,078...........................................................................................*passim*

U.S. Patent No. RE41,189 ...........................................................................................*passim*

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint against Fenix is detailed and adequately pleads direct, willful, and induced infringement.  To survive a Rule 12(b)(6) motion, the complaint need not prove its final case as further developed through discovery—it must only provide a plausible, short and plain statement of the Plaintiffs' claim showing that Plaintiffs are entitled to relief.  The Complaint does so, providing more than adequate notice of Plaintiffs' proposed bases and theories of infringement.  Fenix's motion to dismiss should therefore be denied.  At a minimum, Plaintiffs should be granted leave to file an amended complaint to cure any deficiencies that the Court may identify.

## II.   BACKGROUND

### A.   Factual Background

Fenix manufactures and anneals diamonds that are laboratory-grown using a chemical vapor deposition ("CVD") process.  As shown on Fenix's website, Fenix's manufacturing process begins with a diamond "seed" and produces a dark rough diamond that is then clarified, cut and polished and ultimately used in making fine jewelry:



ECF No. 16 (First Amended Complain ("FAC")) ¶¶ 10, 53.

Fenix's website explains that its lab-grown diamonds are created "using the CVD method" in which "a hydrocarbon gas mixture activates the carbon-atom in a diamond-seed, … to grow a

diamond in a state-of-the-art lab." *Id.* ¶¶ 9, 52, 64, 85.  Growing CVD and then improving the optical clarity of diamonds' grown using a CVD manufacturing method requires controlled high temperatures and pressures. *See, e.g.*, *id.* ¶¶ 43, 52.

Furthermore, most commercial CVD diamonds are "Type IIa," meaning they have little or no nitrogen impurities but do have other impurities that can impart color.  Because Fenix sells Type IIa CVD diamonds and CVD diamonds that do not undergo additional heat and pressure processing are unlikely to be rated as gem quality, Plaintiffs' complaint alleges upon information and belief that Fenix anneals its diamonds using controlled heat and pressure.  *Id.* ¶¶ 50, 86–89.

Fenix operates an extensive diamond-supply pipeline, including laboratories for growing and annealing CVD diamonds; factories for cutting and polishing the CVD diamonds; locations that use the cut and polished diamonds to create jewelry; retail stores in the New York area; an interactive website for viewing and purchasing diamonds and diamond jewelry; and marketing and brand support to wholesalers, distributors, and other third-party purchasers.  *Id.* ¶¶ 11–17, 27–29, 51, 57–60, 90–91.

### B.    Plaintiffs' Patents

This case involves two patents issued to Plaintiff Carnegie Institute of Washington and licensed by Plaintiff M7D Corporation.  The first, U.S. Patent No, 6,858,078 ("the '078 patent") claims methods of manufacturing CVD diamonds by, among other things, controlling the temperature of the growth surface of the diamond to ensure that temperature gradients across that surface are less than 20° Centigrade.  Two exemplary independent claims recite:

> 1. A method for diamond production, comprising:
>
> controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C.; and

> growing single-crystal diamond by microwave plasma chemical
> vapor deposition on the growth surface at a growth
> temperature in a deposition chamber having an atmosphere
> with a pressure of at least 130 torr.
>
> 12. A method for diamond production, comprising:
>
> controlling temperature of a growth surface of the diamond such
> that all temperature gradients across the growth surface are
> less than 20° C.; and
>
> growing single-crystal diamond by microwave plasma chemical
> vapor deposition on the growth surface at a temperature of
> 900-1400° C.

ECF No. 16-1 ('078 Patent) at 14:64–15:4, 15:31–37.

The second patent, U.S. Patent No. RE41,189 ("the '189 patent") claims a method of improving the optical clarity of a CVD diamond by using an annealing process temperatures and pressures in particular ranges. The independent claim recites:

> 1. A method to improve the optical clarity of CVD diamond
> where the CVD diamond is single crystal CVD diamond, by raising
> the CVD diamond to a set temperature of at least 1500° C. and a
> pressure of at least 4.0 GPA outside of the diamond stable phase.

ECF No. 16-2 ('189 patent) at 4:10–14.

## C.    Procedural History

Plaintiffs filed their original complaint against Fenix and another defendant on January 9, 2020. ECF No. 1. Plaintiffs filed their FAC, which removed the other defendant, on March 5, 2020. ECF No. 16. The FAC alleges that Fenix (or suppliers under Fenix's direction) are using CVD diamond manufacturing processes claimed in the '078 patent and annealing processes claimed in the '189 patent. *Id.* Plaintiffs contend that Fenix has directly infringed the '078 and '189 patents by making, using, offering to sell, and/or selling products in the United States, or by importing into the United States, products that were made by processes covered by the patents. *Id.* ¶¶ 61–71, 82–92. Plaintiffs further allege that Fenix has induced infringement of the '078 and '189

patents by intentionally inducing others to use, offer to sell, and/or sell such products in the United States or by importing such products into this country.  *Id.* ¶¶ 72–78, 93–99.  Plaintiffs also allege that Fenix has engaged in willful infringement of the '078 and '189 patents by continuing to infringe despite knowledge of both the patents and its infringement of the patents.  *Id.* ¶¶ 79–81, 100–02.

In accordance with Local Patent Rule 6, Plaintiffs served infringement contentions on March 11, 2020.  Discovery is ongoing—the parties responded to each other's initial discovery requests on April 10, 2020.  The parties are currently briefing claim construction issues; no claim construction has issued.

## III.   LEGAL STANDARDS

The court must accept as true all factual allegations in the FAC.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint only where it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (citation omitted); *see also Holotouch, Inc. v. Microsoft Corp.*, No. 17 CIV. 8717 (AKH), 2018 WL 2290701, at *8 (S.D.N.Y. May 18, 2018) ("The central question is whether the complaint, assumed as true and taken with all reasonable inferences, raises a plausible claim for relief.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  Dismissal is improper so long as the factual allegations "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.   PLAINTIFFS' COMPLAINT MEETS THE REQUIREMENTS OF *IQBAL* AND *TWOMBLY*.

### A.   Plaintiffs have adequately pleaded direct infringement.

Plaintiffs "need not 'prove [their] case at the pleading stage,' [but rather] must place the 'potential infringer . . . on notice of what activity . . . is being accused of infringement.'"  *Nalco Co. v.*

*Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citations omitted).  The FAC provides

adequate notice of what activities are alleged to infringe.

Fenix is liable for infringement if it "imports into the United States or offers to sell, sells, or

uses within the United States *a product which is made by a process* patented in the United States"

during the term of the process patent.  35 U.S.C. § 271(g) (emphasis added).   Under § 271(g), the

fact that the *process* is performed abroad or by someone else is irrelevant as long as the resulting

*product* is imported, sold, offered for sale, or used in this country.  The FAC more than adequately

alleges each element of a product-by-process infringement claim.

To begin with, the FAC identifies which method-patent claims are asserted (at least '078

claims 1 and 12 and '189 claim 1), ¶¶ 33–45, 51–60, 84–92, and the Fenix products that are alleged

to have been made by those claimed methods (Fenix's CVD diamond product line including

annealed CVD diamonds).

The FAC also explains why Plaintiffs believe that Fenix's CVD diamonds have been made

by processes covered by the '078 and '179 patents.  According to Fenix's own website, its CVD

diamonds are created by "a hydrocarbon gas mixture activat[ing] the carbon-atom in a diamond seed,

[while] recreating Earth's forces and conditions to grow a diamond."  *Id.* ¶ 52.  Growing CVD

diamonds by "recreating Earth's forces and conditions" requires elevated and controlled

temperatures and pressures.  *See, e.g.*, *id.* ¶ 46.  Although Plaintiffs have not yet had access to

Fenix's non-public manufacturing documents, Plaintiffs have reasonably alleged that the CVD

process used to make Fenix's CVD diamonds requires heightened temperature and atmospheric

pressure and control of temperature gradients as specified in claims 1 and 12 of the '078 patent.

*See id.* ¶¶ 54–56, 64–67.  The FAC likewise explains why Plaintiffs believe that Fenix's CVD

Diamonds are annealed in a manner infringing the '189 patent.  *Id.* ¶¶ 9, 52, 57, 84–89.

Finally, the FAC alleges that Fenix has imported CVD diamonds made by the patented processes into this country, *id.* ¶¶ 20, 26, 28, 30, 32, 51, 63, 70–71, 83–84, 92; used those products in this country including in New York, *id.* ¶¶ 26–28, 30, 51, 63, 69, 84;  and/or sold those products or offered them for sale in this country, *id.* ¶¶ 26, 28, 30, 32, 63, 69, 84, 92.

Fenix's objections are unavailing.  Fenix asserts that Plaintiffs have not "identif[ied] even a single diamond imported or sold by Defendant that was made according to an allegedly infringing process," *see* ECF No. 26 ("Mot.") at 6, but Plaintiffs are not accusing a single specific diamond.  Based on the information available, Plaintiffs have asserted that Fenix's entire CVD diamond product line is made by processes that infringe one or both patents.  Fenix may deny the allegation, but it is on full notice of what Plaintiffs have alleged.  Fenix further grumbles that the FAC labels Fenix's CVD diamonds as "infringing CVD diamonds" even though Plaintiffs' patent claims are in method-claim format.  *See id.*  But Plaintiffs are asserting a product-by-process infringement theory, which requires not only a process but a product made by an infringing process.  It therefore makes perfect sense for the FAC to refer to Fenix's products as allegedly "infringing CVD diamonds" or "infringing CVD diamond products."  *See* FAC ¶ 63 (defining terms).  In any event, Fenix's objection is semantic.

Fenix also claims not to know what processes are alleged to infringe and why.  But complaints need not provide proof of infringement—that is what fact and expert discovery, summary judgment motions, and trial are for.[1]  Complaints need only provide notice of plausible

---

[1] Fenix's motion repeatedly conflates the standard of proof required at trial with the standard to provide adequate notice in an initial pleading.  *See, e.g.*, Mot. at 4 ("[t]o prove infringement" (citing *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)); 6 ("[t]o prevail on its infringement claim, Plaintiffs must prove . . ." (citing *Pfizer* and *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014))).

infringement claims. *See, e.g.*, *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) ("Federal Rule of Civil Procedure 8(a)(2) 'generally requires only a plausible "short and plain" statement of the plaintiff's claim,' showing that the plaintiff is entitled to relief."(citations omitted)); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017) ("To survive a motion to dismiss under Rule 12(b)(6) a complaint must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" (quoting *Iqbal*, 556 U.S. at 678)).  Plaintiffs have explained why they believe that the processes used to manufacture Fenix's CVD diamond products infringe. *See, e.g.*, *NNCrystal US Corp. v. Nanosys, Inc.*, No. CV 19-1307-RGA, 2020 WL 616307, at *3 (D. Del. Feb. 10, 2020) (denying motion to dismiss where complaint alleged defendants' method met all limitations of two asserted claims, regardless of whether defendant could have used "many non-patented ways of synthesizing its products"); *see also K-Tech*, 714 F.3d  at 1284 (complaint need not "preemptively identify and rebut potential non-infringing alternatives to practicing the claims of an asserted patent").

Fenix demands that Plaintiffs plead at the outset the specific temperatures, temperature gradients, and pressures at which Fenix grows and anneals its diamonds.  But Plaintiffs have not yet been allowed to inspect the fabrication plants Fenix uses, review documents detailing the processes they use, and depose the relevant personnel.  Fenix's standard would improperly import the heightened specificity required for infringement contentions into Rule 8's pleading requirements. *See* L.P.R. 6 (requiring identification of "each product or process ... of which the party claiming infringement is aware that allegedly infringes each identified claim"); *Nichia Corp. v. VIZIO, Inc.*, No. 2:16-CV-1453-JRG, 2017 WL 3836141, at *2 (E.D. Tex. July 24, 2017) ("[A]llegations to the level of detail contained in infringement contentions are not required at the pleading stage." (citation omitted)); *N. Star Innovations, Inc. v. Micron Tech., Inc.*, No. CV 17-

506-LPS-CJB, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017) (rejecting argument that a complaint must contain detail equivalent to later-filed infringement contentions).  Fenix knows what processes it and its suppliers are using, and it cannot and does not suggest that lacks adequate notice to begin defending itself.  Fenix also neglects to mention that Plaintiffs have already provided more detailed infringement contentions, and Plaintiffs will refine those contentions as required by this Court's rules and case law.

Fenix further complains that many of Plaintiffs' allegations are "on information and belief."  *See* Mot. at 9–10.  But "[p]refacing allegations with [on information and belief] does not eviscerate the sufficiency of a complaint, and this Court is aware of no such case where a complaint [was dismissed] for overuse of qualifiers."  *United States v. Daugerdas*, No. 09CR581, 2020 WL 364601, at *3 (S.D.N.Y. Jan. 22, 2020) (citations and quotation marks omitted) (denying motion to dismiss count of commingling where all allegations were pleaded on information and belief).  "[W]hether an allegation is made on information and belief has nothing to do with whether it provides fair notice of a claim."  *Dresser, LLC v. VRG Controls, LLC*, No. 18 C 1957, 2018 WL 10426611, at *2 n.3 (N.D. Ill. Nov. 28, 2018).  Moreover, pleading on information on belief is perfectly appropriate where, as here, the plaintiffs "are unlikely to obtain the [evidence] needed to substantiate the [infringement] allegations within the Petition absent 'help from subpoenas, depositions, or interrogatories.'"  *Daugerdas* 2020 WL 364601, at *4 (citation omitted).  Simply put, "Plaintiffs cannot be charged with knowing . . . non-public information . . . [before] obtaining discovery."  *BioMérieux, S.A. v. Hologic, Inc.*, No. CV 18-21 (LPS), 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018); *see also K-Tech*, 714 F.3d at 1286 (in Form 18 context, rejecting assertion that "a plaintiff [must] identify an accused [method] by name ... especially when the operation of

those systems is not ascertainable without discovery," and further finding that *"*[a] defendant cannot shield itself from a complaint for direct infringement by operating in ... secrecy ...").[2]

The case law Fenix cites, *see* Mot. at 5–10, does not justify dismissing Plaintiffs' complaint.  Unlike the FAC, which includes Fenix's own statements and photos about Fenix's CVD diamond products and their use, offer for sale, sale, and importation, the complaint in *3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438, 442–44 (2015), alleged only that unnamed, unidentifiable government "surveillance systems" infringed its patents.  Similarly thin were the six-page, 19-paragraph complaint in *L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, No. 16-CV-06534-FPG, 2016 WL 8813198 (W.D.N.Y Sept. 16, 2016) (complaint), which "exactly—and entirely" parroted the claim language, without more, *see id.*, 2017 WL 4652709 (W.D.N.Y. Oct. 17, 2017); the complaint in *North Star*, 2017 WL 5501489, at *2–3, where the complaint likewise "merely cop[ied] the language of a claim element" without "*some facts* alleged"; and the complaint in *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014), which included no allegations concerning the defendants' business or ways of infringing the apparatus and method claims, *see Macronix Int'l Co. v. Spansion Inc.*, No. 3:13CV679-REP, 2013 WL 5741683 (E.D. Va. Oct. 2, 2013) (complaint).  *See also Holotouch*, 2018 WL 2290701, at *8 (distinguishing *L.M. Sessler* and *North Star*).

Fenix relies heavily on *Artrip v. Ball Corp.*, 735 F. App'x 708  (Fed. Cir. 2018), but that case also involved very different facts.  The dismissed complaint there was a third amended

---

[2] Contrary to Fenix's suggestion (at 7 n.1), allegations made on information and belief do not violate Rule 11.  *See, e.g.*, *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 670 (2d Cir. 1989) ("Rule 11 is violated when it is patently clear that a claim has absolutely no chance of success." (emphasis omitted)); *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002) (a pleading or motion violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation").

complaint filed after the plaintiff having been provided access to and taken photos of the machines at issue.  The complaint was brief (a mere 23 paragraphs) and contained no factual allegations regarding the defendants' business or accused products.  Here, Plaintiffs' FAC was filed without the benefit of discovery and contains significant factual detail beyond the language of the claims. It does not merely parrot the claims and assert infringement with no further explanation.  In any event, this District has no "'anti-parroting' principle, and there is nothing inherently problematic about quoting the language of an allegedly infringed patent."  *Holotouch*, 2018 WL 2290701, at *8.

Under *Twombly*, a complaint must only allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]."  550 U.S. at 556.  Given that the details of Fenix's CVD and annealing methods and its CVD diamond sales and distribution chain are not public, Plaintiffs have plausibly alleged infringement and provided adequate notice of their direct infringement claim.  Plaintiffs have already provided further information in their infringement contentions, and fact and expert discovery will provide even more.

### B.   Plaintiffs have adequately pleaded inducement of infringement.

The FAC likewise plausibly alleges induced infringement.  To adequately plead inducement of infringement, a complaint must allege (1) direct infringement, (2) the defendant's knowledge of patents and the infringing acts, and (3) the defendant's intent to cause the acts that constitute the infringement.  *See, e.g.*, *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed Cir. 2005); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  In evaluating the defendant's intent, "direct evidence is not required; rather, circumstantial evidence may suffice."  *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 253 (E.D.N.Y. 2016) (quoting *MEMC*, 420 F.3d at 1378) (analysis at pleading stage); *see also U.S. Philips Corp. v. Iwasaki Elec. Co.*, 607 F. Supp. 2d 470, 479 (S.D.N.Y. 2009).

The FAC sufficiently alleges each element of induced infringement.

First, the FAC alleges direct infringement by others.  As discussed above, Fenix's CVD diamonds are made using processes claimed in the '078 and '189 patents, and those products have been imported, sold, offered for sale, and/or used in the U.S. without Plaintiffs' consent.  The FAC alleges that Fenix's customers and retailers use, offer to sell, sell, and/or import those CVD diamonds, thereby infringing directly under § 271(g).

Fenix's reliance on *W. Express Bancshares, LLC v. Green Dot Corp.*, No. 19CV4465 (DLC), 2019 WL 4857330, at *4 (S.D.N.Y. Oct. 2, 2019); *ColorQuick, L.L.C. v. FedEx Office & Print, Servs., Inc.*, No. 09-cv-572, 2010 WL 11628964, at *4 (E.D. Tex. May 21, 2010); and *Polaris PowerLED Techs., LLC v. Vizio, Inc.*, No. SACV181571 JVS (DFMx), 2019 WL 3220016, at *4 (C.D. Cal. May 7, 2019), is misplaced.  *See* Mot. at 10–11.  Fenix argues that an indirect infringement claim should be dismissed absent a direct infringement allegation, but Plaintiffs *have* alleged direct infringement.  Fenix also complains that Plaintiffs have not identified any specific direct infringer, but Plaintiffs have identified who those parties are—retailers, jewelry stores, and other customers. *See, e.g.*, FAC ¶¶ 27, 29–30, 69, 72–74, 77, 93–95, 98.  That suffices at the pleading stage.  *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.").

Second, the FAC alleges that Fenix had actual knowledge of or was willfully blind to the patents-in-suit, given their notoriety in the CVD diamond community.  FAC ¶¶ 18–20; *see Global-Tech*, 563 U.S. at 769–70 (either actual knowledge or willful blindness suffices to establish the knowledge-of-infringement requirement).  In any event, "[t]he filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement

- 11 -

occurring after the filing date." *See, e.g.*, *Carson*, 202 F. Supp. 3d at 254 (citation omitted); *see also 3D Sys., Inc. v. Formlabs, Inc.*, No. 13 CIV. 7973, 2014 WL 1904365, at *4 (S.D.N.Y. May 12, 2014) ("[I]n this Circuit at least, prefiling knowledge of the patents is not essential to a claim of induced infringement." (citations omitted)).  Fenix argues that "Plaintiffs [did not] inform Fenix, prior to this lawsuit, that [they] believed that any activity undertaken by Fenix infringed either of the asserted patents."  *See* Mot. at 11.  But Plaintiffs were not required to do so because Fenix was actually aware or willfully blind to the existence of the patents.

Third, the FAC alleges Fenix's specific intent that others infringe.  Specifically, the FAC alleges that Fenix "knowingly and intentionally induc[ed] others, including prospective and actual customers and retailers" to infringe by using, offering to sell, sell, and/or importing the CVD and annealed diamonds made by the infringing methods.  *See, e.g.*, FAC ¶¶ 72–74, 93–95.  Fenix touts its diamond-growing and global distribution prowess, *id.* ¶ 8, and it owns diamond-growing laboratories and operates a diamond supply "pipeline" offering "marketing and brand support" to others such as wholesalers, distributors, and other third-party purchasers to ensure that its CVD diamonds jewelry containing them are distributed to "jewelry store[s] near you."  FAC ¶¶ 11–14, 58, 60; *see also id.* ¶ 51.  The FAC explains that Fenix operates an interactive website by which potential customers may shop for Fenix jewelry and diamonds., *id.* ¶ 15, and Fenix employs its "website, promotional materials, advertisements, and other information [to] encourage others, such as third-party diamond retailers and jewelry stores, to sell" the CVD diamonds made by the infringing processes, *id.* ¶ 27.

Neither *LaserDynamics USA, LLC v. Cinram Group, Inc.*, No. 15 CIV. 1629 (RWS), 2015 WL 6657258 (S.D.N.Y. Oct. 30, 2015), nor *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017), suggests that Plaintiffs' complaint is

insufficient.  The complaint in *LaserDynamics* offered "few additional facts to support ... specific intent" other than that "Defendants offer and market ancillary services," 2015 WL 6657258 at *6, and the complaint in *Cleveland Clinic* complaint "allege[d] no facts that suggest[ed] any connection" with the alleged direct infringers, 859 F.3d at 1364.  Here, the FAC relies on Fenix's advertising, promotion, and supply of CVD diamonds understood to be made by infringing processes and Fenix's global pipeline with extensive connections to retailers and other customers.  These allegations provide adequate notice of

### C. Plaintiffs have adequately pleaded willful infringement.

Finally, Plaintiffs have also provided a plausible basis for their allegations of willful infringement.

At the pleading stage, a complaint must allege that "defendant was aware of the asserted patent but acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *3D Sys.*, 2014 WL 1904365, at *6.  Conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate," *see Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016), is evidence of willful behavior, but detailed proof is not required at the pleading stage.  *See generally Välinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082-LPS-CJB, 2018 WL 2411218, at *2–13 (D. Del. May 29, 2018) (in-depth analysis of willful-egregious distinction and post-*Halo* pleading standards).  Moreover, for at least post-suit knowledge and willfulness, "there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 330515, at *7–8 (D. Del. Jan. 25, 2019) (Bryson, Circuit Judge, sitting by designation) (also recognizing the obstacles in pleading willful infringement

given that "[t]he facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery").

Here, the FAC alleges that Fenix had actual knowledge of the patents-in-suit or at least acted in willful blindness of them because the existence of these patents was well-known in the lab-grown diamond industry.  FAC ¶¶ 97, 102.  At a minimum, Fenix has had actual knowledge since Plaintiffs served their original complaint.  The FAC further explains that Fenix knew the manufacturing and annealing methods used to make its CVD diamonds infringed, yet has continued to import, use, sell, and/or offer those diamonds for sale.  *Id.* ¶¶ 19–20; *see also id.* ¶¶ 75–76, 79, 96–97, 102 (other allegations of knowledge).  The FAC also specifically alleges that Fenix, with knowledge of the patents-in-suit, has operated a factory making lab-grown CVD diamonds of Type IIa/gemstone quality and further anneals CVD diamonds to improve their characteristics, *see, e.g.*, *id.* ¶¶ 52–59, 63–71, 84–92; uses those CVD diamonds to create jewelry, *id.* ¶¶ 10, 60, 68–69, 90–91; operates a CVD diamond pipeline for importation and distribution to U.S. retail outlets, *see id.* ¶¶ 10, 13–14, 28–30, 32, 69, 72–74, 79, 91–95; and sells and offers to sell these CVD diamonds in the United States, *see id.* ¶¶ 15, 26, 28–30, 32, 51, 63, 69–70, 72–74, 79, 84, 91–95, 102.

Thus, contrary to Fenix's assertions, *see* Mot. at 11, the FAC alleges more than a "merely conclusory allegation of knowledge, on its own."  The cases on which Fenix relies for this point are therefore readily distinguishable.  *See Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19cv5516 (DLC), 2020 WL 1048927, at *3 (S.D.N.Y. Mar. 4, 2020); *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 883 (W.D. Tenn. 2017); *Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2018 WL 5310792, at *5 (N.D. Cal. Aug. 6, 2018).  Furthermore, this district has not adopted the "egregiousness" standard of *CG Technology Development, LLC v. Zynga, Inc.*, No.

16-cv-859-RCJ-VCF, 2017 WL 662489, at *4 (D. Nev. Feb. 17, 2017), and it was rejected by the well-developed decision in *Välinge*, 2018 WL 2411218, at *2–13.

      **D.**      **At a minimum, Plaintiffs should be granted leave to replead.**

      Even if the Court concludes that the FAC has not adequately pleaded certain elements or theories, the Court should grant Plaintiffs leave to file a Second Amended Complaint aimed at curing any such defects.  Although Fenix has not provided any discovery to date, Plaintiffs can, if necessary, provide further information supporting their claims of direct, induced, and willful infringement.  Fenix has not requested dismissal with prejudice, this Court did not dismiss Plaintiffs' original complaint (Plaintiffs updated it on their own initiative after learning more information about the other original defendants and their relationship with Fenix), and there is no reason to assume that amendment would be futile.[3]

**V.**      **CONCLUSION**

      The Court should deny in its entirety Fenix's motion to dismiss.  In the alternative, to the extent the Court grants any portion of Fenix's motion, Plaintiffs should be given leave to file an amended complaint.

---

[3] Indeed, even the case law Fenix cites in support readily offered leave to amend.  *See, e.g.*, *N. Star*, 2017 WL 5501489, at *3 (recommending dismissal of direct infringement claim with leave to amend); *ColorQuick*, 2010 WL 11628964, at *4 (recommending dismissal of indirect infringement claim with leave to amend); *Gamevice*, 2018 WL 5310792, at *6 (willful infringement claim dismissed with leave to amend); *CG Tech.*, 2017 WL 662489, at *5 (willful infringement claim dismissed with leave to amend).

April 13, 2020

Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Matthew J. Moffa*

Matthew J. Moffa
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY  10036-2711
Telephone: (212) 261-6857
Fax: (212) 399-8057
e-mail:  MMoffa@PerkinsCoie.com

Terrence J. Wikberg (*admitted pro hac vice*)
PERKINS COIE LLP
607 14th Street, NW
Washington, DC  20005
Telephone (202) 434-1649
Fax: (202) 654-9149
e-mail:  TWikberg@PerkinsCoie.com

*Counsel for Plaintiffs*
*Carnegie Institution of Washington and*
*M7D Corporation*