

700 13th Street, NW  
Suite 800  
Washington, D.C. 20005-3960

T +1.202.654.6200  
F +1.202.654.6211  
PerkinsCoie.com

June 29, 2020

Terrence J. Wikberg  
TWikberg@perkinscoie.com  
D. +1.202.654.6201  
F. +1.202.654.9149

**VIA ECF – REDACTED FOR PUBLIC FILING**

The Honorable Jed S. Rakoff, United States District Judge  
United States District Court for the Southern District of New York  
500 Pearl Street  
New York, NY 10007

Re:   *Carnegie Inst. of Wash et al. v. Fenix Diamonds LLC*, 20-cv-200 (JSR)

Your Honor:

Pursuant to Your Honor's instructions during the June 25 telephonic hearing, and following a meet and confer on June 26, Plaintiffs Carnegie Institution of Washington and M7D Corporation (collectively, "Plaintiffs") submit this letter brief regarding their request for orders to compel productions from Defendant Fenix Diamonds LLC ("Fenix") and third party LuxeIntelligence LLC ("Luxe"), a marketing and brand management firm responsible for many of Fenix's marketing operations.

I.   **Motion to Compel Technical Documents and Things From Fenix**

Since the start of this litigation, Fenix has claimed that it has no control relationship with certain companies that hold key evidence. This includes the company Emby International Inc. ("Emby"), an alleged third party entity which shares ███████████████ with Fenix, and from which Plaintiffs had to conduct third party discovery and deposition to secure material emails and information about Fenix's licensing, processes, sales, and corporate structure.[1] Another such company is Nouveau Diamonds ("Nouveau"), which allegedly runs Fenix's manufacturing facilities in India.

Based on Fenix's representation that it had no control over Nouveau, its documents, or its manufacturing processes, Plaintiffs were forced to seek key technical evidence through a Hague Convention Letter of Request, a cumbersome process that took time and judicial resources. Since then, discovery has made clear—in two ways—that Fenix does, in fact, exercise control over Nouveau, its documents, and its facilities.

First, Fenix's internal documents, including many authored by Fenix's owner, ███████, reveal that it owns and controls the growing facilities ostensibly operated by Nouveau Diamonds. *E.g.* FD019425 ("Fenix Diamonds owns ████████████████████████████████ ."); FD021850 ("We are ████████████████████ of CVD lab grown

---

[1] In fact, the highly material emails submitted by Fenix for *in camera* privilege review on Friday were not provided in Fenix's document production, although Fenix's owner and president ████████████ is ████████████████ .

The Honorable Jed S. Rakoff
June 29, 2020
Page 2



diamonds. With our own ▮▮▮▮▮ …");[2] FD022383 ("With our ▮▮▮, we control ▮▮▮…We can go from ▮▮…We ▮▮▮…"); FD054195 ("We have also ▮▮▮▮"); FD233216 ("We are part of the ▮▮ of companies: ▮▮▮ Fenix is a ▮▮▮").

Second, since forcing Plaintiffs to issue a Hague request, Fenix's counsel has inexplicably produced over 250 "documents"—allegedly on behalf of Nouveau, and outside of Hague procedure. These "documents" are self-serving declarations, photos, and videos which appear to be created for this litigation or carefully curated in an attempt to demonstrate noninfringement. The tailored production shows that Fenix is able to obtain technical information from its manufacturing facilities, and that Fenix has access to Nouveau's employees, documents, facilities, and source code[3]—even to the point of instructing Nouveau to run certain favorable experiments. Meanwhile, Fenix has withheld all other underlying documents allegedly in Nouveau's possession, including the process "recipes" that are at the heart of this case (which the very document provided to the Court for in camera review on Friday suggests are "▮▮▮"). Awaiting responsive information through the Hague convention may take months or more, and the Court has indicated that it will not delay the case for completion of that process. This could leave Plaintiffs without documents important for showing infringement—but give Fenix the chance to sway the jury with its hand-picked material.

Fenix should not be permitted to use the alleged corporate distinction from Nouveau Diamonds as both a sword and a shield. Fenix must produce *all* technical documents in its control, whether or not those documents are allegedly held by a foreign entity subject to the Hague Convention. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-183 (S.D.N.Y. 2006); *see also Leser v. U.S. Bank N.A.*, No. 09-CV-2362 (KAM)(ALC), 2010 WL 1945806, at *2 (E.D.N.Y. May 13, 2010) ("Although Plaintiff may not own or control the named entities, his affiliation with them in this instance gives him control over the requested documents as that term is defined in relation to discovery obligations.")

Plaintiffs respectfully ask the Court to order that such production be completed by July 10, so Plaintiffs may have one month to review and utilize the information in their expert disclosures

---

[2] Fenix has made this statement to at least a dozen prospective customers. *See, e.g.*, FD021852, FD027705, FD027706, FD027710, FD027711, FD027712, FD027713, FD027714, FD027715, FD027753, FD027754, FD027755, FD027756, FD027757, FD029741, FD030162, FD030163, FD030164, FD030165, FD030194, FD030208.

[3] Fenix's offer of source code review plainly demonstrates that Fenix has access and control over the most sensitive technical details underlying its manufacturing process. Yet Fenix inexplicably still refuses to produce the process parameters and recipes that are applied by the source code.

Perkins Coie LLP

The Honorable Jed S. Rakoff
June 29, 2020
Page 3

due August 7. Fenix's production should include:

- Process recipes and conditions;
- Growth logs and run reports;
- Source code for the CVD machines' Programmable Logic Controller *and* all versions of all control parameters they use;
- Documents showing equipment capabilities, *e.g.*, user manuals, BOMs, schematics, etc.;
- Documents showing any compensation for emissivity (*e.g.*, in the pyrometers through settings) or standardization of temperature sensing equipment;
- Documents describing the development of the manufacturing and annealing processes;
- Samples of Fenix's diamonds at various stages of manufacture and preparation.[4]

## II.     Motion to Compel Documents from LuxeIntelligence LLC

Plaintiffs' counsel are pleased to report that, after their meet and confer with Luxe's counsel at Leydig, Voit & Mayer (the same counsel representing Fenix, Emby, and Emby's owner), Luxe has agreed to produce documents responsive to Plaintiffs' subpoena (a) related to the promotion / marketing or sale of CVD diamonds sold or offered for sale by Fenix Diamonds LLC or any Fenix Entity[5], including financial information, or (b) related to the Manufacture of CVD diamonds sold or offered for sale by Fenix Diamonds LLC or any Fenix Entity.

Plaintiffs anticipate a timely production from Luxe with sufficient time for Plaintiffs to utilize the produced information in expert reports. Plaintiffs reserve the right to seek a date certain for production from the Court or an extension of deadlines if such production is not prompt.

Respectfully submitted,

/s/

Terrence J. Wikberg

TJW:rls

cc:     Counsel of record (via ECF)

---

[4] To be clear, Fenix has acknowledged that it can provide diamond samples, but seeks to strictly limit Plaintiffs' access to those samples (to the effect that Plaintiffs cannot scientifically analyze them) on the basis that the diamonds "belong to Nouveau."

[5] Plaintiffs' subpoena defined "Fenix Entity" to include the so-called "█████████" entities it could identify from Fenix's and Emby's productions, including multiple entities identified in Emby's June 26 letter to the court, namely, "█████████████████████████████████████████████████████████████████████████████"

Perkins Coie LLP