PerkinsCoie

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T +1.202.654.6200
F +1.202.654.6211
PerkinsCoie.com

June 30, 2020

Terrence J. Wikberg
TWikberg@perkinscoie.com
D. +1.202.654.6201
F. +1.202.654.9149

**VIA ECF**

The Honorable Jed S. Rakoff, United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Carnegie Inst. of Wash et al. v. Fenix Diamonds LLC*, 20-cv-200 (JSR)

Your Honor:

Plaintiffs submit this letter brief in response to Fenix's motion to compel filed yesterday, June 29, 2020. Plaintiffs were surprised to receive Fenix's motion to compel, as 1) many of these issues were never raised in any meet-and-confer, and 2) for the issues that were raised, Plaintiffs understood that the parties had reached agreement. As set forth below, Plaintiffs have already produced, or are presently producing, any relevant information encompassed by Fenix's motion, which has needlessly consumed resources of the Court and Plaintiffs.

**Fenix's Demands 1-3: Financial Statements, Sales and Cost Data, and Price Lists**

In a meet-and-confer last Friday, June 26, Plaintiffs explained that they were preparing additional financial data for production this week. Plaintiffs explained that the upcoming production would include data from 2015-2018, and that Plaintiffs were also preparing a supplemental production including similar data from 2018-2019. Fenix seemed content with this proposal and indicated that they would await the production. And, in fact, Plaintiffs' are producing this week the very information that Fenix is now moving to compel: sales volumes by customer; sales data on a stone-by-stone basis (including customer, sales date, carat, color, price per carat, and price per stone); and additional financial data, including monthly income statements, balance sheets, and cash flow statements, which include detailed cost information. To be clear, the information in Plaintiffs' financial production is far more detailed than the information Fenix itself has provided to date. Plaintiffs repeatedly asked during the June 26 meet-and-confer if Fenix would be producing the same level of detail, to which no response was provided. Plaintiffs believe that Fenix's production should include the same level of detail they demanded from—and are receiving from—Plaintiffs.

As for Fenix's demand for financial information from before 2015, Fenix was not even founded until 2018, so 2018 is when a hypothetical negotiation for a patent license would have occurred between Plaintiffs and Fenix under the "reasonable royalty" analysis applicable to patent infringement suits. Fenix provides no argument why financial information from before 2018

Hon. Jed S. Rakoff
June 30, 2020
Page 2

would be relevant in this suit.  Nonetheless, Plaintiffs have agreed to produce financial information dating back to 2015.  There is a significant burden in collecting pre-2015 data, and Fenix has made no showing of relevance, much less one that would outweigh the burden.[1]

**Fenix's Demands 4, 6, 7, and 8: Marketing Documents and Emails**

On the June 26 meet-and-confer, Fenix inquired generally whether Plaintiffs' production of marketing documents was complete.  (On that call, Fenix never identified the specific categories of documents it now seeks to compel, e.g., "Identification of Plaintiffs' and competitors' market shares," "Information…that addresses industry conditions or trends.")  Plaintiffs explained again, as they had in prior letters and calls, that Carnegie is a research institution that does not market or sell any products whatsoever, and that M7D engages in only limited marketing, and does not create many formal marketing documents.  Plaintiffs explained that they had conducted repeated searches for marketing documents, had produced all documents that were located to date, and would continue to search for and produce relevant information, to the extent any exists.  Plaintiffs have never refused to produce any such information, and will produce any further information that is located, but as already indicated to Fenix, Plaintiffs' production has included everything located to date.

Fenix never requested "email correspondence" in any prior letter or on any meet-and-confer.  However, to the extent Plaintiffs have responsive email, it is being collected and reviewed, and will be produced to Fenix as soon as possible.

**Fenix's Demand 5: Plaintiffs' Research and Development Expenses**

Fenix never requested information relating to Plaintiffs' research and development expenses in any letter or on any meet-and-confer, including the meet-and-confer that occurred on June 26.  With that said, it is Plaintiffs' position, consistent with the Court's recent ruling on Plaintiffs' manufacturing processes, that Plaintiffs' research and development information is irrelevant and inappropriate for discovery.  *See* D.I. 47 (denying motion to compel documents related to Plaintiffs' manufacturing process because "the details of any such processes are not [relevant]" and ordering that any questions related to undue experimentation be explored in deposition testimony).  Fenix has not shown that this information is relevant to the case.

**Fenix's Demand 9: License Agreements**

Plaintiffs have produced several license agreements, including drafts, and made it clear on the June 26 meet-and-confer that there are no further licenses to the patents-in-suit.  Plaintiffs have

---

[1] Plaintiffs began using their current accounting system in 2015.  Any older data would be very burdensome to recover.

Hon. Jed S. Rakoff
June 30, 2020
Page 3

also prepared a supplemental production with additional licensing communications with PGD (a defendant in the 1:20-cv-00189 matter): this production has been ready for weeks, but has been held up awaiting confirmation from Fenix. Specifically, on June 17, Plaintiffs expressed concern to PGD that Fenix's latest document requests encompassed sensitive PGD communications, and offered PGD the opportunity to seek a protective order. In response, PGD's counsel instructed Plaintiffs to confirm that Fenix wanted to receive these documents before PGD would agree to their production. Despite repeated emails on June 18 and June 23 asking Fenix to "confirm that you wish to receive communications between M7D/PGD," Fenix has not responded. On the June 26 meet-and-confer, Plaintiffs asked again whether Fenix wished to receive these communications, but counsel for Fenix was not prepared to address the question. Yet the following business day, Fenix moved to compel these very same documents. Plaintiffs take no position on the relevance of these documents but are troubled that Plaintiffs would be subject to a motion to compel when Fenix itself "holds the keys" to this production.

Again, although Fenix has not requested "email correspondence" in any letter or telephone conversation, in addition to the communications with PGD, Plaintiffs are also in the process of collecting and producing additional email communications related to licensing discussions with ALTR. These emails have little relevance here, as they postdate the filing of the complaint in this case, and as the underlying memorandum of understanding and draft agreement have been produced. Nevertheless, Plaintiffs have agreed to produce these emails.

Fenix's letter brief obliquely refers to a "non-exclusive license involving one of the patents-in-suit." This appears to be a reference to a license with a company called Diamond Innovations from 2008. Plaintiffs have explained, in several letters and in several phone conversations (including in the most recent meet-and-confer), that the license with Diamond Innovations cannot be located. Plaintiffs have looked high and low, including in the records of both Carnegie and its former outside counsel, and the license cannot be found. Plaintiffs have no relationship with Diamond Innovations' successor company, but PGD has issued a subpoena to them, so to the extent that company has relevant information, it will be produced pursuant to the subpoena and can be shared with Fenix.

Respectfully submitted,

/s/

Terrence J. Wikberg

TJW:rls

cc:     Counsel of record (via ECF)

Perkins Coie LLP