**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARNEGIE INSTITUTION OF WASHINGTON and M7D CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> FENIX DIAMONDS LLC, <br><br> Defendant. | Civil Action No. 1:20-cv-00200-JSR |

**DEFENDANT FENIX DIAMONDS LLC'S
<u>REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

## **TABLE OF CONTENTS**

I.   FENIX DOES NOT INFRINGE THE '189 PATENT AS A MATTER OF LAW ............1

II.  FENIX DOES NOT INFRINGE THE '078 PATENT AS A MATTER OF LAW ............2

    A.   Nouveau's Evidence Is Admissible ...................................................................2

    B.   Nouveau Does Not Practice the Claimed Steps ................................................4

        1.   [REDACTED] ............................................................................................. 4

        2.   Nouveau Does Not Control All Temperature Gradients to Less Than 20° C ............................................................................ 8

    C.   Summary Judgment Is Proper if Nouveau's Evidence Is Inadmissible ................10

III. CONCLUSION ...........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012), *as amended* (July 13, 2012) .......................................................... 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................ 1, 10

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
   310 F. Supp. 2d 569 (S.D.N.Y. 2004) ........................................................................................ 1

*Hutter v. Countrywide Bank, N.A.*,
   No. 09-cv-10092 NSR, 2015 WL 5439086 (S.D.N.Y. Sept. 14, 2015) ..................................... 2

*Jacobs v. New York City Department of Education*,
   768 F. App'x 86 (2d Cir. 2019) .................................................................................................. 3

*Jose Luis Pelaez, Inc. v. McGraw-Hill Global Education Holdings LLC*,
   No. 16-CV-5393 (KMW), 2018 WL 1115517 (S.D.N.Y. Feb. 26, 2018) .................................. 1

*Lyons v. Lancer Insurance Co.*,
   681 F.3d 50 (2d Cir. 2012) .......................................................................................................... 3

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ....................................................................................................... 3

*Mirror Worlds, LLC v. Apple Inc.*,
   692 F.3d 1351 (Fed. Cir. 2012) .................................................................................................. 2

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .................................................................................................................. 10

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ................................................................................................ 10

*Oyster Optics, LLC v. Ciena Corp.*,
   No. 17-cv-05920-JSW (N.D. Cal. Sept. 14, 2020) ..................................................................... 8

*PA Realty Group, LLC v. Hornbeck*,
   No. 16-cv-00630-VLB, 2017 WL 4169409 (D. Conn. Sept. 19, 2017) ..................................... 2

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) .................................................................................................................. 10

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ......................................................................................................... 8

*Silverman v. Payward, Inc.*,
  No. 19-CV-2997(JSR), 2019 WL 3242347 (S.D.N.Y. June 24, 2019) ...................................... 8

*Utica Mutual Insurance Co. v. Fireman's Fund Insurance Co.*,
  No. 09-CV-853, 2017 WL 5514705 (N.D.N.Y. Nov. 16, 2017) ................................................ 3

*Zagano v. Fordham University*,
  900 F.2d 12 (2d Cir. 1990) ........................................................................................................ 1

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 3

Fed. R. Civ. P. 32 ............................................................................................................................ 3

Fed. R. Civ. P. 56 .................................................................................................................. 1, 4, 7

Fed. R. Evid. 801 ............................................................................................................................ 3

Fed. R. Evid. 902 ............................................................................................................................ 2

Local Civil Rule 6.3 ........................................................................................................................ 8

Nouveau Diamonds LLP ("Nouveau") manufactures the diamonds that Fenix Diamonds LLC ("Fenix") sells. Nouveau does not practice the methods of the '078 patent claims under any reasonable interpretation of the Court's constructions. Additionally, Plaintiffs no longer allege that Fenix infringes the '189 patent.

**I.     FENIX DOES NOT INFRINGE THE '189 PATENT AS A MATTER OF LAW**

Plaintiffs' operative complaint against Fenix includes a charge of infringement of the '189 patent. *See* ECF No. 16 at ¶¶ 84–99 (Am. Compl.); Pls.' Resp. to Fenix's Rule 56.1 Statement of Facts ("RSOF") ¶ 1. Fenix denied these allegations and counterclaimed for a declaration of non-infringement. ECF No. 43 at First Counterclaim ¶¶ 17–20; RSOF ¶ 3. Plaintiffs now admit that they "no longer assert that Fenix infringes the '189 patent." RSOF ¶¶ 12, 72–74.

Plaintiffs cite no statute, rule, or case that authorizes a dismissal without prejudice at this late stage. To the contrary, Second Circuit case law makes clear that a dismissal without prejudice should not be granted under these circumstances. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004) ("[A] party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice."). Indeed, "[c]ourts in this Circuit often reject motions for dismissal without prejudice when they are made, as here, after summary judgment motions have been filed." *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-CV-5393 (KMW), 2018 WL 1115517, at *4 (S.D.N.Y. Feb. 26, 2018).

Plaintiffs have not made a formal application for a dismissal without prejudice, and, even if they had, Fenix has filed its own counterclaim in this action. Fenix's summary judgment motion is proper. In the absence of any assertion of infringement, much less evidence thereof, the Court should grant summary judgment that Fenix does not directly or indirectly infringe the '189 patent. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("Rule 56(c) mandates the entry of summary

1

judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## II.   FENIX DOES NOT INFRINGE THE '078 PATENT AS A MATTER OF LAW

In opposing Fenix's motion, Plaintiffs accuse Fenix of mischaracterizing the Court's construction of the '078 patent claims. Pls.' Opp'n Br. at 1, 6, 9, and 11. They also object to Fenix's reliance on documentary evidence that Nouveau voluntarily produced in this action. *Id*. at 1–2, 13–14. Neither argument creates an issue of fact as to the alleged infringement.

### A.   Nouveau's Evidence Is Admissible

There is no dispute that Nouveau grows the diamonds that Fenix sells. RSOF ¶¶ 39–40. Fenix cannot infringe the '078 patent, either directly or indirectly, unless Nouveau practices every element of the claimed method. *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed. Cir. 2012) (A plaintiff must show that "all steps of the claimed method [are] performed.").

Fenix's motion relies upon an affidavit of (i) ▇▇▇▇▇▇ and ▇▇▇▇▇▇ ("the Affidavit"), witnesses who have intimate knowledge of Nouveau's process, and (ii) admissions of Plaintiffs' experts. RSOF ¶¶ 42–48; 50–52; 63–64; 72–74. The Affidavit is notarized and, thus is a self-authenticating acknowledged document. Fed. R. Evid. 902(8); *see PA Realty Grp., LLC v. Hornbeck*, No. 16-cv-00630-VLB, 2017 WL 4169409, at *8 (D. Conn. Sept. 19, 2017) ("[T]he affidavit is notarized and is therefore admissible as a self-authenticated document . . . ."); *see also Hutter v. Countrywide Bank, N.A.*, No. 09-cv-10092 NSR, 2015 WL 5439086, at *2 n.2 (S.D.N.Y. Sept. 14, 2015) ("Plaintiff's Affidavit is already properly before the Court and is otherwise self-authenticating.").

Plaintiffs' infringement expert agrees that the Affidavit describes Nouveau's "normal" process. Statement of Uncontested Material Facts ("SOF") ¶ 45, Expert Report of Michael Capano, Ph.D. Regarding Infringement of U.S. Patent No. 6,858,078 ("Capano Rpt.") at ¶ 225. Plaintiffs

themselves rely on the Affidavit to support infringement. Pls.' Opp'n Statement of Facts ("PSOF") at ¶ 51. Similarly, Plaintiffs do not take issue with the description in the Affidavit as to the formation of polycrystalline material during Nouveau's growth process. RSOF ¶¶ 48–52.[1] Because Plaintiffs' agents and representatives have manifested adoption of the Affidavit, it is non-hearsay under Federal Rule of Evidence 801(d)(2)(A)–(C). *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 09-CV-853, 2017 WL 5514705, at *4 (N.D.N.Y. Nov. 16, 2017).

Plaintiffs assert that Fenix has "not identified a trial witness who can authenticate the Affidavit and sponsor its admission at trial." RSOF ¶ 31. As noted above, the Affidavit is admissible. In any event, Fenix identified both of these witnesses in its first Rule 26(a) disclosures (dated April 6, 2020) as having knowledge of the manufacture of laboratory-grown diamonds. *See* FRSOF ¶ 10, Ex. 25. Plaintiffs also identified both of these witnesses. *See* FRSOF ¶ 10, Ex. 26. As of the filing of this reply brief, Plaintiffs have already deposed one of the witnesses and are currently deposing the other.[2] It is well-established that, when ruling on a motion for summary judgment, the Court "may rely on 'any material that would be admissible' at a trial." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012).

Plaintiffs are mistaken when they contend that Fenix has not facilitated the collection of information from Nouveau. Opp. Br. at 12. At Fenix's insistence, Nouveau made ▇▇▇

---

[1] The Court should note the careful way in which Plaintiffs pose their objections. "An objection to the admissibility of a document is not the equivalent of a contention that the document's contents are untrue." *Major League Baseball Prop., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008). Crucially, despite the hearsay and other evidentiary objections, Plaintiffs do not dispute that large quantities of non-monocrystalline growth occur in Nouveau's process. *See Jacobs v. New York City Dep't of Educ.*, 768 F. App'x 86, 88 (2d Cir. 2019) (distinguishing hearsay objections to a movant's Local Rule 56.1 statement from responses that do not genuinely dispute material facts).

[2] Plaintiffs incorrectly assert that Fenix will oppose the entry of Nouveau's testimony into evidence. *See* Opp. Br. at 13, n.5. ▇▇▇ *See* FRSOF ¶ 83, Ex. 27. In addition, Fenix simply reserved its right to object to evidence that has yet to be taken or disclosed. *Id.* Fenix would have reserved the right to object to *any* deposition transcript Plaintiffs sought to introduce. *See* Fed. R. Civ. P. 32.

3



### B. Nouveau Does Not Practice the Claimed Steps

All asserted claims of the '078 require (1) "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C." and (2) "growing single-crystal diamond . . . on the growth surface." RSOF ¶ 13.

1. ▮

The '078 patent's core teaching is that single crystal diamonds, i.e., diamonds having insubstantial non-monocrystalline growth, will result when the temperature gradients across the growth surface are maintained at less than 20° C. SOF ¶ 54, Capano Rpt. at ¶ 186 ("[The '078 patent] teaches that temperature gradients of less than 20° C are *necessary* to produce uniform growth over large diamonds.") (emphasis added); SOF ¶ 59, '078 patent at 6:48–54 ("Precise control over . . . growth

4

surface temperature gradients *prevents the formation of polycrystalline diamond*.") (emphasis added).

To this end, all asserted claims require "growing single-crystal diamond . . . on the growth surface."

Plaintiffs' expert Dr. Capano correctly concludes that Nouveau does not practice the claims if the "growth surface" includes regions of polycrystalline growth:

> [I]f the "parasitic" non-diamond or polycrystalline diamond material that grows during MPCVD diamond production was part of the "growth surface" one would not be "growing single-crystal diamond . . . on the growth surface" as required by the claim.

Fenix's Resp. to Pls.' Statement of Material Facts ("FRSOF") ¶ 109, Capano Rpt. at ¶ 173. Because Nouveau does not infringe if the "growth surface" includes polycrystalline material, Dr. Capano explains that "growth surface" must only refer to the single-crystal domain of growth: "Accordingly, I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the periphery of the single crystal diamond." SOF ¶ 29, Capano Rpt. at ¶ 173; *see* FRSOF ¶¶ 67, 96, 98, *id*. at ¶ 167.

But whether "growth surface" includes polycrystalline material has not been a live controversy since the Court's *Markman* Order where the Court concluded that "[t]he construction of the term "growth surface" *must therefore not exclude polycrystalline growth*." SOF ¶ 18, *Markman* Order at 20 (emphasis added). The following table compares Plaintiffs' interpretation of "growth surface" with the Court's Order.

| **Plaintiffs** | **The Court** |
|---|---|
| "In my opinion, the growth surface is the region where single-crystal diamond grows . . . and does not include the surrounding areas." FRSOF ¶¶ 67, 96, 98, Capano Report at ¶ 167; FRSOF ¶¶ 67, 96, 98, Capano Dep. Tr. at 178:8–11 (similar). | "Plaintiffs' proposed construction [of "growth surface"] . . . would *wrongly* restrict the term to include only surface area where single-crystal diamond is growing." SOF ¶ 19, *Markman* Order at 19 (emphasis added). |

| Plaintiffs | The Court |
|---|---|
| "No, I am not willing to include the entire surface upon which hydrocarbon gases are accruing [in "growth surface"]. I think that's contrary to the Court's construction." FRSOF ¶¶ 67, 96, 98, Capano Dep. Tr. at 180:21–181:4. | The "growth surface" refers to "the *entire* surface where hydrocarbon gases are accruing into new diamond." SOF ¶ 17, *Markman* Order at 19 (emphasis added). |
| "I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the periphery of the single crystal diamond." SOF ¶ 29, FRSOF ¶¶ 67, 96, 98, Capano Report at ¶ 173; FRSOF ¶¶ 67, 96, 98, Capano Dep. Tr. at 178:20–24 (similar). | The "growth surface" "must . . . not exclude polycrystalline growth." SOF ¶ 18, *Markman* Order at 20. |

Dr. Capano agrees that Nouveau's polycrystalline domain includes polycrystalline diamond. FRSOF ¶¶ 67, 96, 98, Capano Dep. Tr. at 178:2–11. Nevertheless, Dr. Capano attempts to draw a subtle distinction that because Nouveau's polycrystalline domain in View 10 of the Affidavit might not be *exclusively* polycrystalline diamond, it is not part of the growth surface. FRSOF ¶¶ 67, 96, 98, Capano Dep. Tr. at 178:5–11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



NV3/NV967/Affidavit View 10. But again, the Court has already resolved this dispute. Specifically, the Court held that in the context of the '078 patent, "diamond" refers to all domains

6

of growth, including "graphite" and "diamond-like carbon." SOF ¶ 24, PSOF ¶ 37, *Markman* Order at 28. The Court's holding is consistent with the '078 patent, which instructs that "diamond-like carbon" is a "[t]ype of [d]iamond." FRSOF ¶ 50, '078 patent at 14:17–21.

Thus, no reasonable person could conclude that Nouveau forms "insubstantial non-monocrystalline material" on the growth surface, as required by every asserted claim. Plaintiffs, to their credit, do not advance this argument. Instead, Plaintiffs allege that Nouveau grows insubstantial non-monocrystalline material because the finished diamonds Fenix sells, from which the non-monocrystalline material has been removed via post-processing including laser-cutting, polishing, and annealing, are single-crystal. PSOF ¶¶ 40–59. By doing so, Plaintiffs manipulate the asserted claims from "*growing* single-crystal diamond . . . on the growth surface" into "*selling* single-crystal diamond." Furthermore, Plaintiffs advance a new theory in their response to Fenix's Rule 56.1 statement that does not appear in any of their expert reports, in particular that insubstantial non-monocrystalline growth is not "an unexpected or atypical amount." RSOF ¶ 51. Put another way, Plaintiffs now contend that "insubstantial" refers to an expected or typical amount of non-monocrystalline growth.

Plaintiffs' theories as to "single-crystal diamond" are merely creative attempts to avoid the Court's construction and to capture a diamond with severe non-monocrystalline growth, if such growth is "expected" or capable of being excised through rounds of laser-cutting, polishing, and annealing. The Court rejected Plaintiffs' proposed construction of a "substantially single-crystal [diamond]" for being "too broad." *Markman* Order at 29. It follows that a "substantially single-crystal [diamond]" cannot be infringing.

In a further attempt to avoid the Court's *Markman* Order, Plaintiffs erroneously contend that it is not possible to grow insubstantial non-monocrystalline material using an MPCVD

7

process. Opp. Br. at 8–9, PSOF ¶¶ 52–55. But this is exactly what the '078 patent purports to achieve. SOF ¶ 59, '078 patent at 6:48–54 ("Precise control over . . . growth surface temperature gradients *prevents the formation of polycrystalline diamond*.") (emphasis added); SOF ¶ 57, *id*. at 5:5–9 ("[T]he distance D *can not* be so large as to prevent the heat-sinking effect of the [side-contact-holder] *that prevents the formation of twins or polycrystalline diamond* along the edges.") (emphasis added); PSOF ¶ 72, *id*. at 13:66–14:1 ("[T]he resulting diamond . . . was a single-crystal, with a small degree of polycrystallinity localized at the top edges of the diamond.").

Importantly, Plaintiffs did not seek reconsideration of the Court's *Markman* order and, in any event, such a motion would have been ill-advised. Under Local Civil Rule 6.3, "'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Silverman v. Payward, Inc.*, No. 19-CV-2997(JSR), 2019 WL 3242347, at *1 (S.D.N.Y. June 24, 2019) (Rakoff, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "A motion for reconsideration 'is not a vehicle for relitigating old issues . . . or otherwise taking a second bite at the apple.'" *Silverman*, 2019 WL 3242347, at *1 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)). To the extent Plaintiffs believed that the Court clearly erred in its claim construction, they should have sought reconsideration rather than having its expert unilaterally reconstrue the terms in a manner the Court has already considered and rejected.[4]

### 2. Nouveau Does Not Control All Temperature Gradients to Less Than 20° C

The '078 patent "teaches that temperature gradients of less than 20° C are *necessary* to produce uniform growth over large diamonds." SOF ¶ 54, Capano Rpt. at ¶ 186 (emphasis added).

---

[4] Plaintiffs are obligated to read, understand, and follow the Court's claim construction. *See* Ex. 32, Order Den. Recons., *Oyster Optics, LLC v. Ciena Corp.*, No. 17-cv-05920-JSW, at 2 (N.D. Cal. Sept. 14, 2020), ECF No. 137 ("Ciena is strongly encouraged to read the Order.").

Plaintiffs do not seriously dispute that Nouveau's diamonds do not have uniform growth, that is "post-processing is required to remove polycrystalline material at the periphery." RSOF ¶ 51; *see* RSOF ¶ 50. Accordingly, Nouveau does not maintain temperature gradients of less than 20° C.

In an effort to create a factual dispute, Plaintiffs rely on several pieces of so-called "evidence" including finite-element-analysis ("FEA"), experiments performed in M7D's facilities, and "corrected" temperature gradient measurements. With respect to FEA, Dr. Capano testified that his analysis does not model Nouveau's process. FRSOF ¶¶ 64-66, 108, Capano Dep. Tr. at 263:13–16. Dr. Capano further testified that his experiments conducted at M7D's facilities neither modeled Nouveau's process nor found the maximum temperature gradient. FRSOF ¶¶ 100, 104, 105, Capano Dep. Tr. at 239:6–10.

Dr. Capano reliance on "corrected" temperature gradient measurements conducted by Nouveau is similarly unavailing. Nouveau measured growth surface temperature gradients by capturing (i) the temperature at the center of the single-crystal domain and (ii) the temperature near one to four points on the periphery of the single-crystal domain. Dr. Capano "corrected" the temperature measurements at the center and at the periphery (based on differences the optical properties) to obtain "corrected" temperature gradients. PSOF ¶ 98, FRSOF ¶ 98, Capano Rpt. at ¶¶ 217, 223.

Dr. Capano's reliance on center to edge temperature gradients runs counter to Plaintiffs' positions on the temperature gradient limitation during claim construction. Plaintiffs rejected Fenix's construction of the temperature gradient limitation to require "using temperatures measured at the middle and an edge" Plaintiffs argued as follows:

> Fenix goes even further astray by arguing [] that, "as a matter of physics," measuring temperatures at the middle and an edge of a diamond growth surface "is the only way to determine the maximum temperature gradient." *Not so. Growth surface heat patterns may*

9

> *have localized hot spots . . . for which the maximum temperature difference will not be reflected by middle and edge temperature measurements but would be reflected by one or more measurements localized on the hot spot itself.*

FRSOF ¶¶ 67, 96, 98, ECF No. 34, Pls.' Rebuttal Claim Construction Br. at 3. The Court sided with Plaintiffs in concluding that "[c]laims 1 and 12 refer to '*all* temperature gradients across the growth surface,' *not merely those measured between the middle and the edge.*" FRSOF ¶¶ 67, 96, 98, *Markman* Order at 15–16 (emphasis added). By successfully arguing that middle to edge measurements are not dispositive of the maximum temperature gradient during claim construction, Plaintiffs are judicially estopped from arguing that center to edge measurements taken by Nouveau (and "corrected" by Dr. Capano) are demonstrative of *all* temperature gradients on the growth surface. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

## C. Summary Judgment Is Proper if Nouveau's Evidence Is Inadmissible

If the Court accepts Plaintiffs' invitation to exclude Nouveau's documents, Plaintiffs have no admissible evidence. Therefore, summary judgment of non-infringement would be appropriate for Plaintiffs' failure to meet *their* burden of proving infringement. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("Under modern summary judgment law, a patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited." (citing *Celotex*, 477 U.S. at 322–23)).

## III. CONCLUSION

For the foregoing reasons, Fenix respectfully requests that the Court to grant its motion for summary judgment of non-infringement of the '078 and '189 patents.

Highly Confidential

Dated: November 4, 2020

/s/ Nicole E. Kopinski
Daniel P. Waxman (DW-0599)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2040
Facsimile: (212) 541-4630
dpwaxman@bryancave.com

Steven H. Sklar (*pro hac vice*)
Maxwell B. Snow (*pro hac vice*)
David M. Airan (*pro hac vice*)
Paul J. Filbin (*pro hac vice*)
Nicole E. Kopinski (*pro hac vice*)
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, IL 60601
Telephone: (312) 616-5600
Facsimile: (312) 616-5700
dairan@leydig.com
ssklar@leydig.com
msnow@leydig.com
pfilbin@leydig.com
nkopinski@leydig.com

*Attorneys for Defendant, Fenix Diamonds LLC*