

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T +1.202.654.6200
F +1.202.654.6211
PerkinsCoie.com

January 15, 2021

Terrence J. Wikberg
TWikberg@perkinscoie.com
D. +1.202.654.6201
F. +1.202.654.9149

**VIA ECF**

Honorable Jed S. Rakoff
United States District Court Judge, Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    **Re:**    *Carnegie Institution of Washington v. Fenix Diamonds LLC*, **Case No. 20-cv-200-JSR**

Dear Judge Rakoff:

Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs") submit this letter in response to the letter brief submitted by Defendant Fenix Diamonds, LLC ("Fenix") on January 12, 2021. The summary judgment record is closed. Fenix's attempt to supplement it with favorable testimony from a transcript of Mr. Chirag Limbasiya is improper, as Plaintiffs have no opportunity to provide a responsive statement of facts. Regardless, that testimony does not suffice to authenticate Fenix's existing summary judgment evidence nor make it admissible.[1]

**Fenix's New Facts and Substantive Arguments are Improperly Presented**

Fenix's reliance on new evidence runs afoul of Local Civil Rule 56.1, under which Fenix was obligated to identify all facts on which it intended to rely in support of summary judgment, and to allow Plaintiffs an opportunity to present responsive facts. Fenix's failure to properly identify the transcript in its L.R. 56.1 filing means it should not be considered on summary judgment.

Fenix had ample opportunity to collect testimony from Nouveau before the Local Rule deadline. Fenix listed Mr. Limbasiya in its Rule 26(a) initial disclosures at the outset of this case, and Fenix's counsel has been in contact with Nouveau since the start of discovery. The Court issued its scheduling order on March 6, 2020, including setting summary judgment deadlines. Plaintiffs sought permission to file a Hague request in May of 2020, but Fenix elected not to file one of their own. Only on October 13, the same day it filed its summary judgment motion and just three days before Mr. Limbasiya's testimony was scheduled to start, did Fenix decide to piggyback on Plaintiffs' Hague request and file a motion to intervene in the Indian Court, causing additional delay. Even after Mr. Limbasiya's testimony was taken on November 2-6, 2020—while summary judgment briefing was ongoing—Fenix did not act in a timely fashion, instead waiting nearly two months before asking the court to consider that testimony.

---

[1] Fenix spends the bulk of its letter brief arguing that the transcript, Affidavit, and other evidence are admissible. Plaintiffs do not contend that the transcript is inadmissible for trial and are willing to stipulate to its admissibility. As set forth herein, however, the transcript is not appropriately considered on summary judgment.

**REDACTED FOR PUBLIC DISCLOSURE**

Perkins Coie LLP

Fenix's current submission also runs afoul of this Court's January 10, 2021 order. Fenix was granted permission to file a letter brief "identifying the portions of Mr. Limbasiya's testimony relevant to issues already briefed during summary judgment." Minute Entry for 1/8/2021 proceedings. Fenix's letter inserts new purported facts and argues new issues, *e.g.*, citing Mr. Limbasiya's testimony as evidence that "independently confirms that Nouveau's diamonds include ▮▮▮▮▮▮▮▮▮▮ non-monocrystalline growth" and that purportedly negates Plaintiffs' rocking curve analysis. Fenix Ltr. Br. at 3. This is improper. Entering new purported facts and arguments is not consistent with the relief Fenix requested nor authorized by the Court.

**Fenix Continues To Circumvent The Court's Discovery Procedures**

Fenix's current attempt to skirt the discovery rules is true to form. At every turn in this suit, Fenix has avoided formal discovery by Plaintiffs into its manufacturing processes. Early in this case, Fenix parried Plaintiffs' motion to compel production of technical information by representing to the court that Fenix "is not able to monitor, much less enforce, Nouveau's production of process information," and that Fenix has never "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Ex. A (Fenix's June 30, 2020 Letter to Chambers Under Seal). Fenix's counsel similarly refused to produce technical information through discovery on the basis that they "do not represent Nouveau, and thus, . . . are unable to 'search for and produce' the information you have requested." Ex. B (August 13, 2020 Letter from Fenix Counsel) at 2.

Notwithstanding these representations, Fenix admits it has informally collected from Nouveau, and then emailed piecemeal to Plaintiffs, thousands of disorganized images, videos, and documents, including those it now relies on in its summary judgment papers. (*See* D.I. 121 ¶ 83; D.I. 098 ¶ 65.) Fenix has also communicated instructions to Nouveau to conduct experiments, and has received from Nouveau the results, but has refused to produce those communications to Plaintiffs, baselessly citing privilege.[2] (*See* D.I. 121 at ¶¶ 80-84.)

To be clear, Fenix's refusal to follow the discovery rules in introducing Nouveau's documents has materially prejudiced Plaintiffs. As one egregious example, Plaintiffs asked Fenix early in this case to correlate the videos and photos that it had transmitted to Plaintiffs (allegedly from Nouveau), so that Plaintiffs and their expert could know which photos and videos corresponded to a particular diamond batch. Fenix refused. *See* Ex. B. (8/13/2020 Kopinski Ltr.) at 1 ("Nouveau is not our client. Therefore, we do not have the requested correlation information and are unable to obtain it from Nouveau."). Remarkably, this same "correlation information" was later provided ***by Fenix's counsel to Fenix's own expert***, who relied on it in his expert report. *See* Ex. C (Pinneo Tr.) at 144:1-145:3. ("Q. And so you received file names that were labeled in a manner that correlated the photos and videos of the growing or as-grown batches together; is

---

[2] Fenix's counsel has never explained how these communications can be privileged when Fenix's counsel has repeatedly represented that they do not represent Nouveau and that Fenix does not control Nouveau.

**REDACTED FOR PUBLIC DISCLOSURE**

Perkins Coie LLP

that right? A. That's correct. Q. And from whom did you receive those files and file names? A. [Fenix counsel] Max Snow.")[3]

As another example, because of the limited, self-serving production that Nouveau and Fenix's counsel provided throughout the fact discovery period, Plaintiffs were kept in the dark about Nouveau's ███████████████████████████, which (as discussed below) Mr. Limbasiya admits were omitted from the "affidavit" (D.I. 99-05 (the "Affidavit")) purportedly describing Nouveau's manufacturing process. Fenix Ltr. Br. Ex. B at 9:21-10:1, 14:12-20, 19:21-20:7. These details came to light only in Fenix's *rebuttal* expert reports,[4] where Fenix argued that ███ ██████████████████████████████; at that point, Plaintiffs had little opportunity to seek additional discovery or substantively respond. Fenix's statement that it had not "'withheld' any technical information" from Plaintiffs, Ex. A at 3, is hard to reconcile with this omission.

Plaintiffs respectfully ask the Court not to condone Fenix's continued discovery gamesmanship by entering Mr. Limbasiya's testimony into the summary judgment record or by accepting Fenix's representations that the record is sufficiently complete to support summary judgment.

**The Testimony Does Not Make Fenix's Summary Judgment Evidence Admissible**

Even if the Court agrees to consider Mr. Limbasiya's deposition testimony on summary judgment, that testimony does not render Fenix's evidence admissible.

It is helpful to compare Plaintiffs' use of Mr. Limbasiya's deposition with Fenix's. Plaintiffs provided Mr. Limbasiya with digital copies of all the documents they sought to authenticate and asked him to review them over the break and authenticate them the next day, which he did. *See* Fenix Ltr. Br. Ex. B at 6. In contrast, Fenix is attempting to use Mr. Limbasiya's testimony to authenticate an unbounded group of documents by description alone, including many not authenticated by Plaintiffs. *See* Fenix Ltr. Br. at 3 (quoting testimony concerning "all the videos and photographs prepared in our firm and presented in the course of this lawsuit in the New York court" and arguing it "establishes the admissibility of the evidence Fenix cited in its summary judgment motion."); *e.g.* Fenix Ltr. Br. Ex. B at 16 (answering questions from Fenix's counsel regarding "all of the videos and photographs"). Multiple documents cited in Fenix's summary judgment papers were never directly presented by Fenix to Mr. Limbasiya during deposition, including most notably 80 "data files" relied on by Fenix in summary judgment (D.I. 98 ¶ 65). This is improper. Each document Fenix intends to authenticate must be supported by an individual with knowledge. Fenix cannot use this testimony to authenticate documents for which Mr. Limbasiya never established personal knowledge. *See Sys. Agency v. Villanueva,* 19-CV-

---

[3] Dr. Pinneo's transcript was cited by Plaintiffs during Summary Judgment briefing, but excerpted for length.

[4] This implies that Fenix's expert and its outside counsel at Leydig Voit & Mayer had unilateral access to this information while Plaintiffs did not. Fenix and Nouveau also apparently had discussions related to the work of Fenix's expert Dr. Michael Pinneo which have never been provided to Plaintiffs. Fenix Ltr. Br. Ex. B at 14:1-10.

Honorable Jed S. Rakoff
January 15, 2021
Page 4

6486 (JMF), 2020 WL 7629879 (S.D.N.Y. Dec. 22, 2020) ("[d]ocuments that are not attached to an affidavit made on personal knowledge setting forth facts that would be admissible in evidence and sufficient to authenticate the document cannot be considered on summary judgment.") (internal quotation marks omitted).

Moreover, blanket authentication of "all the videos and photographs prepared in our firm and presented in the course of this lawsuit" would *still* be insufficient to support summary judgment. In the Hague proceedings, the Indian court denied Plaintiffs' request for documents from Nouveau. This means that the only documents Plaintiffs have ever seen describing Nouveau's process are the ones hand-picked by Nouveau working directly with Fenix's counsel.[5] Plaintiffs have no way to determine whether this represents the whole truth; in fact, Plaintiffs do not even know whether Nouveau provided more documents to Fenix's counsel than counsel ultimately decided to produce. It is improper for a party to cobble together a summary judgment argument from hand-picked evidence while potentially withholding contradictory evidence. See *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("At least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information.").

Fenix also tries to use Mr. Limbasiya's testimony to bolster its use of the Affidavit. Fenix relies on the Affidavit as sufficient to obtain summary judgment of noninfringement. (D.I. 120 at 2; D.I. 97 at 1, 5, 8.) But Mr. Limbasiya's conflicting testimony in fact shows that the Affidavit is incomplete and unreliable. For example, he testified that the Affidavit "describes the entire process of producing the diamonds in my firm," Fenix Ltr. Br. Ex. B at 9:18–21, but then admitted that the Affidavit "does not mention ▮▮▮▮▮▮▮▮▮▮." *Id.* at 9:21-10:1. He later extensively described in testimony the use of a ▮▮▮▮▮▮▮" that is likewise not mentioned in the Affidavit. *E.g.*, *id.* at 14:12-20, 19:21-20:7. This testimony undermines Fenix's repeated reliance on the Affidavit in summary judgment.

In sum, even admitting Mr. Limbasiya's testimony, Plaintiffs' opposition remains sound, Fenix's summary judgment evidence has not been reduced to admissible form, and disputed issues of fact continue to render summary judgment improper. (*E.g.* D.I. 97 at 1, 13-14.)

Respectfully submitted,

/s/

Terry Wikberg

---

[5] Mr. Limbasiya testified that he and his attorney worked closely with Fenix's counsel at Leydig to collect evidence. *Id.* at 7:12-14 (discussing "videos and photographs as required by Fenix Diamonds L.L.C.'s lawyer which we had sent and the like."); 8:18-21 ("I have had conversations once or twice with a U.S lawyer… lawyer Max of Fenix Diamonds L.L.C. . . . . Mr. Max demanded some documents and materials. We sent those documents.").

**REDACTED FOR PUBLIC DISCLOSURE**

Perkins Coie LLP