**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARNEGIE INSTITUTION OF WASHINGTON, | |
| M7D CORPORATION, | Civil Action No. 1:20-cv-00200-JSR |
| *Plaintiffs*, | |
| v. | |
| FENIX DIAMONDS LLC, | |
| *Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

        A.      Fenix's Invalidity Counterclaim Under the '189 Patent ........................................ 2

        B.      Fenix's Invalidity Counterclaim Under the '078 Patent ........................................ 3

                1.      Fenix's remaining counterclaim is limited to the "Asserted Claims" ......... 4

                2.      Fenix's remaining counterclaim is tied to the Court's claim
                        constructions ................................................................................................ 6

III.    LEGAL STANDARD ............................................................................................... 8

        A.      Subject Matter Jurisdiction Over Declaratory Judgment Claims ........................... 8

        B.      Claim Construction is Fundamental to Validity Determinations .......................... 10

IV.     ARGUMENT ........................................................................................................... 11

        A.      Plaintiffs' Covenant Removed Subject-Matter Jurisdiction Over Fenix's
                Counterclaim ....................................................................................................... 11

        B.      Even If the Court Did Have Jurisdiction Over Fenix's Counterclaim, It Would
                Be Imprudent To Proceed To Trial ...................................................................... 14

V.      CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

CASES

*ABS Glob., Inc. v. Cytonome/ST, LLC*,
  984 F.3d 1017, 1026 (Fed. Cir. 2021).....................................................................13

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
  172 F.3d 852, 856 (Fed. Cir. 1999)......................................................................9, 13

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*,
  687 F.3d 1266, 1273–74 (Fed. Cir. 2012)...............................................................10

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340, 1343, 1346 (Fed. Cir. 2007).............................................................9

*Clalit Health Servs. v. Israel Humanitarian Found.*,
  No. 02 Civ. 6552(DC), 385 F. Supp. 2d 392, 402 (S.D.N.Y. 2005).......................15

*Dow Jones & Co. v. Ablaise Ltd.*,
  606 F.3d 1338, 1346 (Fed. Cir. 2010).......................................................................9

*Fort James Corp. v. Solo Cup Co.*,
  412 F.3d 1340, 1348 (Fed. Cir. 2005)...............................................................13, 14

*Liquid Dynamics Corp. v. Vaughan Co.*,
  355 F.3d 1361, 1371 (Fed. Cir. 2004)..................................................................9, 15

*Lochner Techs., LLC v. Vizio, Inc.*,
  567 F. App'x 931, 938, 940 (Fed. Cir. 2014) ..........................................................10

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270, 273 (1941).........................................................................................11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  959 F.3d 1091, 1100 (Fed. Cir. 2020).....................................................................10

*Medichem, S.A. v. Rolabo, S.L.*,
  353 F.3d 928, 933 (Fed. Cir. 2003)..........................................................................10

*Minnesota Min. & Mfg. Co. v. Norton Co.*,
  929 F.2d 670, 672 (Fed. Cir. 1991)...........................................................................9

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373, 1379 (Fed. Cir. 2019).....................................................................10

*Nike, Inc. v. Already, LLC*,
  663 F.3d 89, 97 (2d Cir. 2011)...........................................................................11, 12

## TABLE OF AUTHORITIES
### (continued)

*Nike, Inc. v. Already, LLC,*
  No. 09 Civ. 6366(RJS), 2011 WL 310321 at *2, *4 (S.D.N.Y. Jan. 20, 2011)........................9

*Noah Sys., Inc. v. Intuit Inc.,*
  675 F.3d 1302, 1311 (Fed. Cir. 2012)....................................................................................10

*Preiser v. Newkirk,*
  422 U.S. 395, 401 (1975)..........................................................................................................8

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
  556 F.3d 1294, 1297 (Fed. Cir. 2009)......................................................................................9

*SanDisk Corp. v. STMicroelectronics, Inc.,*
  480 F.3d 1372, 1382 (Fed. Cir. 2007)......................................................................................8

*Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.,*
  933 F.3d 1367, 1374 (Fed. Cir. 2019)....................................................................................12

*WundaFormer, LLC v. Flex Studios, Inc.,*
  No. 15 Civ. 4802(JSR), 2015 WL 7181249 at *2 (S.D.N.Y. Nov. 10, 2015) .............12, 14, 15

STATUTES

35 U.S.C. § 101..........................................................................................................5, 6, 10

35 U.S.C. § 102.......................................................................................................4, 6, 7, 8, 10

35 U.S.C. § 103.......................................................................................................5, 6, 7, 8, 10

35 U.S.C. § 112.........................................................................................................5, 6, 7, 10

## I.    INTRODUCTION

Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs") once asserted U.S. Patent Nos. 6,858,078 (the "'078 Patent") and RE41,189 (the "'189 Patent") against defendant Fenix Diamonds LLC ("Fenix"). The Court granted summary judgment of non-infringement to Fenix based on the manufacturing process of Fenix's diamonds as disclosed by its manufacturer Nouveau Diamonds LLP ("Nouveau").

Plaintiffs have now granted two covenants not to sue Fenix, Nouveau, or any of their various related parties based on any past, present, or future Fenix products manufactured by Nouveau. Those covenants have extinguished any case or controversy as to the asserted patents. The Court has dismissed Fenix's declaratory judgment counterclaims for invalidity of the '189 Patent because of Plaintiffs' covenant. Yet, quixotically, Fenix insists that the Court should try to a jury Fenix's declaratory judgment counterclaims for invalidity of the '078 Patent.

The Court should decline Fenix's invitation to conduct a moot trial and issue an advisory opinion as to validity of the '078 Patent. None of Fenix's invalidity arguments, if tried today, could grant more relief to Fenix than it has attained through Plaintiffs' covenant and the Court's summary judgment order. As with the '189 Patent, the Court lacks subject-matter jurisdiction to grant a declaratory judgment of invalidity of the '078 Patent. And even if *arguendo* the Court had jurisdiction over Fenix's counterclaim, it would be improvident to devote the Court's resources to try a matter which cannot move the needle for Fenix.

Plaintiffs respectfully request that the Court dismiss Fenix's counterclaim for invalidity of the asserted claims of the '078 Patent.

## II.    BACKGROUND

### A.    Fenix's Invalidity Counterclaim Under the '189 Patent

Plaintiffs filed the operative Complaint on March 5, 2020, alleging that Fenix infringed U.S. Patent Nos. 6,858,078 (the "'078 Patent") and RE41,189 (the "'189 patent"). ECF No. 16. On May 18, 2020, Fenix served Plaintiffs with multiple counterclaims, including a counterclaim for a declaratory judgment of invalidity of the asserted claims of the '189 patent (Third Counterclaim). ECF No. 43 at 21.

At the close of discovery, Fenix moved for summary judgment of non-infringement of the "asserted claims" of the '078 Patent and the '189 Patent. ECF No. 97 at 1. Upon consideration of Fenix's motion, Plaintiffs acknowledged that they could not gather the evidence needed to demonstrate practice of the '189 Patent by Fenix's manufacturer Nouveau. Accordingly, Plaintiffs covenanted not to sue Fenix on the '189 Patent. The covenant covered "Fenix and its supplier Nouveau Diamonds LLP ('Nouveau')," "Fenix's direct or indirect subsidiaries," and "any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 1, (Nov. 17, 2020) Email.[1] The covenant covered "previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of [Fenix's] product(s) annealed by Nouveau's annealing process." *Id*. Although Fenix only moved for non-infringement of the asserted claims of the '189 patent, Plaintiffs' covenant applied to "any claim of the '189 Patent." *Id*.

The Court granted Fenix's motion for summary judgment of non-infringement of the '189 Patent on June 16, 2021. ECF No. 133. In the same Order, the Court correspondingly dismissed "defendants' declaratory judgment counterclaims relating to the '189 Patent . . . for lack of subject

---

[1] Citations to "Ex.__" refer to the exhibits attached to the Declaration of Matthew J. Moffa concurrently filed herewith.

matter jurisdiction" "given the binding covenant not to sue executed by plaintiffs and the fact that defendants' counterclaims arise under the Declaratory Judgment Act." *Id.* at 30.

### B.    Fenix's Invalidity Counterclaim Under the '078 Patent

Plaintiffs' March 5, 2020 Complaint also alleged that Fenix infringed the '078 Patent. ECF No. 16. And, in its May 18, 2020 answer, Fenix counterclaimed for invalidity of the '078 Patent (Fourth Counterclaim), just as it had done for the '189 patent. ECF No. 43 at 23.

The Court's June 16 Order granted summary judgment of non-infringement of the '078 Patent. That ruling relied on the Court's construction of "growth surface." *See, e.g.*, ECF No. 133 at 20, 28. The Court concluded that "no reasonable factfinder could conclude that Noveau 'grows single-crystal diamond . . . on the growth surface,' as the Patent uses those terms." *Id.* at 22. It also noted that "the Court construed 'growth surface' to mean 'the surface upon which diamond growth is occurring,'" and found "no legal or factual basis for departing from the law of the case." *Id.* at 20. As Plaintiffs had not yet granted a covenant as to the '078 Patent, the Court preserved for trial Fenix's invalidity counterclaims under the '078 Patent. ECF No. 133 at 32.

On June 21, 2021, Plaintiffs further covenanted not to sue Fenix on the '078 Patent. As with the '189 Patent, the second covenant covered "Fenix, Nouveau, Fenix's direct or indirect subsidiaries, or any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 2 (June 21, 2021 Email). The covenant also covered "previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of Fenix's products manufactured by Nouveau's manufacturing process." *Id*. And, again, although Fenix only moved for non-infringement of the "asserted claims" of the '078 Patent, Plaintiffs' covenant applied to "any claim of the '078 Patent." *Id*.

In consideration of the Court's summary judgment ruling, the second covenant was drafted to expressly apply so long as the Court's constructions of "single-crystal diamond," "growth surface," "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C," "growing single-crystal diamond ... on the growth surface at a growth temperature in a deposition chamber having an atmosphere with a pressure of at least 130 torr," and "growing single-crystal diamond ... on the growth surface at a temperature of 900-1400° C" remain the law. *Id.*

### 1.    Fenix's remaining counterclaim is limited to the "Asserted Claims"

Throughout the case, Fenix has maintained a limited scope for its invalidity counterclaim, particularly compared to Plaintiffs' covenant not to sue.

Fenix's counterclaim has never been directed to every claim in the '078 Patent, but only those claims of the '078 Patent that Plaintiffs identified in its March 11, 2020 Local Patent Rule 6 Disclosures as infringed by Fenix, i.e. claims 1, 6, 7, 11, 12, and 16 ("the Asserted Claims"). Today, Fenix seeks "a declaratory judgment that the ***Asserted Claims*** of the '078 Patent are invalid." ECF No. 43, Fourth Counterclaim, ¶ 50 (emphasis added).

Fenix's specific allegations within its counterclaim are each limited to the "Asserted Claims."

- "The ***Asserted Claims*** of the '078 Patent are invalid for the reasons set forth in Fenix's Preliminary Invalidity Contentions on March 20, 2020. . . ." *Id.* ¶ 41 (emphasis added).

- "U.S. Patent No. 5,628,824 . . . invalidates the ***Asserted Claims*** of the '078 Patent under at least 35 U.S.C. § 102." *Id.* ¶ 42 (emphasis added).

- "Vohra in view of U.S. Patent No. 5,449,412 . . . invalidates the ***Asserted Claims*** of the '078 Patent under at least 35 U.S.C. § 103." *Id.* ¶ 43 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not enabled and thus invalid under 35 U.S.C. § 112 . . . ." *Id.* ¶ 44 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not enabled and thus invalid under 35 U.S.C. § 112 . . . ." *Id.* ¶ 46 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not patent eligible and thus invalid under 35 U.S.C. § 101." *Id.* ¶ 48 (emphasis added).

Fenix's operative invalidity contentions are similarly limited to the "Asserted Claims" of the '078 Patent. Specifically, Fenix's May 26, 2020 Invalidity Contentions address only "asserted claims 1, 6, 7, 11, 12 and 16 of the . . . '078 patent . . . and claims 1 and 2 of . . . the '189 patent . . . (collectively, the 'Asserted Claims')." Ex. 3 (Invalidity Contentions) at 1; *see also id.* at 7 ("Fenix identifies the following items of prior art that anticipates or renders obvious one or more of the ***Asserted Claims***.") (emphasis added).

Fenix's Expert Report of J. Michael Pinneo, Ph.D., Regarding Invalidity of U.S. Patent Nos. RE41,189 and 6,858,078, served on September 19, 2020, is similarly limited to the Asserted Claims. According to Dr. Pinneo, he was "retained as a technical expert by Fenix Diamonds to study and provide my opinions on . . . the patentability or unpatentability of, the ***Asserted Claims***." Ex. 4 (Pinneo Rep.) ¶ 4 (emphasis added). Regarding the '078 Patent, he considered only the validity of claims 1, 6, 7, 12, and 16 (i.e. the Asserted Claims) in light of supposed prior art. *See Id.* at Table of Contents; *id.* ¶ 1499 ("As described in detail above, it is my opinion that claims 1, 6, 7, 11, 12, and 16 of the '078 patent and claims 1 and 2 of the '189 patent are invalid as anticipated

and as obvious . . . ."). And for his other invalidity opinions, he explained: (1) "[i]t is also my opinion that **claims 1, 6, 7, 11, 12, and 16 of the '078 patent** . . . are invalid as failing to recite patent eligible subject matter," *id.* ¶ 1500 (emphasis added); and (2) "[i]t is also my opinion that **claims 1, 6, 7, 11, 12, and 16 of the '078 patent** are invalid as lacking written description and/or enablement and indefiniteness . . . .","" *id.* ¶ 1501 (emphasis added).

**2.    Fenix's remaining counterclaim is tied to the Court's claim constructions**

Fenix's invalidity counterclaim is also inexorably linked to the Court's claim constructions, and principally its construction of "growth surface."

Fenix's operative invalidity contentions allege invalidity of the '078 Patent under multiple statutory sections: 35 U.S.C. § 101 (subject-matter eligibility), §112 (definiteness, enablement, and written description), § 102 (anticipation) and § 103 (obviousness). In each case, Fenix's allegations, and Dr. Pinneo's September 19, 2020 expert report, applies one or more claim terms construed by the Court and addressed in its June 16 Order.

To start, Fenix's arguments under § 101 depend *inter alia* on the Court's construction of "growth surface." Fenix characterized the "Asserted '078 Claims" as "(i) a functionally recited desired result and (ii) collateral prior art structure for tying the desired result to a particular context." Ex. 3 (Invalidity Contentions) at 16. The supposed "desired result" was "controlling temperature of a **growth surface** of the diamond such that all temperature gradients across the growth surface are less than 20° C." *Id.* at 17 (emphasis added). Fenix likewise focused on the term "growth surface" for its application of the "*Mayo/Alice*" test for patent eligibility. When describing the "focus of the claimed advance," Fenix pointed to the claim language "controlling temperature of a **growth surface** of the diamond such that all temperature gradients across the growth surface are less than 20° C." *Id.* at 23 (emphasis added). Dr. Pinneo's opinions under § 101

- 6 -

correspondingly depend on the construction of "growth surface." He characterized the claims as reciting "the scientific principle of preventing the edge effect, namely thermal gradients under 20°C," Ex. 4 (Pinneo Rep.) ¶ 1236, and under the claims, gradients less than 20°C are required on the "growth surface."

Fenix's arguments under § 112 also depend on the term "growth surface." Fenix alleged that the '078 Patent "does not teach how to control the temperature of a *growth surface* such that all temperature gradients across the growth surface are less than 20° C without undue experimentation," "does not teach how to control a temperature gradient across the *growth surface* at . . . the lower end of the claimed temperature gradient range," and "does not teach how to measure a *growth surface* temperature with a degree of accuracy sufficient to enable one of skill to control all temperature gradients across the growth surface to less than 20° C." Ex. 3 (Invalidity Contentions) at 25–26 (emphasis added). Dr. Pinneo offered multiple opinions under § 112 that depended on the meaning of "growth surface." For example, Dr. Pinneo concluded that the Asserted Claims "are invalid as lacking written description and/or enablement and indefiniteness regarding the claimed feature of 'controlling temperature of a *growth surface* of the diamond such that all temperature gradients across the growth surface are less than 20° C.'" Ex. 4 (Pinneo Rep.) ¶ 1501 (emphasis added). And, in his analysis of indefiniteness under § 112, Dr. Pinneo opined that "determining whether 'all temperature gradients across the *growth surface* are less than 20° C' as required in the Asserted Claims of the '078 patent remains to be technically unfeasible and a highly subjective inquiry." *Id.* ¶ 1229 (emphasis added).

Finally, Fenix's invalidity contentions under 35 U.S.C. §§ 102 and 103 also depend on the claim construction of, *inter alia*, "growth surface." In its first of two claim charts for the '078 Patent, claim elements 1[A] and 1[B] include the term "growth surface," for which Fenix points

to prior art disclosures of *e.g.* "the "surface. . . of the. . . base material," "the major surface … of the …base material," "the surface of the substrate," "the principal surface" "of a diamond substrate," "the top plate," and "the diamond seed crystal surface." Ex. 3 (Invalidity Contentions) Table B.1, at 2, 4, 7, 10, 13. Fenix's other claim chart provides quotes from supposed prior art that refer to "the deposition surface," "the wafer," "the plane of the substrate," "the substrate surface," and "the surface of a metal substrate." *Id.* Table B.2, at 3-4, 6. Any comparison of these disclosures to the challenged claims requires an application of the claim construction for "growth surface."[2]

## III.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction Over Declaratory Judgment Claims

Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted).

---

[2] Although Dr. Pinneo also offered opinions under §§ 102 and 103, *none* of these opinions could be used by Fenix for an invalidity trial under the Court's claim constructions. Dr. Pinneo exclusively applied §§ 102 and 103 under the condition that Plaintiffs' infringement theories might be found correct. According to Dr. Pinneo's report, "to the extent that Plaintiffs' infringement theories are correct or applicable, then the prior art would anticipate and render obvious the Asserted Claims of the '078 patent." Ex. 4 (Pinneo Rep.) ¶ 105; *see also id.* ¶ 148 ("[I]f Plaintiffs' infringement theories were true, then the prior art would anticipate and render obvious the claims."); *id.* ¶ 149 ("My analysis of the prior art for the '078 patent departs from the Court's Claim Construction Order and how a POSA would understand the '078 patent to the same extent as Plaintiffs' infringement theories."). Dr. Pinneo offered **no** alternative invalidity arguments assuming Plaintiffs' infringement theories were wrong, *i.e.* under the claim constructions adopted by the Court. Accordingly, given the Court's ruling on summary judgement determining that Fenix does not infringe the '078 Patent, Fenix has no expert testimony to support any claim of invalidity for the Asserted Claims of the '078 Patent under §§ 102 and 103, barring any appeal and reversal of the Court's claim constructions.

A party seeking declaratory judgment must show there is an actual controversy. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007); *see Nike, Inc. v. Already, LLC,* No. 09 Civ. 6366(RJS), 2011 WL 310321, at *2 (S.D.N.Y. Jan. 20, 2011), *aff'd*, 663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).

"[A] covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010). "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). "[A]ll of the circumstances must be considered for each particular case." *Id.; see Nike,* 2011 WL 310321, at *4. A covenant need not cover "wholly speculative" circumstances to divest the court of jurisdiction. *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999). Rather, a covenant under the patent "as it presently reads" will suffice. *See id.*

Even where a trial court has jurisdiction to adjudicate patent validity, a district court judge "faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) (citing *Nystrom v. TREX Co.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003)). "The reason for giving this discretion to the district court is to enable the court to make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991).

### B.      Claim Construction is Fundamental to Validity Determinations

Claim construction is fundamental to a validity determination. As the Federal Circuit has explained, "[b]oth anticipation under § 102 and obviousness under § 103 are two-step inquiries" and "[t]he first step in both analyses is a proper construction of the claims." *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

Claim construction is also fundamental to validity determinations under § 101. According to the Federal Circuit, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). The Federal Circuit has also explained that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

The same holds true for claims under § 112. "Section 112 requires enablement of 'only the claimed invention,' not matter outside the claims. For that reason, the 'enablement inquiry necessarily depends on an interpretation of the claims.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (citations omitted). Claim construction is also fundamental to the written description requirement. "It is well-established that 'claim construction is inherent in any written description analysis.'" *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 938 (Fed. Cir. 2014) (citation omitted). Therefore, when the Federal Circuit disagrees with a district court's claim construction, it may vacate the written description ruling and "remand for further proceedings." *Id.* at 940. Finally, "[w]hether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).

## IV.    ARGUMENT

### A.    Plaintiffs' Covenant Removed Subject-Matter Jurisdiction Over Fenix's Counterclaim

Plaintiffs have made a binding covenant not to sue for infringement of the '078 Patent. After Plaintiffs' covenant, Fenix no longer faces a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas.*, 312 U.S. at 273. This Court has reached the same conclusion with respect to Fenix's counterclaims against the '189 Patent, which were dismissed without prejudice. ECF No. 133 at 30.[3]

Plaintiffs' June 21, 2021 covenant is broader than the relief that Fenix attained in summary judgment. While Fenix is the only named defendant, Plaintiffs' covenant extends to Fenix's manufacturer "Nouveau," each and every one of "Fenix's direct or indirect subsidiaries," and "any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 2, Wikberg June 21, 2021 Email. While the Court's Order applies to Fenix's past acts of alleged infringement, Plaintiffs' covenant extends to ***all*** of Fenix's "previous," "current," ***and*** "future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling" of Fenix's products manufactured by Nouveau. *Id.* And, while Plaintiffs only asserted certain claims of the '078 Patent against Fenix, Plaintiffs' covenant covers ***every*** claim of the '078 Patent. With the Court's summary judgment Order, Plaintiffs' covenant removes any "immediacy and reality" of a threatened assertion under the '078 Patent. Rather, the "breadth of the Covenant renders the threat of litigation remote or nonexistent even if [Fenix] continues to market and sell" its diamonds. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir.

---

[3] In dismissing Fenix's counterclaims under the '189 Patent, the Court preserved Fenix's claim for attorneys' fees in connection with the litigation. While Plaintiffs disagree that an award of fees is warranted, the instant motion does not seek to dismiss Fenix's claim for fees incurred to date in connection with the '078 Patent.

2011) (affirming dismissal of declaratory judgment action in view of covenant not to sue), *aff'd*, 568 U.S. 85 (2013).

Plaintiffs have not elected to appeal the June 16 Order (reserving their right to do so at the appropriate time). If Plaintiffs never appeal the Order, Plaintiffs' covenant unequivocally ensures that Fenix cannot be liable for past, present, or future products manufactured by Nouveau. The result is identical if Plaintiffs appeal the Order and the Federal Circuit upholds this Court's claim constructions. In either case, Fenix—and its customers, and its manufacturer—can never be liable under the '078 Patent for any activity involving Fenix/Nouveau's past, present, or future products. Proceeding to trial of invalidity of the '078 Patent under these circumstances, in the shadow of only a hypothetical appeal, would yield an "advisory opinion" and a decision for Fenix that is "speculative," if not moot. *See Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.*, 933 F.3d 1367, 1374 (Fed. Cir. 2019). A covenant need not "ma[k]e future litigation between the parties impossible" to remove jurisdiction, and the "hypothetical possibility" of continued litigation does not create a "definite and concrete" dispute. *Nike*, 663 F.3d at 97 n.5 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Plaintiffs' covenant, by its express terms, could only cease to apply if Plaintiffs appeal the June 16 Order and then the Federal Circuit reverses it through modification of the Court's constructions. As a general proposition, this Court has held that such a covenant leaves the parties with no controversy having the "'sufficient immediacy' needed to invoke the Declaratory Judgment Act." *WundaFormer, LLC v. Flex Studios, Inc.*, No. 15 Civ. 4802(JSR), 2015 WL 7181249, at *2 (S.D.N.Y. Nov. 10, 2015). That Plaintiffs "***might*** file an appeal on which [they] ***might*** prevail 'does not provide the immediacy and reality required for a declaratory judgment.'" *Id* (emphasis in original) (quoting *Benitec*, 495 F.3d at 1346). The prospect of being charged with

"future infringement" of a patent—with what would have, in effect, "non-identical claims"—is precisely the sort of "wholly speculative" circumstance that does not support the Court's jurisdiction. *See Amana Refrigeration*, 172 F.3d at 856. Given the resources that Plaintiffs have invested in the litigation, and the limited life remaining on the '078 Patent, there may be good reason to forgo an appeal. But that is a decision for another day; at present, the Court is without subject-matter jurisdiction over Fenix's invalidity counterclaim.

A comparison of this case to the circumstances in *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) is instructive. In *Fort James*, the Federal Circuit held that a district court could retain jurisdiction to hold a bench trial over a defendant's claim for a declaratory judgment of patent ***unenforceability***, notwithstanding a prior jury verdict of non-infringement and plaintiff's subsequent issuance of a covenant not to sue. In finding that subject-matter jurisdiction was preserved, the Federal Circuit emphasized the "unique procedural posture" of the case. *Id.* at 1348. The case had already proceeded to trial, resulted in a jury verdict, and plaintiff's particular covenant had "no effect" because of that verdict. *Id.* Moreover, the defendant's counterclaims were "not disposed of by a decision of non-infringement." *Id.* This is because a finding of inequitable conduct, as the defendant's counterclaim alleged, would have rendered the patent unenforceable ***whether or not*** the jury's findings on non-infringement were reversed on appeal. As a later panel explained, *Fort James* thus affirmed the "unremarkable proposition" that a court's reliance on "one of two possible ***alternative grounds***" does not strip it of the jurisdictional authority to decide the other. *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1026 (Fed. Cir. 2021) (emphasis added) (citation omitted).

In contrast to *Fort James*, under this case's "unique procedural posture," this Court lacks jurisdiction over Fenix's counterclaims. Fenix did not secure a jury verdict—nor has the Court

undertaken the effort of a jury trial. Plaintiffs' covenant is broader than the relief Fenix secured on summary judgment. Plaintiffs' covenant applies to every claim in the '078 Patent, protects more parties and acts than are covered by the Court's Order, and covers all future acts involving Fenix/Nouveau's products. Even if *arguendo* Plaintiffs appeal the June 16 Order, their covenant still stands unless the Court's claim constructions are revised.

Significantly, Fenix's remaining counterclaim does not provide an "alternative ground" to uphold a judgment if the Court's claim construction is reversed. Unlike the defendant in *Fort James*, Fenix has never pled claims of inequitable conduct which might render the entire '078 patent unenforceable. Rather, Fenix has only pled invalidity, and its arguments are inextricably tied to claim construction. The Court recognized in its summary judgment ruling that Fenix's enablement claim questions the ability to grow single crystal diamond without polycrystalline growth on the edges—a question directly affected by whether those edges are included within the construction of "growth surface." *See* ECF No. 133 at 18–19. Fenix's subject-matter and prior-art challenges likewise apply the Court's constructions, as set forth *supra*. If Fenix's counterclaim proceeds to trial, a jury would decide patent validity in view of the Court's constructions; if those constructions are ever vacated or changed by the Federal Circuit, noninfringement **and** invalidity will have to be reconsidered in light of a new construction. A jury will invariably have to undertake the entire validity exercise again, and any ruling by this Court on the invalidity counterclaims would not be available to sustain the Court's judgment on appeal. The instant covenant is thus more like that which this Court found removed jurisdiction in *WundaFormer*.

### B.  Even If the Court Did Have Jurisdiction Over Fenix's Counterclaim, It Would Be Imprudent To Proceed To Trial

Even when there is an actual controversy and thus jurisdiction, exercise of the Court's jurisdiction to hear a declaratory judgment claim is discretionary. *Liquid Dynamics*, 355 F.3d at

1371; *see Clalit Health Servs. v. Israel Humanitarian Found.*, No. 02 Civ. 6552(DC), 385 F. Supp. 2d 392, 402 (S.D.N.Y. 2005) (granting of a declaratory judgment "rests in the sound discretion of the trial court" (citation omitted)).

In *WundaFormer*, this Court recognized that "it would be imprudent and a potential waste of both the parties' and judicial resources for the Court to proceed to determine the validity of [a patent-in-suit], when plaintiff has categorically dropped its infringement allegations barring a reversal of the Court's construction." *WundaFormer,* 2015 WL 7181249, at *2. There would be "nothing expedient about the Court undertaking to determine validity now, where there may never be cause for it or any court to do so." *Id*. The same reasoning applies here.

Fenix's invalidity positions are limited to the "Asserted Claims" and depend directly or indirectly on the Court's claim constructions. Under the law of the case (which includes legal findings of non-infringement of the Asserted Claims), any invalidity finding on the limited counterclaim would be superfluous to the summary judgment ruling. Fenix, and its manufacturers and suppliers, would gain no extra relief or rights under the counterclaim than they have under the Court's Order and Plaintiffs' covenant not to sue. The covenant would be disturbed only if Plaintiffs appeal and prevail. Plaintiffs have not elected to appeal the Court's June 16 Order at this time. But even if they do and prevail, any judgement on the pending invalidity counterclaim would also be disturbed since, as above, invalidity turns on claim construction. Trial on invalidity would have to be repeated, wasting judicial and party resources. And if there is no appeal—or an unsuccessful one—resources would have been wasted.

The Court should exercise its discretion and decline to hold a trial that would provide Fenix and its manufacturers and suppliers no further relief than they have already obtained.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court dismiss Fenix's counterclaim for invalidity of the Asserted Claims of the '078 Patent.

July 1, 2021                                  Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Matthew J. Moffa*
Matthew J. Moffa
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 261-6857
Fax: (212) 399-8057
e-mail: MMoffa@perkinscoie.com

Terrence J. Wikberg (*admitted pro hac vice*)
Michael A. Chajon (*admitted pro hac vice*)
PERKINS COIE LLP
607 14th Street, NW
Washington, DC  20005
Telephone (202) 434-1649
Fax: (202) 654-9149
e-mail:  TWikberg@perkinscoie.com
             MChajon@perkinscoie.com

Amy E. Simpson (*admitted pro hac vice*)
Kevin Patariu
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-3334
Telephone: (858) 720-5702
Fax: (858) 720-5799
e-mail: ASimpson@perkinscoie.com
             KPatariu@perkinscoie.com

Michelle Umberger (*admitted pro hac vice*)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7466

Fax: (608) 663-7499
e-mail: MUmberger@perkinscoie.com

Sarah Fowler (*admitted pro hac vice*)
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 943041212
Telephone: (650) 838-4489
e-mail: SFowler@perkinscoie.com


*Counsel for Plaintiffs Carnegie Institution of
Washington and M7D Corporation*