# EXHIBIT 11

**Appeal No. 2021-2249**

# In the
# United States Court of Appeals
## for the Federal Circuit

---

CARNEGIE INSTITUTION OF WASHINGTON; M7D CORPORATION,

*Plaintiffs-Appellants,*

v.

MAHENDRA BROTHERS EXPORTS PRIVATE LIMITED,

*Defendant,*

FENIX DIAMONDS LLC,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of New York, No. 1:20-cv-00200-JSR.
The Honorable **Jed S. Rakoff**, Judge Presiding.

---

## DEFENDANT-APPELLEE FENIX DIAMONDS LLC'S MOTION TO DISMISS APPEAL FOR LACK OF SUBJECT MATTER JURISDICTION

---

DAVID M. AIRAN
STEVEN H. SKLAR
NICOLE E. KOPINSKI
MAXWELL B. SNOW
LEYDIG, VOIT & MAYER, LTD.
180 N. Stetson Ave., Suite 4900
Chicago, IL 60601
(312) 616-5600
dairan@leydig.com
ssklar@leydig.com
nkopinski@leydig.com
msnow@leydig.com

*Counsel for Defendant-Appellee*
*Fenix Diamonds LLC*

---

 COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER 

## STATEMENT OF OPPOSITION

Pursuant to Fed. Cir. R. 27(a)(2), Defendant-Appellee Fenix Diamonds LLC ("Fenix") represents that it has conferred with Plaintiffs-Appellants Carnegie Institution of Washington and M7D Corporation ("Plaintiffs"), which oppose this motion and will file a response.

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 21-2249 |
| **Short Case Caption** | Carnegie Institution of Washington v. Mahendra Brothers Exports Private Limited |
| **Filing Party/Entity** | Fenix Diamonds LLC |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/13/2021

Signature: /s/ David M. Airan

Name: David M. Airan

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Fenix Diamonds LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| Bryan Cave Leighton Paisner LLP: | Daniel P. Waxman | |
| Leydig, Voit & Mayer, Ltd.: | Maxwell B. Snow | Paul J. Filbin |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
| --- | --- | --- |
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
| --- | --- | --- |
| | | |
| | | |

## TABLE OF CONTENTS

STATEMENT OF OPPOSITION ............................................................................. ii

CERTIFICATE OF INTEREST ............................................................................. iii

TABLE OF AUTHORITIES ................................................................................ vii

BACKGROUND AND SUMMARY ........................................................................ 1

ARGUMENT ....................................................................................................... 4

    I.      Plaintiffs' Covenants "Extinguished" Subject Matter Jurisdiction ........... 4

    II.    Because Plaintiffs Deprived the District Court of Jurisdiction, this Court Lacks Jurisdiction Over this Appeal ........................................................ 7

    III.   This Court's Jurisdiction Does Not and Cannot Depend Upon a Hypothetical Ruling on the Merits ............................................................ 8

    IV.   Plaintiffs' Attempt to Evade the Final Judgment Rule Also Forecloses Appeal ................................................................................................... 10

    V.    Because Plaintiffs Mooted Their Own Action, Summary Judgment of Non-Infringement Should Not Be Vacated .............................................. 14

CONCLUSION ................................................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Aqua Marine Supply v. Aim Machining, Inc.*, 247 F.3d 1216 (Fed. Cir. 2001) ......14

*Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020) ..................................9

*Brownlow v. Schwartz*, 261 U.S. 216 (1923)..............................................................8

*Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc.*, 459 F. Supp. 3d 502 (S.D.N.Y. 2020) ....................................................................................................4

*Carnegie Institute of Washington and M7D Corporation v. Fenix Diamonds LLC*, Civil Action No. 1:20-cv-200-JSR (S.D.N.Y.).....................................................1

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).......................13

*Ex parte Watkins*, 32 U.S. (7 Pet.) 568 (1833) .........................................................9

*First Data Corp. v. Inselberg*, 870 F.3d 1367 (Fed. Cir. 2017) .............................10

*Glasstech, Inc. v. AB Kyro OY*, 769 F.2d 1574 (Fed. Cir. 1985).........................3, 7

*Gould v. Control Laser Corp.*, 866 F.2d 1391 (Fed. Cir. 1989)............................13

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)..9

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993)9

*Janssen Pharm., N.V. v. Apotex, Inc.*, 540 F.3d 1353 (Fed. Cir. 2008)..................10

*Karcher v. May*, 484 U.S. 72 (1987) ......................................................................14

*Keith Mfg. Co. v. Butterfield*, 955 F.3d 936 (Fed. Cir. 2020)................................12

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ................................................8

*McLish v. Roff*, 141 U.S. 661 (1891) ......................................................................10

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017).................................. 6, 10, 12, 13

*Mills v. Green*, 159 U.S. 651 (1895)........................................................................14

*Nystrom v. Trex Co.*, 339 F.3d 1347 (Fed. Cir. 2003) ........................................ 3, 11

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350 (Fed. Cir. 2013)..............................................................................................................6

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...............................7, 9

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994)............. 13, 14

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018)........................................3

## Statutes

28 U.S.C. § 1291 ...................................................................................................12

28 U.S.C. § 1295 ............................................................................................. 11, 12

28 U.S.C. § 1338 ...................................................................................................11

## Rules

Fed. Cir. R. 27(f) ....................................................................................................1

Fed. R. Civ. P. 54(b) .............................................................................................11

## Patents

U.S. Patent No. 6,858,078................................................................................ 1, 2, 5

U.S. Patent No. RE41,189 .............................................................................. 1, 2, 4, 5

# BACKGROUND AND SUMMARY

Defendant-Appellee Fenix Diamonds LLC ("Fenix") moves under Fed. Cir. R. 27(f) to dismiss the appeal filed by Plaintiffs-Appellants Carnegie Institution of Washington and M7D Corporation ("Plaintiffs") for lack of subject matter jurisdiction.

Plaintiffs asserted U.S. Patent Nos. RE41,189 ("the '189 patent") and 6,858,078 ("the '078 patent") against Fenix based on its importation and sale of lab-grown diamonds made by third party Nouveau Diamonds LLP ("Nouveau"). (Compl., Dkt. 1; Am. Compl., Dkt. 16).[1,2] Plaintiffs' Amended Complaint (Dkt. 16) dismissed Mahendra Brothers Exports Private Limited. Therefore, Fenix is the sole appellee.[3]

Following claim construction, and after discovery closed, Fenix moved for summary judgment of non-infringement of both the '189 and '078 patents. Shortly before oral argument on this motion, Plaintiffs issued a covenant not to sue for the

---

[1] Citations to "Dkt." refer to electronic docket entries in the district court action, *Carnegie Institute of Washington and M7D Corporation v. Fenix Diamonds LLC*, Civil Action No. 1:20-cv-200-JSR (S.D.N.Y.).

[2] Although all claims asserted against Fenix in the '189 and '078 patents recite methods of making diamonds, Plaintiffs did not bring suit against Nouveau and did not attempt to join Nouveau in the suit against Fenix.

[3] On September 9, 2021, the parties agreed to recaption this appeal to omit Mahendra Brothers Exports Private Limited.

'189 patent and sought to dismiss its infringement claim relating to this patent with prejudice. (Ex. 1, "the '189 covenant", Dkt. 136-1).[4] The district court nevertheless considered the entirety of Fenix's motion and entered summary judgment of non-infringement with respect to both the '189 and '078 patents. (Ex. 3, Summ. J. Order 28, 32, Dkt. 133). The district court, however, dismissed Fenix's declaratory invalidity counterclaim relating to the '189 patent in view of the '189 covenant. (*Id.* at 30).

Fenix thereafter sought trial on its counterclaim for invalidity of the '078 patent. To avoid trial, Plaintiffs issued a covenant not to sue for the '078 patent. (Ex. 2, "the '078 covenant", Dkt. 136-2). Plaintiffs then moved to dismiss the entire action for lack of subject matter jurisdiction. In their motion, Plaintiffs characterized the covenants as follows:

> Plaintiffs have now granted two covenants not to sue Fenix, Nouveau, or any of their various related parties based on any past, present, or future Fenix products manufactured by Nouveau. ***Those covenants have extinguished any case or controversy as to the asserted patents.*** The Court has dismissed Fenix's declaratory judgment counterclaims for invalidity of the '189 Patent because of Plaintiffs' covenant. Yet, quixotically, Fenix insists that the Court should try to a jury Fenix's declaratory judgment counterclaims for invalidity of the '078 Patent.

---

[4] "Ex." refers to the exhibits appended to this motion. A list of referenced exhibits appears in the table of contents appended hereto.

(Ex. 4, Pls.' Opening Mem. Law 1, Dkt. 135) (emphasis added). The district court agreed with Plaintiffs' assessment of their '078 covenant: "the scope of the covenant at issue here does, in fact, extinguish any 'actual controversy.'" (Ex. 6, Dismissal Op. 6, 8, Dkt. 141). The district court thereafter entered the judgment (Ex. 7, Final J., Dkt. 142) from which Plaintiffs now appeal (Ex. 9, Pls.' Notice of Appeal, Dkt. 144).

This appeal should be dismissed for the same reason that the district court dismissed the underlying action, namely, Plaintiffs voluntarily "extinguished" subject matter jurisdiction over all claims. There is nothing left to appeal. A controversy that becomes moot at "any point" is outside the jurisdiction of the federal courts. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018). Because the district court lacked jurisdiction over the merits after Plaintiffs issued their covenants not to sue, this Court also lacks jurisdiction over the merits. "It is *beyond debate* that an appellate court has no jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction." *Glasstech, Inc. v. AB Kyro OY*, 769 F.2d 1574, 1577 (Fed. Cir. 1985) (emphasis added).

Plaintiffs also cannot circumvent this Court's "final judgment rule" by obtaining a dismissal of the action through covenants not to sue. To preserve their right to appeal the district court's claim construction and summary judgment rulings,

-3-

Plaintiffs either had to litigate the action to a final judgment, including all counterclaims, or seek relief under one of the discretionary routes of appeal. What Plaintiffs absolutely could not do—but what they did—was "extinguish" the controversy in the district court and then take an appeal to this Court. This appeal should be dismissed.

## ARGUMENT

### I. Plaintiffs' Covenants "Extinguished" Subject Matter Jurisdiction

The district court construed the claims of the asserted patents on May 8, 2020. *Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc.*, 459 F. Supp. 3d 502 (S.D.N.Y. 2020). After extensive fact and expert discovery, Fenix sought summary judgment of non-infringement of both asserted patents. Shortly before oral argument, Plaintiffs granted the '189 covenant not to sue, which provides:

> ***Plaintiffs unconditionally and irrevocably covenant not to assert patent infringement*** (including direct infringement, contributory infringement, and induced infringement) ***against Fenix, Nouveau, or Fenix's direct or indirect subsidiaries under any claim of the '189 Patent*** based upon Fenix's and Nouveau's previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of their product(s) annealed by Nouveau's annealing process as such process has been described by Fenix and Nouveau throughout this litigation.

(Ex. 1, '189 covenant) (emphasis added). As a result of this covenant, no case or controversy exists between the parties as to infringement of the '189 patent.

The district court thereafter granted summary judgment of non-infringement for both asserted patents, but also dismissed Fenix's counterclaim for invalidity of the '189 patent for lack of subject matter jurisdiction. (Ex. 3, Summ. J. Order 30). To avoid trial on Fenix's remaining counterclaim of invalidity for the '078 patent, Plaintiffs issued the '078 covenant, which provides:

> **As long as the Court's current constructions … remain the law**, Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs"), on behalf of themselves and any successors-in-interest to U.S. Patent No. 6,858,078 (the "'078 Patent"), **covenant not to assert patent infringement** (including direct infringement, contributory infringement, and induced infringement) **under any claim of the '078 Patent** against Fenix, Nouveau, Fenix's direct or indirect subsidiaries, or any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns, **based upon their previous or current or future** making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling any of Fenix's products manufactured by Nouveau's manufacturing process as such process has been described by Fenix and Nouveau throughout this litigation.

(Ex. 2, '078 covenant) (emphasis added). Although the preamble references the district court's claim constructions, the body of the covenant binds Plaintiffs "not to assert patent infringement" of the '078 patent.

In their motion to dismiss Fenix's counterclaim for invalidity of the '078 patent, Plaintiffs represented that their two covenants "**extinguished any case or controversy as to the asserted patents**." (Ex. 4, Pls.' Opening Mem. Law 1

(emphasis added)). In their reply brief, Plaintiffs further explained that the '078 covenant "*covers every claim of the patent, for all time*." (Ex. 5, Pls.' Reply Mem. Law 1, Dkt. 139 (emphasis added)). The district court agreed with Plaintiffs and dismissed the entire case for lack of subject matter jurisdiction. (Ex. 6, Dismissal Op. 2).

To be sure, Fenix opposed Plaintiffs' motion to dismiss, arguing that the district court retained subject matter jurisdiction because the '078 covenant came too late and was conditional. (Ex. 6, Dismissal Op. 4–5). Siding with Plaintiffs, and overruling Fenix's objections, the district court concluded that the '078 covenant was unconditional, immediately effective, and ended the controversy between the parties. (Ex. 6, Dismissal Op. 2, 6).

Plaintiffs' representations as to the scope and consequences of their own covenants, *e.g.,* that they "extinguished *any* case or controversy," became binding when the district court relied upon them to moot Fenix's declaratory counterclaim. *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358 (Fed. Cir. 2013) ("If we rely on Monsanto's representations to defeat the appellants' declaratory judgment claims (as we do), those representations are binding as a matter of judicial estoppel."). As Plaintiffs explained, and the district court held, there is no longer a case or controversy between the parties. Plaintiffs are estopped from taking a contrary position here. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1717 (2017)

("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.") (citations omitted).

## II. Because Plaintiffs Deprived the District Court of Jurisdiction, this Court Lacks Jurisdiction Over this Appeal

A controversy existed at the start of this case: Plaintiffs alleged that Fenix infringed the asserted patents. Plaintiffs' claim of infringement created subject matter jurisdiction for Fenix's counterclaims of non-infringement and invalidity. Plaintiffs' covenants, however, "extinguished any case or controversy" between the parties. (Ex. 4, Pls.' Opening Mem. Law 1). Based on Plaintiffs' covenants and associated representations, the district court had no choice but to dismiss the action for lack of subject matter jurisdiction. (Ex. 6, Dismissal Op. 2, 6).

It is "beyond debate" that the jurisdiction of this Court expired with the jurisdiction of the district court. *Glasstech*, 769 F.2d at 1577. In *Glasstech*, this Court addressed whether a district court's injunction order, issued after the Judicial Panel on Multidistrict Litigation had transferred the action away from that district court, could be appealed. Even though *both* parties agreed that this Court should decide the merits, and despite "interests of judicial economy," this Court dismissed the appeal because "*an appellate court has no jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction*." *Id.* (emphasis added); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("When

the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.") (cleaned up). It is well-settled that "[t]he case being moot, further proceedings upon the merits can neither be had here nor in the court of first instance." *Brownlow v. Schwartz*, 261 U.S. 216, 218 (1923).

## III.   This Court's Jurisdiction Does Not and Cannot Depend Upon a Hypothetical Ruling on the Merits

Plaintiffs appear to believe that this Court has jurisdiction based on a hypothetical possibility of a decision from this Court reversing the district court's claim construction. This hypothetical decision would then presumably allow Plaintiffs to again sue Fenix for infringing the asserted patents notwithstanding their representation that the '078 covenant "covers every claim of the patent, for all time." (Ex. 5, Pls.' Reply Mem. Law 1, Dkt. 139). But this Court cannot rekindle the controversy that Plaintiffs "extinguished" at the time of final judgment in district court. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803) ("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, *and does not create that cause*.") (emphasis added).

A ruling from this Court on claim construction or non-infringement would be an impermissible advisory opinion because subject matter jurisdiction cannot be contingent on the merits. Proceeding to the merits of the district court's claim construction would violate the rule, "inflexible and without exception," that subject

matter jurisdiction must exist *before* the merits are addressed. *Steel Co.*, 523 U.S. at 95 (1998). "Hypothetical jurisdiction produces nothing more than a hypothetical judgment--which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101; *see Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 32 (1993) (observing that standing is "a threshold inquiry that in no way depends on the merits of the case." (internal quotation marks omitted)). Even if Fenix agreed with Plaintiffs that this Court should review the district court's claim construction, this Court still would lack jurisdiction because "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

The Supreme Court has long rejected and disparaged the concept of contingent or hypothetical jurisdiction (*i.e.*, jurisdiction contingent on the merits). *Ex parte Watkins*, 32 U.S. (7 Pet.) 568, 572 (1833) ("But the jurisdiction of the [appellate] court can never depend upon its decision upon the merits of a case brought before it. . . ."); *Steel Co.*, 523 U.S. at 101–02 (holding that it would be an "act *ultra vires*" for a court to decide appeal when a plaintiff's standing is contingent on the merits). This Court likewise has rejected appeals where standing depended on the merits of the case. *Boeing Co. v. United States*, 968 F.3d 1371, 1382 (Fed. Cir. 2020) ("A claim is not ripe for judicial review when it is contingent upon future

events that may or may not occur.") (quotation marks and citations omitted); *First Data Corp. v. Inselberg*, 870 F.3d 1367, 1371 (Fed. Cir. 2017) ("[A] contingent patent claim [does] not give rise to federal jurisdiction now.") (citations and quotation marks omitted). Notably, Plaintiffs themselves argued that the hypothetical possibility of this Court modifying the district court's claim constructions was insufficient to create subject matter jurisdiction. (Ex. 5, Pls.' Reply Mem. Law 6).

No matter what arguments Plaintiffs make in this appeal, they cannot cure the district court's lack of subject matter jurisdiction *at the entry of final judgment*. *Janssen Pharm., N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363, n. 9 (Fed. Cir. 2008) ("As Apotex failed to cure the jurisdictional defect by the time the district court entered final judgment, we need not reach the issue of whether this case constitutes one of the limited circumstances in which temporary jurisdictional defects can be cured."). When an action is terminated for lack of subject matter jurisdiction in district court, there can be no appeal.

## IV. Plaintiffs' Attempt to Evade the Final Judgment Rule Also Forecloses Appeal

"'From the very foundation of our judicial system,' the general rule has been that 'the whole case and every matter in controversy in it [must be] decided in a single appeal.'" *Microsoft*, 137 S. Ct. at 1712 (quoting *McLish v. Roff*, 141 U.S. 661, 665–66 (1891)). "This court's 'final judgment rule,' as applied to patent disputes

arising under 28 U.S.C. § 1338, is set forth at 28 U.S.C. § 1295." *Nystrom*, 339 F.3d at 1350 (Fed. Cir. 2003).

The *Nystrom* court explained the four proper avenues for a plaintiff to appeal a claim construction ruling: (1) litigate all invalidity counterclaims on the merits to a final judgment; (2) persuade the district court to dismiss all counterclaims without prejudice as a discretionary matter; (3) persuade the district court to certify a partial final judgment under Fed. R. Civ. P. 54(b); or (4) persuade the district court and this Court to authorize an interlocutory appeal. *Id*. at 1350–51. Plaintiffs evaded all of the proper appeal avenues. Instead, Plaintiffs attempted to create their own new exception to this Court's final judgment rule by mooting their own case through the covenants not to sue.

Plaintiffs had their reasons for not litigating this matter to finality. Indeed, at the time Plaintiffs issued their '078 covenant, the district court had observed that if Plaintiffs' arguments opposing Fenix's motion for summary judgment were true, "*that would just mean that the ['078] Patent is non-enabled.*" (Ex. 3, Summ. J. Order 19 (emphasis added)). Plaintiffs avoided the three discretionary avenues for appeal because the district court was unlikely to tolerate delay, having already set a date for trial on Fenix's invalidity counterclaim. (Ex. 8, 2021-6-23 Minute Entry (setting a December 13, 2021 trial date)). Faced with an inevitable trial, Plaintiffs eliminated

subject matter jurisdiction over all claims by issuing the covenants not to sue. (Ex. 6, Dismissal Op. 2)

The Supreme Court addressed a similar attempt to circumvent the final judgment rule in *Microsoft*. In that case, the district court denied class certification to the plaintiffs, who then sought an immediate interlocutory appeal. *Microsoft*, 137 S. Ct. at 1710–11. After the Ninth Circuit rejected the interlocutory appeal, the plaintiffs stipulated to a voluntary dismissal of the action with prejudice and filed a second appeal. *Id.* The Ninth Circuit decided the second appeal, but the Supreme Court reversed, holding that the second appeal violated the final judgment rule. *Id.* at 1711–12, 1715. The Supreme Court specifically rejected the notion that a plaintiff could transform an interlocutory order into a final judgment "simply by dismissing their claims with prejudice" with an accompanying "right to 'revive' those claims" if the interlocutory order is reversed on appeal. *Id.* at 1715. The "final-judgment rule is not satisfied whenever a litigant persuades a district court to issue an order purporting to end the litigation." *Id.*

*Microsoft* addresses and forbids Plaintiffs' apparent attempt to "revive" their infringement claims after a favorable appeal decision. *Id.*, 137 S. Ct. at 1715. Under the majority opinion in *Microsoft*,[5] the final judgment rule precludes statutory

---

[5] This Court has applied the holding in Microsoft to patent cases. *See Keith Mfg. Co. v. Butterfield*, 955 F.3d 936, 939 (Fed. Cir. 2020) (citing *Microsoft* and noting that 28 U.S.C. § 1291 and § 1295 have the same finality requirement).

jurisdiction over this appeal because Fenix's counterclaims were live when Plaintiffs dismissed their own claims. *See id*. Under the concurring opinion in *Microsoft*, Article III of the Constitution further precludes subject matter jurisdiction over this appeal because Plaintiffs consented to an adverse judgment. *See id.* at 1716–17 (Thomas, J., concurring). The concurring opinion may have greater relevance here since Plaintiffs not only voluntarily mooted their own claims, they also convinced the district court, over Fenix's opposition, that subject matter jurisdiction had completely expired. The *Microsoft* plaintiffs' strategy to manipulate appellate jurisdiction was less severe than what Plaintiffs are attempting to do.

Neither of Plaintiffs' covenants expressly reserves appeal, nor would it matter for once Plaintiffs extinguished the controversy, any such reservation would have become inoperative. *Microsoft*, 137 S. Ct. at 1715; *Gould v. Control Laser Corp.*, 866 F.2d 1391, 1393 (Fed. Cir. 1989). If Plaintiffs intended to reserve appeal, then they should not have promised to stop asserting infringement against Fenix nor represented to the district court that "[t]hose covenants have extinguished any case or controversy" since "[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) (citations omitted); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists

has always worked injustice in particular cases."). Plaintiffs unilaterally mooted their own action, which caused a dismissal with prejudice. By extinguishing subject matter jurisdiction over all claims to prevent a trial on Fenix's counterclaim, Plaintiffs forfeited appeal.

## V.    Because Plaintiffs Mooted Their Own Action, Summary Judgment of Non-Infringement Should Not Be Vacated

Plaintiffs' covenants ended this action at the district court. To the extent that Plaintiffs seek to vacate the district court's claim construction or summary judgment opinions, they should have done so first in that court. This is not a court of first instance.

In any event, vacatur is an "extraordinary remedy." *Bancorp*, 513 U.S. at 26. Because Plaintiffs mooted this action after losing on a summary judgment on the merits, there is no basis to now vacate any of the district court's prior decisions, including the claim construction or non-infringement judgment. *Bancorp*, 513 U.S. at 26–27 (vacating district court proceedings after the losing party moots a controversy would "disturb the orderly operation of the federal judicial system."); *Karcher v. May*, 484 U.S. 72, 82–83 (1987); *Mills v. Green*, 159 U.S. 651, 654 (1895) ("But if the [loss of jurisdiction] is owing either to the plaintiff's own act or to a power beyond the control of either party, the court will stay its hand [by not vacating]."); *Aqua Marine Supply v. Aim Machining, Inc.*, 247 F.3d 1216, 1221 (Fed. Cir. 2001).

# CONCLUSION

Plaintiffs unilaterally "extinguished" the controversy in the district court. Therefore, this Court lacks jurisdiction to hear an appeal on the merits. Plaintiffs' appeal should be dismissed without further argument.

Dated: September 13, 2021   Respectfully submitted,

       */s/ David M. Airan*
       David M. Airan
       Steven H. Sklar
       Nicole E. Kopinski
       Maxwell B. Snow
       LEYDIG, VOIT & MAYER, LTD.
       Two Prudential Plaza
       180 N. Stetson Ave., Suite 4900
       Chicago, Illinois 60601
       (312) 616-5600

       *Counsel for Defendant-Appellee*
       *Fenix Diamonds LLC*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-2249

**Short Case Caption:** Carnegie Institution of Washington v. Mahendra Brothers Exports Private Limited

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 3,450 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/13/2021

Signature: /s/ David M. Airan

Name: David M. Airan

# TABLE OF CONTENTS FOR EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. 1 | Email from T. Wikberg to S. Sklar et al. dated November 17, 2020 ("the '189 covenant," Dkt. 136-1) |
| Ex. 2 | Email from T. Wikberg to S. Sklar et al. dated June 21, 2021 ("the '078 covenant," Dkt. 136-2) |
| Ex. 3 | Opinion & Order ("Summary Judgment Order," June 15, 2021, Dkt. 133) |
| Ex. 4 | Memorandum of Law in Support of Plaintiffs' Motion to Dismiss ("Plaintiffs' Opening Memorandum of Law," July 1, 2021, Dkt. 135) |
| Ex. 5 | Reply Memorandum of Law in Support of Plaintiffs' Motion to Dismiss ("Plaintiffs' Reply Memorandum of Law," July 22, 2021, Dkt. 139) |
| Ex. 6 | Opinion ("Dismissal Opinion," August 9, 2021, Dkt. 141) |
| Ex. 7 | Final Judgment (August 13, 2021, Dkt. 142) |
| Ex. 8 | Minute Entry (June 23, 2021) |
| Ex. 9 | Plaintiffs' Notice of Appeal to the United States Court of Appeals for the Federal Circuit (August 24, 2021, Dkt. 144) |

# Exhibit 1

| From: | Wikberg, Terrence (WDC) |
|---|---|
| Sent: | Tuesday, November 17, 2020 1:25 PM |
| To: | Sklar, Steven; Snow, Max; Arceo, Frances; 'dpwaxman@bclplaw.com'; Fenix-Litigation; Kopinski, Nicole; Airan, David |
| Cc: | Moffa, Matthew (NYC); Simpson, Amy (SDO) |
| Subject: | RE: Carnegie Inst. of Wash et al. v. Fenix Diamonds LLC (SDNY No. 20-200) |

Counsel:

Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs"), on behalf of themselves and any successors-in-interest to U.S. Patent No. RE41,189 (the '189 Patent), make the following covenant not to sue for the purpose of resolving all issues related to the '189 Patent in this litigation between the Plaintiffs and defendant Fenix Diamonds LLC ("Fenix").

Based on documents, images, videos, testimony, and other information produced in discovery by Fenix and its supplier Nouveau Diamonds LLP ("Nouveau") regarding the process by which Fenix's diamonds are annealed, and on representations made by Fenix and its supplier Nouveau throughout this litigation, Plaintiffs unconditionally and irrevocably covenant not to assert patent infringement (including direct infringement, contributory infringement, and induced infringement) against Fenix, Nouveau, or Fenix's direct or indirect subsidiaries under any claim of the '189 Patent based upon Fenix's and Nouveau's previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of their product(s) annealed by Nouveau's annealing process as such process has been described by Fenix and Nouveau throughout this litigation. Plaintiffs further covenant not to sue any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns, under any claim of the '189 Patent based upon their previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling any of Fenix's product(s) annealed by Nouveau using the Nouveau annealing process as such process has been described by Fenix and Nouveau throughout this litigation. For the avoidance of doubt, this covenant does not extend to claims of patent infringement under any patent other than the '189 Patent.

Based on the foregoing, Plaintiffs intend to immediately make a motion with the Court to withdraw the infringement claims as to the '189 Patent with prejudice from the present litigation. Plaintiffs requests Fenix's position regarding the motion and Fenix's availability for a call with the Court so that Plaintiff's can make this application as soon as possible.

Additionally, in view of the foregoing covenant and Plaintiffs' motion to withdraw, Plaintiffs' ask that Fenix withdraw its counterclaims as to the 189 Patent.

To the extent Fenix wishes to meet and confer regarding this application we are generally available.

Regards

Terry

**Terry Wikberg** | **Perkins Coie LLP**
D. +1.202.654.6201

M. +1.202.669.7391
F. +1.202.654.9149
E. TWikberg@perkinscoie.com

# Exhibit 2

| From: | Wikberg, Terrence (WDC) |
|---|---|
| Sent: | Monday, June 21, 2021 9:39 AM |
| To: | Sklar, Steven |
| Cc: | Snow, Max; Airan, David; Filbin, Paul; Simpson, Amy (SDO); Moffa, Matthew (NYC) |
| Subject: | Carnegie v. Fenix |

Steve,

As long as the Court's current constructions of the terms "single-crystal diamond," "growth surface," "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C," "growing single-crystal diamond ... on the growth surface at a growth temperature in a deposition chamber having an atmosphere with a pressure of at least 130 torr," and "growing single-crystal diamond ... on the growth surface at a temperature of 900-1400° C" (*see* D.I. 133 at 11–12) remain the law, Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs"), on behalf of themselves and any successors-in-interest to U.S. Patent No. 6,858,078 (the "'078 Patent"), covenant not to assert patent infringement (including direct infringement, contributory infringement, and induced infringement) under any claim of the '078 Patent against Fenix, Nouveau, Fenix's direct or indirect subsidiaries, or any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns, based upon their previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling any of Fenix's products manufactured by Nouveau's manufacturing process as such process has been described by Fenix and Nouveau throughout this litigation.

Based on the foregoing, Plaintiffs intend to move the Court to dismiss Fenix's remaining counterclaims. Please provide Fenix's position regarding Plaintiff's motion before today's call with the Court.

Regards
Terry

**Terrence Wikberg | Perkins Coie LLP**
**PARTNER**
700 Thirteenth Street, N.W. Suite 800
Washington, DC 20005-3960
D. +1.202.654.6201
F. +1.202.654.9149
E. TWikberg@perkinscoie.com



1

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
CARNEGIE INSTITUTION OF WASHINGTON :
and M7D CORP.,                     :
                                   :
        Plaintiffs,                :
                                   :     20-cv-200 (JSR)
        -v-                        :
                                   :     OPINION & ORDER
FENIX DIAMONDS, LLC,               :
                                   :
        Defendant.                 :
                                   :
-----------------------------------x

JED S. RAKOFF, U.S.D.J.

        This suit concerns two patents for manufacturing diamonds in
the laboratory.  Carnegie Institution of Washington ("Carnegie")
and M7D Corporation ("M7D") -- the assignee and licensee,
respectively, of the patents-in-suit -- allege that Fenix
Diamonds, LLC ("Fenix") infringed the patents by importing and
selling diamonds that were manufactured by non-party Noveau
Diamonds LLP ("Noveau") using the patented methods.  Fenix now
moves for summary judgment on plaintiffs' claims, arguing that
Noveau's processes do not infringe the patents.

## LEGAL STANDARD

        The Federal Rules of Civil Procedure provide that a court
"shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact
is material if it might affect the outcome of the suit under the

1

governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). The Court must "draw[] all reasonable inferences in favor of [the] non-movant." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). If "no reasonable trier of fact could find in favor of that party," then "summary judgment is proper." Id.

To demonstrate infringement of a patented method, a plaintiff must show that "all steps of the claimed method . . . [are] performed." Mirror Worlds, LLC v. Apple Inc., 692 F.3d 1351, 1358 (Fed. Cir. 2012). "Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate." Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1375, 1384 (Fed. Cir. 2011). On the other hand, "[w]here the parties do not dispute any relevant facts regarding the accused [method] . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." MyMail, Ltd. v. Am. Online, Inc., 476 F.3d 1372, 1378 & n.1 (Fed. Cir. 2007) (quoting Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997)).

2

Because a summary judgment motion turns on whether factual disputes exist, the Court must consider the factual assertions propounded by each party and the evidence proffered by each party to support those assertions. The Court does not, and usually could not, review the entire factual record. Instead, the moving party must identify the undisputed facts and the evidence that supports them. To that end, the Southern and Eastern Districts of New York have adopted Local Rule 56.1, which requires the moving party to provide "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The non-moving party must provide a correspondingly numbered counterstatement, id. R. 56.1(b), and each paragraph in the movant's statement "will be deemed to be admitted for purposes of the motion unless specifically controverted" in the counterstatement, id. R. 56.1(c). Each numbered statement or counterstatement "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Id. R. 56.1(d).

Federal Rule of Civil Procedure 56, in turn, provides that a movant for summary judgment may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion

3

only), admissions, interrogatory answers, or other materials," but an opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)-(2).

## FACTUAL BACKGROUND

Based on the patents-in-suit, the parties' Local Rule 56.1 statements and counterstatements, and the evidence proffered by the parties, the following facts are not subject to genuine dispute. Additional undisputed facts will be set forth, where relevant, elsewhere in this opinion.

### A. The Parties

The plaintiffs, Carnegie and M7D, call themselves "pioneers in the laboratory synthesis of high-clarity diamonds." Am. Compl., ECF No. 16, ¶ 4. The defendant, Fenix, acquires and sells laboratory-grown diamonds manufactured by non-party Noveau. Def't's Responses to Pls.' Statement of Undisputed Material Facts, ECF No. 123 ("PSUF"), ¶¶ 30-31. Fenix does not itself manufacture diamonds. Pls.' Responses to Def't's Statement of Undisputed Material Facts, ECF No. 112 ("DSUF"), ¶ 39.

Plaintiffs allege that Noveau's diamond production techniques infringe plaintiffs' patents and that Fenix thus infringes the patents by selling the diamonds it obtains from Noveau. DSUF ¶ 40. Plaintiffs seek (1) declaratory judgment that Fenix has infringed the patents and done so willfully; (2) an injunction against

4

further infringement; (3) damages, including enhanced damages under 35 U.S.C. § 284; and (4) costs and attorney's fees under 35 U.S.C. § 285. Am. Compl. Prayer for Relief.

### B. The '078 Patent

The two patents-in-suit disclose methods for producing laboratory-grown diamonds. PSUF ¶ 1. Diamonds can be grown in the laboratory using chemical vapor deposition ("CVD"). PSUF ¶ 2. A diamond manufacturer can perform CVD by using microwave generators as a power source and manipulating temperature and pressure conditions; this method is known as microwave plasma CVD ("MPCVD"). PSUF ¶ 3. A manufacturer can perform MPCVD in a deposition chamber where air is removed, PSUF ¶ 4, and where a small diamond "seed" is placed, PSUF ¶ 5, by pumping gases into the deposition chamber and applying microwave power, PSUF ¶ 6. During the growth process, the manufacturer can control temperature and pressure, and these controls (along with subsequent steps to improve the diamond, such as cutting and polishing) influence the properties of the lab-grown diamond. PSUF ¶¶ 7, 8. Lab-grown diamonds may have a single crystal (monocrystalline) or many crystals (polycrystalline). PSUF ¶ 9.

A single-crystal diamond is desirable for some applications, such as gemstones. PSUF ¶¶ 11, 12. One of the patents-in-suit, U.S. Patent No. 6,858,078, issued to Hemley et al. (Feb. 22, 2005), Kopinsky Decl. Ex. 2, ECF No. 99-2 (the "'078 Patent" or the

5

"Patent"), discloses a process for growing a synthetic monocrystalline diamond using MPCVD. PSUF ¶ 1. Prior to the '078 Patent, a single-crystal diamond could be grown using MPCVD, but attempts to grow single-crystal diamonds were either slow or unsuccessful (e.g., resulting in a defective or polycrystalline diamond). PSUF ¶¶ 11-12. The Patent identifies this problem, explaining that prior attempts to produce a single-crystal diamond at higher rates "result[ed] in heavily twinned single crystal diamonds, polycrystalline diamond, or no diamond at all." '078 Patent 1:58-59.

The '078 Patent claims to solve this problem with a key insight: by maintaining temperature gradients of less than 20° Celsius across the entirety of the growth surface, the inventors asserted that one could "create large, high-quality [single-crystal] diamonds with increased . . . growth rates." Id. 13:21-22.

### C. **The Apparatus**

Much of the '078 Patent is devoted to descriptions of apparatuses that could be used to practice the claimed techniques. See '078 Patent, Abstract (disclosing "[a]n apparatus for producing diamond in a deposition chamber," using various devices, "such that all temperature gradients across the growth surface are

less than 20° C"); id. Figs. 1-5; see generally id. at 3:19-13:35 (explaining figures).[1]

For example, Figure 1 "is a diagram of a diamond production system, according to an embodiment of the present invention, in which a deposition apparatus is depicted in cross section." Id. at 3:64-67:[2]



**FIG. 1**

U.S. Patent    Feb. 22, 2005    Sheet 1 of 8    US 6,858,078 B2

___

[1] Although the apparatuses are only embodiments of the claims, the Court, like the inventors, describes the apparatuses in order to aid the reader's understanding.

[2] Throughout this opinion, quotations from the '078 Patent omit citations to numbered components of the figures.

The upper portion of the diagram depicts a bell-jar-shaped deposition chamber (108). Vacuum pumps (not shown) "draw[] out the air inside of the chamber." Id. at 4:18. Then, a set of "plasma electrodes" (not shown) generates plasma in the chamber. Id. at 4:19-20. A diamond "seed" rests in the deposition chamber, and the plasma flows over the top of the diamond seed, depositing new diamond growth. Id. at 4:64-67.

In the center of the chamber, on top of the deposition chamber floor (122), is the apparatus for holding the diamond seed, the "specimen holder assembly." Id. at 4:23-28; see also Fig. 2a (depicting the specimen holder assembly from a different angle). The specimen holder assembly includes a "stage" (124) made from a material with high thermal conductivity, such as molybdenum, which is attached to the deposition chamber floor. Id. at 4:31-34. Atop that stage is a "set ring" (130) which contains "set screws" that are used to tighten "collets," which, in turn, hold in place a "sheath" (134), also made of material with high thermal conductivity. Id. at 4:44-52. Inside the sheath is the diamond seed (136). Id. at 4:47-48. The Patent explains that "the sheath is a holder, which makes a thermal contact with a side surface of the diamond . . . and acts as a heat-sink to prevent the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond." Id. at 4:48-55.

In the upper-right of the diagram is an infrared pyrometer (142), "which is used to monitor the temperature of the diamond seed and later the grown diamond during the growth process without contacting the diamond." Id. at 6:6-9. There are also several computers with the capability to adjust the process in various ways. E.g., id. at 6:27-34. These include "the main process controller," which, "[b]ased upon temperature measurements from the pyrometer," "controls the temperature of the growth surface such that all temperature gradients across the growth surface are less than 20° C. by adjusting at least one of microwave power to the plasma, the coolant flow rate, coolant temperature, gas flow rates and reactant flow rate." Id. at 6:65-7:4.

In Figure 1, the diamond growth surface is a distance H above the deposition chamber floor and a distance D above the top edge of the sheath. Id. at 4:59-62, 5:1-3. The Patent teaches that the distance D should be kept within a certain range:

> The distance D should be sufficiently large enough to expose the edges of the growth surface of the diamond to the plasma. However, the distance D can not be so large as to prevent the heat-sinking effect of the sheath that prevents the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond. Thus, D should be within a specified distance range, such as 0-1.5 mm.

Id. at 5:3-9. "As the distance D increases" -- that is, as the diamond grows -- "the heat-sinking capacity of the sheath for the top edges of the growth surface of the diamond reduces." Id. at

7:66-8:2.  In Figure 1, the distances D and H "are manually set using the screws of the set ring."  Id. at 5:11-12.  Therefore, "the growth process is periodically halted so that the position of the diamond can be adjusted downward with respect to the sheath . . . ."  Id. at 8:6-8.

Figure 3 illustrates another embodiment of the claims.  Many of the components of Figure 3 "are substantially the same" as in Figure 1.  Id. at 8:28-29.  However, Figure 3 has the purported advantage that one utilizing the apparatus in Figure 3 would not need to stop for manual adjustments to D and H.  The apparatus depicted in Figure 3 has a "diamond actuator member" and a "holder actuator member," which can be used to raise or lower the diamond and sheath, respectively, thereby controlling distances H and D without needing to stop for manual adjustments.  Id. at 10:5-11.

The Patent includes diagrams depicting the steps one would follow to use these apparatuses to practice the claimed techniques.  Id. Fig. 6 (depicting the steps one would follow using the apparatus shown in Fig. 1; see id. at 10:55-58); id. Fig. 7 (depicting the steps one would follow using the apparatus shown in Fig. 3; see id. at 11:60-63).

### D. **The Claims**

The '078 Patent includes dozens of claims, but plaintiffs argue only that Fenix has infringed two independent claims (claims 1 and 12) and certain claims dependent on them (claims 6, 7, 11,

10

and 16).  DSUF ¶¶ 11, 12.  The two independent claims asserted

are:

- "Claim 1:    A method for diamond production, comprising: controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C; and growing single-crystal diamond by microwave plasma chemical vapor deposition on the growth surface at a growth temperature in a deposition chamber having an atmosphere with a pressure of at least 130 torr."  '078 Patent 14:64-15:4.

- "Claim 12:    A method for diamond production, comprising: controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C; and growing single-crystal diamond by microwave plasma chemical vapor deposition on the growth surface at a temperature of 900-1400° C." Id. 15:31-37.

In May 2020, the Court held a claim construction hearing

pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370

(1996), and its progeny, and the Court adopted the following

constructions:

- "Single-crystal diamond" is "a stand alone diamond having insubstantial non-monocrystalline growth."  Opinion and Order, ECF No. 42, at 27.

- "The growth surface" means "the surface upon which diamond growth is occurring."  Id. at 20.

- The phrase "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C" means "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are maintained at less than 20° C."  Id. at 18.

- "[G]rowing single-crystal diamond . . . on the growth surface at a growth temperature in a deposition chamber having an atmosphere with a pressure of at least 130 torr" means "growing single-crystal diamond . . . on the growth surface,

11

which is set at a growth temperature and located in a deposition chamber with an atmosphere set at a pressure of at least 130 torr." <u>Id.</u> at 23-24.

- "[G]rowing single-crystal diamond . . . on the growth surface at a temperature of 900-1400° C" means "growing single-crystal diamond . . . on the growth surface, which is set at a temperature of 900-1400° C." <u>Id.</u> at 24.

E. **The '189 Patent**

The second patent-in-suit, United States Patent No. US RE41,189, issued to Li et al. (Apr. 6, 2010) (the "'189 Patent"), describes a method for repairing defects in lab-grown diamonds known as "annealing." Plaintiffs' operative amended complaint alleges that Noveau's manufacturing process infringes the '189 Patent. However, plaintiffs are no longer pursuing this claim. DSUF ¶ 12 ("Plaintiffs are no longer asserting that Fenix infringes the '189 Patent in this action.").

**ANALYSIS**

I. **The '078 Patent**

Fenix moves for summary judgment with respect to the '078 Patent on the ground that Noveau's manufacturing process does not infringe the patent, for two reasons. First, Fenix argues that Noveau does not "grow[] single-crystal diamond . . . on the growth surface" (a limitation on both asserted claims), since Noveau grows diamond with substantial amounts of polycrystallinity. Second, Fenix argues that Noveau does not "control[] temperature of a growth surface of the diamond such that all temperature gradients

12

across the growth surface are less than 20° C" (again, a limitation on both asserted claims). In Fenix's view, not only does Noveau not, in fact, maintain such gradients; Noveau does not even <u>attempt</u> to maintain such gradients.

To determine whether a reasonable factfinder could find that Noveau grows single-crystal diamonds on the growth surface, while maintaining 20° C gradients, the Court must look to the evidence concerning Noveau's manufacturing process.

A.  <u>Noveau's Manufacturing Process</u>

In this respect, Fenix relies upon a joint affidavit signed by Bakulbhai Limbasiya and Chirag Limbasiya, Kopinski Decl. Ex. 5, ECF No. 99-5 (the "Affidavit" or "Aff."), as well as the deposition testimony of Chirag Limbasiya, ECF No. 129-2 ("C. Limbasiya Dep."). The Limbasiyas are affiliated with Noveau and familiar with its manufacturing process. <u>See</u> C. Limbasiya Dep. ¶ 1; Aff. ¶ 3. The Affidavit describes Noveau's manufacturing process as follows:

> Diamond seeds are on the flat upper surface of a substrate plate. One infrared pyrometer is above the deposition chamber. The pyrometer points at the center of one growth surface. . . . We don't move the pyrometer during growth.

Aff. ¶ 3.

Differences between Noveau's process and the process described in the '078 Patent are readily apparent. The Limbasiyas aver that Noveau places many diamond seeds together on a <u>flat</u> substrate holder, rather than placing a diamond seed in a <u>sheath</u>,

13

as depicted throughout the '078 Patent. <u>Compare</u> Aff. Views 2-4 <u>with</u> '078 Patent Figs. 1, 2a, 3, 5. Recall that the '078 Patent describes the importance of the sheath: "the sheath is a holder, which makes a thermal contact with a side surface of the diamond . . . and acts as a heat-sink <u>to prevent the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond</u>." '078 Patent 4:48-55 (emphasis added). The '078 Patent cautions that if the diamond growth extends too far above the sheath, this could "prevent the heat-sinking effect of the sheath that prevents the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond." <u>Id.</u> at 5:4-7[].

Of course, as the plaintiffs emphasize and Fenix concedes, the figures and embodiments in the '078 Patent are not limitations on its claims; the inventors' claims sweep more broadly than any particular illustration. Perhaps Noveau has discovered a way to practice the claimed methods without using a sheath. Still, the Court notes the lack of a sheath because it calls into question plaintiffs' claims: how can Noveau limit the temperature gradient without "a heat-sink to prevent the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond"? <u>See id.</u> at 4:48-55.

### B.   Growth of Single-Crystal Diamond on the Growth Surface

Fenix's response is simple: Noveau <u>does not</u> "prevent the formation of twins or polycrystalline diamond"; it accepts and deals with the polycrystalline material by cutting it off, polishing, and annealing. Therefore, Fenix argues, Noveau does not practice the patented method.

The Limbasiyas authenticate and describe several images of diamonds grown by Noveau. As the affiants explain, "[t]here is thick polycrystalline on each diamond." Aff. ¶ 5.E; <u>see also</u> Aff. Views 5-10 (showing the non-monocrystalline growth, which is visible to the naked eye). Indeed, plaintiff's own expert concedes that Noveau's diamond blocks contain "non-diamond or graphitized polycrystalline diamond," which "is something different than the single-crystal diamond material growing epitaxially at the growth surface, and [which] is cut away as it does not form part of the single crystal diamond portion." Capano Rpt., Kopinski Decl. Ex. 4, ECF No. 99-4, ¶ 172. Fenix argues that, because plaintiffs concede that Noveau's manufacturing process involves non-monocrystalline growth and because that growth is obviously not insubstantial, Noveau does not "grow[] single-crystal diamond . . . on the growth surface," a limitation on both asserted claims.

Carnegie offers three responses.  First, Carnegie contends
that the Affidavit and the Limbasiya Deposition are inadmissible.
This argument is both mistaken and irrelevant.[3]

To begin with, the Affidavit and Limbasiya deposition,
contrary to Carnegie's claim, clearly meet the threshold
requirement for consideration on summary judgment, viz., that "the
material cited to support or dispute a fact can[] be presented in
a form that would be admissible in evidence."  Fed. R. Civ. P.
54(c)(2).  Plaintiffs offer no reason to doubt that the Limbasiyas'
testimony regarding Noveau's manufacturing processes is made on
personal knowledge and would be admissible on direct examination
at trial.  And Federal of Civil Procedure 56(c)(4) explicitly
permits a movant or opponent to use an affidavit or declaration
"on personal knowledge" if it "set[s] out facts that would be
admissible in evidence, and show[s] that the affiant or declarant
is competent to testify on the matters asserted."[4]

---

[3] The Court, however, rejects Fenix's assertion that the Affidavit
is notarized and is, therefore, a self-authenticating acknowledged
document admissible under Federal Rule of Evidence 902(8).  To be
sure, when a party offers into evidence a self-authenticating
document, the proponent need not otherwise demonstrate the
document's authenticity.  But the party must still demonstrate
that the document offers testimony that, if offered through live
testimony at trial, would be admissible in all other respects,
such as relevance, the witness's competency, etc.

[4] The Court also rejects plaintiffs' argument that the deposition
transcript is not properly considered on this summary judgment
record.  In a teleconference on October 29, 2020, plaintiffs
informed the Court that, pursuant to a Hague Convention request

Furthermore, even if all of plaintiffs' evidentiary arguments prevailed and the Court excluded the Limbasiyas' Affidavit and deposition testimony at the summary judgment stage, that would not change the result. Plaintiffs must point to some evidence from which a reasonable factfinder could conclude that Noveau grows single-crystal diamond on the growth surface, and plaintiffs offer no such evidence. Granted, Dr. Capano, one of plaintiffs' experts, performed a rocking-curve analysis and concluded that some of Noveau's diamonds "have insubstantial amounts of non-monocrystalline growth." PSUF ¶ 43. But, as plaintiffs concede,

_____

issued several months earlier, they were scheduled to depose Chirag Limbasiya in India in November 2020. Plaintiffs sought leave to proceed with the deposition after the Court-ordered close of discovery, and Fenix did not oppose the request. The parties contemplated (correctly) that the deposition would be complete after the summary judgment motion had been briefed. All parties indicated that they did not think the deposition would affect the summary judgment proceedings. However, plaintiffs' counsel indicated that plaintiffs imagined that this deposition testimony would be used the same way other deposition testimony had been used in the case; if it was capable of being reduced to admissible evidence, then the parties would cross that bridge at that time. At oral argument on Fenix's summary judgment motion, plaintiffs' counsel indicated that plaintiffs would provide the deposition testimony to the Court once formal translation was complete. In January 2021, the parties notified the Court that they had received a copy of the deposition transcript, and the Court permitted the parties to file excerpts from that deposition. Apparently disappointed with Limbasiya's testimony, plaintiffs now ask the Court not to consider the Limbasiya deposition. Consistent with plaintiffs' previous position, however, the Court will treat the deposition transcript no differently than other evidence offered in support of or opposition to summary judgment. In any event, the Limbasiya deposition is cumulative because the Court would reach the same result on this motion based on the Affidavit alone.

the rocking curve analysis was conducted "on a finished-diamond sample," Pls.' Opp. to Mot. for Summ. J., ECF No. 108, at 7, <u>i.e.</u>, a sample collected <u>after</u> Noveau removed the non-monocrystalline regions. Similarly, plaintiffs cite Fenix's marketing claims that its diamonds are of the "highest quality" and Fenix's admission in this case that, when it ultimately sells the diamonds, they have insubstantial polycrystalline diamond and insubstantial graphite inclusions. PSUF ¶¶ 40, 110, 111. However, because this evidence relates exclusively to the finished product, not to the diamonds as grown, it is neither disputed nor relevant to the question presented: whether Noveau <u>grows</u> single-crystal diamond <u>on the growth surface</u>.

<u>Second</u>, plaintiffs argue that the parasitic growth on the interstices of Noveau's diamond blocks is to be expected and is, therefore, "insubstantial" (or, at least, that there is a genuine dispute of material fact regarding substantiality). Plaintiffs' expert opines that "[u]nder [Fenix's] interpretation, it would be impossible to grow single crystal material via MPCVD because polycrystalline growth on the edges (e.g., 010 faces) during MPCVD is inevitable." Capano Rpt., Kopinski Decl. Ex. 4, ECF No. 99-4, ¶ 280. Plaintiffs argue that "[a]pplying Fenix's logic would thus have an absurd result: no MPCVD diamond process could ever infringe because of a necessary byproduct, one that isn't necessarily even diamond at all." Opp. 7-8.

18

This argument is one part slippery slope fallacy and one part motion for reconsideration. The slippery slope aspect of the argument is unsound because the "absurd result" plaintiffs fear is not, in fact, absurd. Perhaps it is the case that "no MPCVD diamond process could ever infringe because of a necessary byproduct"; that would just mean that the Patent is non-enabled, a question the factfinder will resolve at trial. But the slippery slope argument is also unsound because Fenix does not argue that the patented method produces <u>no</u> non-monocrystalline growth, only that it produces <u>insubstantial</u> monocrystalline growth. And plaintiffs offer no basis for a reasonable factfinder to conclude that <u>Noveau's</u> non-monocrystalline growth is insubstantial; indeed, one can plainly see that the non-monocrystalline growth is extensive. <u>See</u> Aff. Views 6-10.

The thinly disguised motion-for-reconsideration aspect of plaintiffs' argument is readily apparent in the words of plaintiffs' expert:

| Court's Construction | Plaintiffs' Construction |
|---|---|
| "The construction of the term 'growth surface' must therefore not exclude polycrystalline growth."<br><br><u>Markman</u> Order, ECF No. 42, at 20. | "I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the periphery of the single crystal diamond."<br><br>Capano Rpt., Kopinski Decl. Ex. 4, ¶ 173. |

19

| "Plaintiffs' proposed construction . . . would wrongly restrict [growth surface] to include only surface area where single-crystal diamond is growing."  Markman Order 19. | "In my opinion, the growth surface is the region where single-crystal diamond grows . . . and does not include the surrounding areas."  Capano Rpt. ¶ 167. |
|---|---|
| "Since the Patent uses [growth surface] to refer to the entire surface where hydrocarbon gases are accruing into new diamond, the claim construction must impart the same meaning."  Markman Order 19. | "No, I am not willing to include the entire surface upon which hydrocarbon gases are accruing [in 'growth surface']. I think that's contrary to the Court's construction."  Capano Dep. Tr., Kopinski Decl. Ex. 16, ECF No. 126-1, at 180:21–181:4. |

At Markman, the Court construed "growth surface" to mean "the surface upon which diamond growth is occurring." Opinion and Order, ECF No. 42, at 20. Plaintiffs would instead construe the phrase to include only the surface on which single-crystal diamond growth is occurring. The Court rejects plaintiffs' disguised motion for reconsideration, which identifies no legal or factual basis for departing from the law of the case. Because plaintiffs' argument is premised not on a factual dispute but on a disagreement with the Court's claim construction, the question presented is a legal one and summary judgment is proper. MyMail, Ltd. v. Am. Online, Inc., 476 F.3d 1372, 1378 & n.1 (Fed. Cir. 2007).

Finally, plaintiffs argue that the Court should deny Fenix's motion for summary judgment because plaintiffs were not able to

take possession of any raw diamond bricks before Noveau cut and polished them. Plaintiffs thus could not analyze the peripheral growth that Fenix claims is polycrystalline. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) ("At least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information.").

Plaintiffs chose to file this suit against Fenix and not against Noveau, and with that decision came certain risks. One of those risks was that plaintiffs would need to seek discovery from Noveau through the Hague Convention, rather than directly through this Court. The Court permitted plaintiffs every opportunity to seek such discovery, and in April of this year, the Court finally received a letter from the Indian Government enclosing the evidence plaintiffs obtained through the Hague Convention. Indeed, the deposition of Chirag Limbasiya, which plaintiffs now argue should not be considered on summary judgment, was obtained by plaintiffs through the Hague Convention. The Hague Convention process has now run its course, and to the extent plaintiffs tried, but were unable, to obtain diamond samples from non-party Noveau through the Hague Convention, plaintiffs ran that risk by suing Fenix and not Noveau.

Insofar as plaintiffs argue that Fenix controls Noveau and thus has access to, and should have produced, diamond samples, the Court has already rejected this argument. Memorandum Order, ECF No. 63 (denying plaintiffs' motion to compel production by Fenix). Plaintiffs offer no evidence to disturb the Court's prior conclusion that Fenix lacks the practical ability to require Noveau to turn over in-process diamond bricks.

Furthermore, plaintiffs fail to show how they would benefit from accessing the raw diamond. Dr. Capano, plaintiffs' expert, acknowledged that he thought the interstitial substance in Noveau's diamond bricks was some combination of polycrystalline diamond, polycrystalline graphite, and non-diamond carbon -- not single-crystal diamond. Capano Dep. Tr., Kopinski Decl. Ex. 16, ECF No. 126-1, at 178:3-11. Plaintiffs have not remotely suggested (let alone offered evidence to show) that the substantial interstitial regions that are obvious to the naked eye in Noveau's diamond batches might, in fact, be single-crystal diamond. Therefore, plaintiffs have not shown how they might create a genuine dispute of material fact by testing the diamond blocks.

For these reasons, no reasonable factfinder could conclude that Noveau "grows single-crystal diamond . . . on the growth surface," as the Patent uses those terms.

C.  Maintenance of 20-Degree Temperature Gradients

As a second independent basis for summary judgment, Fenix argues that a reasonable factfinder would necessarily conclude that Noveau does not maintain 20-degree temperature gradients across the growth surface, a limitation on both asserted independent claims. Fenix offers three bases for this conclusion.

First, Fenix argues that a side contact holder is essential to maintaining the temperature gradient beneath 20° Celsius; Noveau uses an open holder design, making such a gradient impossible. To be sure, a side-contact holder is what the embodiments, figures, and examples of the '078 Patent had in mind. However, plaintiffs maintain that the 20-degree gradient does not require a side-contact substrate holder. They offer the expert testimony of Dr. Capano, who claims, based on a technique called finite element analysis, that it is possible to practice the 20-degree gradient limitation without using a side-contact holder. Dr. Capano's report creates a genuine dispute of material fact as to whether it is possible to practice the 20-degree limitation without a side-contact holder.

Second, Fenix recycles its prior argument that there is substantial polycrystalline growth. Thus, Fenix argues, the gradient must be greater than 20° Celsius. After all, Fenix points out, the purpose of the 20-degree gradient limitation was to eliminate or substantially reduce polycrystalline growth; if

23

Noveau's process produces substantial polycrystalline growth, then it must be because Noveau's gradients exceed 20° Celsius.

This argument adds nothing new. If (as the Court has already found) Noveau's process yields substantial non-monocrystalline growth on the growth surface, then Noveau's process does not infringe the Patent, regardless of whether the reason for that growth is a failure to practice the correct temperature gradient.

Furthermore, this argument is unsound because it exemplifies a logical fallacy known as "affirming the consequent." Here is an example of the fallacy:

> 1. *If the Yankees ever lose ten games in a row, then Judge Rakoff will paint his chambers a mournful gray.*
>
> 2. *Judge Rakoff's chambers are painted gray.*
>
> 3. *Therefore, the Yankees must have lost ten games in a row.*

The reasoning is unsound because it could be that the Yankees never lost ten games in a row (God willing), but Judge Rakoff's chambers were painted gray because that was the only color the General Services Administration would allow, or because Judge Rakoff wished the color to match his hair, or any of a dozen other reasons. Here, Fenix has committed the same fallacy:

> 1. *If the temperature gradients exceed 20° C, then there will be polycrystalline growth.*
>
> 2. *There was polycrystalline growth.*
>
> 3. *Therefore, the gradients must have exceeded 20° C.*

The reasoning is unsound because it could be that the temperature gradients were maintained at less than 20° C, but there was polycrystalline growth for some other reason (wrong temperature, wrong pressure, wrong mix of gases, etc.). Therefore, the Court rejects Fenix's argument that the polycrystalline growth demonstrates a failure to maintain the temperature gradient.

Finally, Fenix argues that undisputed record evidence demonstrates that Noveau neither limits its temperature gradients to less than 20° C nor even tries to do so. In this respect, the Limbasiyas aver that "Noveau [does not] compute or measure temperature difference on the growth surface during normal growth." Aff. ¶ 5.K. The affiants further aver that "Fenix asked us to try." Id. The result was that after about four hours of growth, the temperature at the periphery of the growth surface was 44° C greater than the temperature at the center of the growth surface, id. ¶ 5.L, and after about fifty-two hours of growth, the temperature at the periphery was approximately 51° C greater than the temperature at the center, id. ¶ 5.M.

Fenix's counsel produced to plaintiffs, purportedly on behalf of Noveau, related data on which Fenix now relies (e.g., thermal camera data allegedly showing temperature gradients that exceed 20° Celsius). Plaintiffs point out that this evidence was not produced by Noveau or its counsel and was not produced in response to any discovery request or through the Hague Convention.

25

Fenix's counsel has taken the position throughout this litigation that it does not represent Noveau. Plaintiffs object that the thermal camera data was created for the purpose of this litigation based on Fenix counsel's instructions to Noveau, but that communications between Fenix's counsel and Noveau have not been disclosed, leaving plaintiffs unable to probe the accuracy of the data Noveau produced for this litigation. Plaintiffs argue that, without the communications between Fenix's counsel and Noveau, plaintiffs have no reasonable way to cross-examine this data. Plaintiffs add that its experts Dr. Capano and Dr. Gleason contend that, without further information, the thermal camera data is unreliable.

Plaintiffs have the better of this argument. In July 2020, the Court denied plaintiffs' motion to compel production of certain documents by Fenix, finding that plaintiffs had not demonstrated, as a practical matter, that Fenix could access Noveau's documents; the Court adheres to that finding. See Memorandum Order, ECF No. 63. At the same time, however, the Court warned that "a party may not 'blow hot or cold' and, having persuaded the court in discovery of its inability to produce such documents, later seek to use them to help its case at trial." Id. at 2 (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007).

Concededly, the documents that Fenix persuaded the Court it could not produce last July are not the same documents at issue

26

here, but the principle the Court then articulated applies here. The Limbasiyas concede that it was Fenix who "asked us to try" making thermal measurements, and Fenix's counsel, not Noveau, ultimately produced the resulting data to plaintiffs outside the Hague Convention, yet Fenix failed to produce the communications between Fenix (or its counsel) and Noveau (or its counsel) which would provide necessary context for that data collection. The Court will not permit Fenix, based on its corporate relationship with Noveau, to produce and then rely upon a self-serving subset of relevant documents to demonstrate the temperature gradients that occur during Noveau's growth. The Court excludes all of Fenix's evidence purporting to show temperatures or temperature gradients during Noveau's diamond growth.

On the other hand, the Limbasiyas' simple testimony that "Noveau [does not] compute or measure temperature difference on the growth surface during normal growth," Aff. ¶ 5.K, does not suffer from the same problem. The plaintiffs were permitted to depose the affiants under the Hague Convention, and they did so. The Court will consider the fact that Noveau does not even measure temperature gradients during diamond growth, and this fact supports an inference that Noveau does not maintain 20-degree temperature gradients. Indeed, the Patent itself instructed the practitioner to measure temperature gradients during growth. '078 Patent 6:65-7:4 (noting that "the main process controller"

27

"controls the temperature of the growth surface such that all temperature gradients across the growth surface are less than 20° C," "[b]ased upon temperature measurements from the pyrometer"). Especially given that Noveau does not measure gradients, plaintiffs point to no evidence from which a reasonable factfinder could conclude that Noveau does, in fact, maintain gradients that do not exceed 20° C during growth.

For the foregoing reasons, the Court grants summary judgment to Fenix on plaintiffs' claims based on the '078 Patent because, construing all facts and drawing all reasonable inferences in plaintiffs' favor, no reasonable factfinder could conclude either that Noveau "grows single-crystal diamond . . . on the growth surface" or that it "controls temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C."

## II. The '189 Patent

Although the operative Amended Complaint includes claims based on the '189 Patent, plaintiffs concede that they "are no longer asserting that Fenix infringes the '189 Patent in this action." DSUF ¶ 12. Plaintiffs are even willing to concede that the claims should be dismissed with prejudice and, at oral argument, plaintiffs represented that they had executed a binding covenant not to sue.

Nevertheless, the parties disagree about how the Court should dispose of plaintiffs' claims and Fenix's related counterclaims. Fenix argues that the Court should grant summary judgment in its favor because Fenix met its burden as movant to show the lack of a genuine dispute of material fact.  Plaintiffs argue that the Court must dismiss the claims and counterclaims relating to the '189 Patent for lack of subject matter jurisdiction because, given the binding covenant, the dispute is moot and the Court lacks subject matter jurisdiction.

The Court begins with Fenix's counterclaims relating to the '189 Patent, which allege (1) that Fenix does not infringe the patent, (2) that the patent is invalid, and (3) that the patent is unenforceable because the '189 Patent (or its predecessor before reissue) was procured through inequitable conduct.  These claims all arise under the Declaratory Judgment Act.  In addition, Fenix seeks attorney's fees under 35 U.S.C. § 285.

The Federal Circuit has explained that "[a] useful question to ask in determining whether an actual controversy exists [in a case like this] is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).  In Benitec, as in the case at bar, a patentholder sued for alleged infringement and the defendant asserted counterclaims under the Declaratory Judgment Act.

29

However, after unfavorable developments for the plaintiff, it moved to dismiss its claims without prejudice under Federal Rule of Civil Procedure 41(a)(2). The district court granted the motion and dismissed the counterclaims for lack of subject matter jurisdiction under the Declaratory Judgment Act. The defendant appealed. Before the case was resolved on appeal, the plaintiff covenanted not to sue the defendant for any infringement predating the dismissal of the case by the district court. The Federal Circuit affirmed, finding that after the covenant, the plaintiff had no viable claims against the defendant, so the court lacked subject matter jurisdiction over the defendant's counterclaims under the Declaratory Judgment Act.

In the case at bar, given the binding covenant not to sue executed by plaintiffs and the fact that defendants' counterclaims arise under the Declaratory Judgment Act, Benitec controls. Accordingly, defendants' declaratory judgment counterclaims relating to the '189 Patent are dismissed for lack of subject matter jurisdiction. Defendants' claim for attorney's fees remains.

Plaintiffs' affirmative claims, however, are in a different procedural posture from those in Benitec. The Amended Complaint claims not only declaratory judgment but also monetary damages (among other relief); therefore, despite plaintiff's covenant,

30

their still-pending claims state an injury-in-fact sufficient to demonstrate standing.

Moreover, unlike the plaintiff in Benitec, who filed a Rule 41(a)(2) motion, here the plaintiffs do not offer a procedural vehicle for the dismissal of their claims. Rather, the plaintiffs argue that with an eleventh-hour covenant they can unilaterally deprive the Court of subject matter jurisdiction over claims for damages that remain pending before this Court.

Benitec does not support this proposition, nor is the Court aware of any case that does. The Federal Rules explicitly provide a mechanism for a plaintiff to unilaterally drop its claims by filing a notice of voluntary dismissal. See Fed. R. Civ. P. 41(a)(1)(A)(i). However, a plaintiff must do so before issue is joined. Here, the plaintiffs lost their ability to unilaterally dismiss their claims when Fenix filed its answer. Covenanting not to sue (or even covenanting not to prosecute this suit) does not offer a substitute for Rule 41(a)(1)(A)(i), nor, given that plaintiffs seek damages, does it deprive the Court of subject matter jurisdiction over plaintiffs' still-pending claims.

Therefore, the Court declines plaintiffs' oral motion to dismiss plaintiffs' claims relating to the '189 Patent. And there can be no doubt that Fenix is entitled to summary judgment on those claims; plaintiffs offer no evidence from which a reasonable factfinder could conclude that Noveau's methods infringe the '189

31

Patent. Accordingly, the Court grants summary judgment to Fenix on plaintiffs' claims relating to the '189 Patent.

For the foregoing reasons, Fenix's motion for summary judgment, ECF No. 97, is granted and the Court enters judgment for Fenix dismissing all plaintiffs' claims with prejudice. Fenix's counterclaims relating to the '189 Patent are dismissed for lack of subject matter jurisdiction, except insofar as Fenix seeks attorney's fees. Fenix's counterclaims relating to the '078 Patent were not the subject of any dispositive motion and will proceed to trial. The parties are directed to jointly call Chambers by June 21, 2021 to set a date for trial on Fenix's remaining counterclaims.

SO ORDERED.

Dated:    New York, NY
          June 16, 2021                    _____
                                           JED S. RAKOFF, U.S.D.J.

# Exhibit 4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARNEGIE INSTITUTION OF WASHINGTON,

M7D CORPORATION,

     *Plaintiffs*,

v.

FENIX DIAMONDS LLC,

     *Defendant*.

Civil Action No. 1:20-cv-00200-JSR

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

      A.    Fenix's Invalidity Counterclaim Under the '189 Patent ......................... 2

      B.    Fenix's Invalidity Counterclaim Under the '078 Patent ........................ 3

            1.    Fenix's remaining counterclaim is limited to the "Asserted Claims" ......... 4

            2.    Fenix's remaining counterclaim is tied to the Court's claim
                  constructions ................................................................ 6

III.  LEGAL STANDARD ........................................................................... 8

      A.    Subject Matter Jurisdiction Over Declaratory Judgment Claims ........... 8

      B.    Claim Construction is Fundamental to Validity Determinations ........... 10

IV.   ARGUMENT ................................................................................... 11

      A.    Plaintiffs' Covenant Removed Subject-Matter Jurisdiction Over Fenix's
            Counterclaim .............................................................................. 11

      B.    Even If the Court Did Have Jurisdiction Over Fenix's Counterclaim, It Would
            Be Imprudent To Proceed To Trial ..................................................... 14

V.    CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

CASES

*ABS Glob., Inc. v. Cytonome/ST, LLC*,
  984 F.3d 1017, 1026 (Fed. Cir. 2021)........................................................................13

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
  172 F.3d 852, 856 (Fed. Cir. 1999)........................................................................9, 13

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*,
  687 F.3d 1266, 1273–74 (Fed. Cir. 2012)................................................................10

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340, 1343, 1346 (Fed. Cir. 2007)..............................................................9

*Clalit Health Servs. v. Israel Humanitarian Found.*,
  No. 02 Civ. 6552(DC), 385 F. Supp. 2d 392, 402 (S.D.N.Y. 2005)........................15

*Dow Jones & Co. v. Ablaise Ltd.*,
  606 F.3d 1338, 1346 (Fed. Cir. 2010).........................................................................9

*Fort James Corp. v. Solo Cup Co.*,
  412 F.3d 1340, 1348 (Fed. Cir. 2005)................................................................13, 14

*Liquid Dynamics Corp. v. Vaughan Co.*,
  355 F.3d 1361, 1371 (Fed. Cir. 2004)..................................................................9, 15

*Lochner Techs., LLC v. Vizio, Inc.*,
  567 F. App'x 931, 938, 940 (Fed. Cir. 2014) ...........................................................10

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270, 273 (1941)..........................................................................................11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  959 F.3d 1091, 1100 (Fed. Cir. 2020).......................................................................10

*Medichem, S.A. v. Rolabo, S.L.*,
  353 F.3d 928, 933 (Fed. Cir. 2003)...........................................................................10

*Minnesota Min. & Mfg. Co. v. Norton Co.*,
  929 F.2d 670, 672 (Fed. Cir. 1991).............................................................................9

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373, 1379 (Fed. Cir. 2019).......................................................................10

*Nike, Inc. v. Already, LLC*,
  663 F.3d 89, 97 (2d Cir. 2011)............................................................................11, 12

## TABLE OF AUTHORITIES
### (continued)

*Nike, Inc. v. Already, LLC,*
   No. 09 Civ. 6366(RJS), 2011 WL 310321 at *2, *4 (S.D.N.Y. Jan. 20, 2011).........................9

*Noah Sys., Inc. v. Intuit Inc.,*
   675 F.3d 1302, 1311 (Fed. Cir. 2012).....................................................................................10

*Preiser v. Newkirk,*
   422 U.S. 395, 401 (1975)..........................................................................................................8

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
   556 F.3d 1294, 1297 (Fed. Cir. 2009).......................................................................................9

*SanDisk Corp. v. STMicroelectronics, Inc.,*
   480 F.3d 1372, 1382 (Fed. Cir. 2007).......................................................................................8

*Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.,*
   933 F.3d 1367, 1374 (Fed. Cir. 2019).....................................................................................12

*WundaFormer, LLC v. Flex Studios, Inc.,*
   No. 15 Civ. 4802(JSR), 2015 WL 7181249 at *2 (S.D.N.Y. Nov. 10, 2015) .............12, 14, 15

**STATUTES**

35 U.S.C. § 101...........................................................................................................5, 6, 10

35 U.S.C. § 102........................................................................................................4, 6, 7, 8, 10

35 U.S.C. § 103.......................................................................................................5, 6, 7, 8, 10

35 U.S.C. § 112.........................................................................................................5, 6, 7, 10

## I.    INTRODUCTION

Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs") once asserted U.S. Patent Nos. 6,858,078 (the "'078 Patent") and RE41,189 (the "'189 Patent") against defendant Fenix Diamonds LLC ("Fenix"). The Court granted summary judgment of non-infringement to Fenix based on the manufacturing process of Fenix's diamonds as disclosed by its manufacturer Nouveau Diamonds LLP ("Nouveau").

Plaintiffs have now granted two covenants not to sue Fenix, Nouveau, or any of their various related parties based on any past, present, or future Fenix products manufactured by Nouveau. Those covenants have extinguished any case or controversy as to the asserted patents. The Court has dismissed Fenix's declaratory judgment counterclaims for invalidity of the '189 Patent because of Plaintiffs' covenant. Yet, quixotically, Fenix insists that the Court should try to a jury Fenix's declaratory judgment counterclaims for invalidity of the '078 Patent.

The Court should decline Fenix's invitation to conduct a moot trial and issue an advisory opinion as to validity of the '078 Patent. None of Fenix's invalidity arguments, if tried today, could grant more relief to Fenix than it has attained through Plaintiffs' covenant and the Court's summary judgment order. As with the '189 Patent, the Court lacks subject-matter jurisdiction to grant a declaratory judgment of invalidity of the '078 Patent. And even if *arguendo* the Court had jurisdiction over Fenix's counterclaim, it would be improvident to devote the Court's resources to try a matter which cannot move the needle for Fenix.

Plaintiffs respectfully request that the Court dismiss Fenix's counterclaim for invalidity of the asserted claims of the '078 Patent.

## II.    BACKGROUND

### A.    Fenix's Invalidity Counterclaim Under the '189 Patent

Plaintiffs filed the operative Complaint on March 5, 2020, alleging that Fenix infringed U.S. Patent Nos. 6,858,078 (the "'078 Patent") and RE41,189 (the "'189 patent"). ECF No. 16. On May 18, 2020, Fenix served Plaintiffs with multiple counterclaims, including a counterclaim for a declaratory judgment of invalidity of the asserted claims of the '189 patent (Third Counterclaim). ECF No. 43 at 21.

At the close of discovery, Fenix moved for summary judgment of non-infringement of the "asserted claims" of the '078 Patent and the '189 Patent. ECF No. 97 at 1. Upon consideration of Fenix's motion, Plaintiffs acknowledged that they could not gather the evidence needed to demonstrate practice of the '189 Patent by Fenix's manufacturer Nouveau. Accordingly, Plaintiffs covenanted not to sue Fenix on the '189 Patent. The covenant covered "Fenix and its supplier Nouveau Diamonds LLP ('Nouveau')," "Fenix's direct or indirect subsidiaries," and "any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 1, (Nov. 17, 2020) Email.[1] The covenant covered "previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of [Fenix's] product(s) annealed by Nouveau's annealing process." *Id*. Although Fenix only moved for non-infringement of the asserted claims of the '189 patent, Plaintiffs' covenant applied to "any claim of the '189 Patent." *Id*.

The Court granted Fenix's motion for summary judgment of non-infringement of the '189 Patent on June 16, 2021. ECF No. 133. In the same Order, the Court correspondingly dismissed "defendants' declaratory judgment counterclaims relating to the '189 Patent . . . for lack of subject

---

[1] Citations to "Ex.__" refer to the exhibits attached to the Declaration of Matthew J. Moffa concurrently filed herewith.

matter jurisdiction" "given the binding covenant not to sue executed by plaintiffs and the fact that defendants' counterclaims arise under the Declaratory Judgment Act." *Id.* at 30.

B.    **Fenix's Invalidity Counterclaim Under the '078 Patent**

Plaintiffs' March 5, 2020 Complaint also alleged that Fenix infringed the '078 Patent. ECF No. 16. And, in its May 18, 2020 answer, Fenix counterclaimed for invalidity of the '078 Patent (Fourth Counterclaim), just as it had done for the '189 patent. ECF No. 43 at 23.

The Court's June 16 Order granted summary judgment of non-infringement of the '078 Patent. That ruling relied on the Court's construction of "growth surface." *See, e.g.*, ECF No. 133 at 20, 28. The Court concluded that "no reasonable factfinder could conclude that Noveau 'grows single-crystal diamond . . . on the growth surface,' as the Patent uses those terms." *Id.* at 22. It also noted that "the Court construed 'growth surface' to mean 'the surface upon which diamond growth is occurring,'" and found "no legal or factual basis for departing from the law of the case." *Id.* at 20. As Plaintiffs had not yet granted a covenant as to the '078 Patent, the Court preserved for trial Fenix's invalidity counterclaims under the '078 Patent. ECF No. 133 at 32.

On June 21, 2021, Plaintiffs further covenanted not to sue Fenix on the '078 Patent. As with the '189 Patent, the second covenant covered "Fenix, Nouveau, Fenix's direct or indirect subsidiaries, or any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 2 (June 21, 2021 Email). The covenant also covered "previous or current or future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling of any of Fenix's products manufactured by Nouveau's manufacturing process." *Id*. And, again, although Fenix only moved for non-infringement of the "asserted claims" of the '078 Patent, Plaintiffs' covenant applied to "any claim of the '078 Patent." *Id.*

In consideration of the Court's summary judgment ruling, the second covenant was drafted to expressly apply so long as the Court's constructions of "single-crystal diamond," "growth surface," "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20° C," "growing single-crystal diamond ... on the growth surface at a growth temperature in a deposition chamber having an atmosphere with a pressure of at least 130 torr," and "growing single-crystal diamond ... on the growth surface at a temperature of 900-1400° C" remain the law. *Id.*

### 1.     Fenix's remaining counterclaim is limited to the "Asserted Claims"

Throughout the case, Fenix has maintained a limited scope for its invalidity counterclaim, particularly compared to Plaintiffs' covenant not to sue.

Fenix's counterclaim has never been directed to every claim in the '078 Patent, but only those claims of the '078 Patent that Plaintiffs identified in its March 11, 2020 Local Patent Rule 6 Disclosures as infringed by Fenix, i.e. claims 1, 6, 7, 11, 12, and 16 ("the Asserted Claims"). Today, Fenix seeks "a declaratory judgment that the **Asserted Claims** of the '078 Patent are invalid." ECF No. 43, Fourth Counterclaim, ¶ 50 (emphasis added).

Fenix's specific allegations within its counterclaim are each limited to the "Asserted Claims."

- "The **Asserted Claims** of the '078 Patent are invalid for the reasons set forth in Fenix's Preliminary Invalidity Contentions on March 20, 2020. . . ." *Id.* ¶ 41 (emphasis added).

- "U.S. Patent No. 5,628,824 . . . invalidates the **Asserted Claims** of the '078 Patent under at least 35 U.S.C. § 102." *Id.* ¶ 42 (emphasis added).

- "Vohra in view of U.S. Patent No. 5,449,412 . . . invalidates the ***Asserted Claims*** of the '078 Patent under at least 35 U.S.C. § 103." *Id.* ¶ 43 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not enabled and thus invalid under 35 U.S.C. § 112 . . . ." *Id.* ¶ 44 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not enabled and thus invalid under 35 U.S.C. § 112 . . . ." *Id.* ¶ 46 (emphasis added).

- "The ***Asserted Claims*** of the '078 Patent are not patent eligible and thus invalid under 35 U.S.C. § 101." *Id.* ¶ 48 (emphasis added).

Fenix's operative invalidity contentions are similarly limited to the "Asserted Claims" of the '078 Patent. Specifically, Fenix's May 26, 2020 Invalidity Contentions address only "asserted claims 1, 6, 7, 11, 12 and 16 of the . . . '078 patent . . . and claims 1 and 2 of . . . the '189 patent . . . (collectively, the 'Asserted Claims')." Ex. 3 (Invalidity Contentions) at 1; *see also id.* at 7 ("Fenix identifies the following items of prior art that anticipates or renders obvious one or more of the ***Asserted Claims***.") (emphasis added).

Fenix's Expert Report of J. Michael Pinneo, Ph.D., Regarding Invalidity of U.S. Patent Nos. RE41,189 and 6,858,078, served on September 19, 2020, is similarly limited to the Asserted Claims. According to Dr. Pinneo, he was "retained as a technical expert by Fenix Diamonds to study and provide my opinions on . . . the patentability or unpatentability of, the ***Asserted Claims***." Ex. 4 (Pinneo Rep.) ¶ 4 (emphasis added). Regarding the '078 Patent, he considered only the validity of claims 1, 6, 7, 12, and 16 (i.e. the Asserted Claims) in light of supposed prior art. *See Id.* at Table of Contents; *id.* ¶ 1499 ("As described in detail above, it is my opinion that claims 1, 6, 7, 11, 12, and 16 of the '078 patent and claims 1 and 2 of the '189 patent are invalid as anticipated

and as obvious . . . ."). And for his other invalidity opinions, he explained: (1) "[i]t is also my opinion that **claims 1, 6, 7, 11, 12, and 16 of the '078 patent** . . . are invalid as failing to recite patent eligible subject matter," *id.* ¶ 1500 (emphasis added); and (2) "[i]t is also my opinion that **claims 1, 6, 7, 11, 12, and 16 of the '078 patent** are invalid as lacking written description and/or enablement and indefiniteness . . . .'," *id.* ¶ 1501 (emphasis added).

### 2. Fenix's remaining counterclaim is tied to the Court's claim constructions

Fenix's invalidity counterclaim is also inexorably linked to the Court's claim constructions, and principally its construction of "growth surface."

Fenix's operative invalidity contentions allege invalidity of the '078 Patent under multiple statutory sections: 35 U.S.C. § 101 (subject-matter eligibility), §112 (definiteness, enablement, and written description), § 102 (anticipation) and § 103 (obviousness). In each case, Fenix's allegations, and Dr. Pinneo's September 19, 2020 expert report, applies one or more claim terms construed by the Court and addressed in its June 16 Order.

To start, Fenix's arguments under § 101 depend *inter alia* on the Court's construction of "growth surface." Fenix characterized the "Asserted '078 Claims" as "(i) a functionally recited desired result and (ii) collateral prior art structure for tying the desired result to a particular context." Ex. 3 (Invalidity Contentions) at 16. The supposed "desired result" was "controlling temperature of a **growth surface** of the diamond such that all temperature gradients across the growth surface are less than 20° C." *Id.* at 17 (emphasis added). Fenix likewise focused on the term "growth surface" for its application of the "*Mayo/Alice*" test for patent eligibility. When describing the "focus of the claimed advance," Fenix pointed to the claim language "controlling temperature of a **growth surface** of the diamond such that all temperature gradients across the growth surface are less than 20° C." *Id.* at 23 (emphasis added). Dr. Pinneo's opinions under § 101

correspondingly depend on the construction of "growth surface." He characterized the claims as reciting "the scientific principle of preventing the edge effect, namely thermal gradients under 20°C," Ex. 4 (Pinneo Rep.) ¶ 1236, and under the claims, gradients less than 20°C are required on the "growth surface."

Fenix's arguments under § 112 also depend on the term "growth surface." Fenix alleged that the '078 Patent "does not teach how to control the temperature of a *growth surface* such that all temperature gradients across the growth surface are less than 20° C without undue experimentation," "does not teach how to control a temperature gradient across the *growth surface* at . . . the lower end of the claimed temperature gradient range," and "does not teach how to measure a *growth surface* temperature with a degree of accuracy sufficient to enable one of skill to control all temperature gradients across the growth surface to less than 20° C." Ex. 3 (Invalidity Contentions) at 25–26 (emphasis added). Dr. Pinneo offered multiple opinions under § 112 that depended on the meaning of "growth surface." For example, Dr. Pinneo concluded that the Asserted Claims "are invalid as lacking written description and/or enablement and indefiniteness regarding the claimed feature of 'controlling temperature of a *growth surface* of the diamond such that all temperature gradients across the growth surface are less than 20° C.'" Ex. 4 (Pinneo Rep.) ¶ 1501 (emphasis added). And, in his analysis of indefiniteness under § 112, Dr. Pinneo opined that "determining whether 'all temperature gradients across the *growth surface* are less than 20° C' as required in the Asserted Claims of the '078 patent remains to be technically unfeasible and a highly subjective inquiry." *Id.* ¶ 1229 (emphasis added).

Finally, Fenix's invalidity contentions under 35 U.S.C. §§ 102 and 103 also depend on the claim construction of, *inter alia*, "growth surface." In its first of two claim charts for the '078 Patent, claim elements 1[A] and 1[B] include the term "growth surface," for which Fenix points

to prior art disclosures of *e.g.* "the "surface. . . of the. . . base material," "the major surface … of the …base material," "the surface of the substrate," "the principal surface" "of a diamond substrate," "the top plate," and "the diamond seed crystal surface." Ex. 3 (Invalidity Contentions) Table B.1, at 2, 4, 7, 10, 13. Fenix's other claim chart provides quotes from supposed prior art that refer to "the deposition surface," "the wafer," "the plane of the substrate," "the substrate surface," and "the surface of a metal substrate." *Id.* Table B.2, at 3-4, 6. Any comparison of these disclosures to the challenged claims requires an application of the claim construction for "growth surface."[2]

## III.    LEGAL STANDARD

### A.    Subject Matter Jurisdiction Over Declaratory Judgment Claims

Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted).

---

[2] Although Dr. Pinneo also offered opinions under §§ 102 and 103, *none* of these opinions could be used by Fenix for an invalidity trial under the Court's claim constructions. Dr. Pinneo exclusively applied §§ 102 and 103 under the condition that Plaintiffs' infringement theories might be found correct. According to Dr. Pinneo's report, "to the extent that Plaintiffs' infringement theories are correct or applicable, then the prior art would anticipate and render obvious the Asserted Claims of the '078 patent." Ex. 4 (Pinneo Rep.) ¶ 105; *see also id.* ¶ 148 ("[I]f Plaintiffs' infringement theories were true, then the prior art would anticipate and render obvious the claims."); *id.* ¶ 149 ("My analysis of the prior art for the '078 patent departs from the Court's Claim Construction Order and how a POSA would understand the '078 patent to the same extent as Plaintiffs' infringement theories."). Dr. Pinneo offered **no** alternative invalidity arguments assuming Plaintiffs' infringement theories were wrong, *i.e.* under the claim constructions adopted by the Court. Accordingly, given the Court's ruling on summary judgement determining that Fenix does not infringe the '078 Patent, Fenix has no expert testimony to support any claim of invalidity for the Asserted Claims of the '078 Patent under §§ 102 and 103, barring any appeal and reversal of the Court's claim constructions.

A party seeking declaratory judgment must show there is an actual controversy. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007); *see Nike, Inc. v. Already, LLC,* No. 09 Civ. 6366(RJS), 2011 WL 310321, at \*2 (S.D.N.Y. Jan. 20, 2011), *aff'd*, 663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).

"[A] covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010). "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). "[A]ll of the circumstances must be considered for each particular case." *Id.; see Nike,* 2011 WL 310321, at \*4. A covenant need not cover "wholly speculative" circumstances to divest the court of jurisdiction. *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999). Rather, a covenant under the patent "as it presently reads" will suffice. *See id.*

Even where a trial court has jurisdiction to adjudicate patent validity, a district court judge "faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) (citing *Nystrom v. TREX Co.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003)). "The reason for giving this discretion to the district court is to enable the court to make a reasoned judgment whether the investment of judicial time and resources in a declaratory action will prove worthwhile in resolving a justiciable dispute." *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991).

### B. Claim Construction is Fundamental to Validity Determinations

Claim construction is fundamental to a validity determination. As the Federal Circuit has explained, "[b]oth anticipation under § 102 and obviousness under § 103 are two-step inquiries" and "[t]he first step in both analyses is a proper construction of the claims." *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

Claim construction is also fundamental to validity determinations under § 101. According to the Federal Circuit, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). The Federal Circuit has also explained that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

The same holds true for claims under § 112. "Section 112 requires enablement of 'only the claimed invention,' not matter outside the claims. For that reason, the 'enablement inquiry necessarily depends on an interpretation of the claims.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (citations omitted). Claim construction is also fundamental to the written description requirement. "It is well-established that 'claim construction is inherent in any written description analysis.'" *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 938 (Fed. Cir. 2014) (citation omitted). Therefore, when the Federal Circuit disagrees with a district court's claim construction, it may vacate the written description ruling and "remand for further proceedings." *Id.* at 940. Finally, "[w]hether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).

## IV.     ARGUMENT

### A.     Plaintiffs' Covenant Removed Subject-Matter Jurisdiction Over Fenix's Counterclaim

Plaintiffs have made a binding covenant not to sue for infringement of the '078 Patent. After Plaintiffs' covenant, Fenix no longer faces a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas.*, 312 U.S. at 273. This Court has reached the same conclusion with respect to Fenix's counterclaims against the '189 Patent, which were dismissed without prejudice. ECF No. 133 at 30.[3]

Plaintiffs' June 21, 2021 covenant is broader than the relief that Fenix attained in summary judgment. While Fenix is the only named defendant, Plaintiffs' covenant extends to Fenix's manufacturer "Nouveau," each and every one of "Fenix's direct or indirect subsidiaries," and "any other Fenix supplier, distributor, customer, or partner, or any of their successors and assigns." Ex. 2, Wikberg June 21, 2021 Email. While the Court's Order applies to Fenix's past acts of alleged infringement, Plaintiffs' covenant extends to **all** of Fenix's "previous," "current," **and** "future making, using, manufacturing, development, marketing, licensing, distributing, importing, offering for sale, or selling" of Fenix's products manufactured by Nouveau. *Id.* And, while Plaintiffs only asserted certain claims of the '078 Patent against Fenix, Plaintiffs' covenant covers **every** claim of the '078 Patent. With the Court's summary judgment Order, Plaintiffs' covenant removes any "immediacy and reality" of a threatened assertion under the '078 Patent. Rather, the "breadth of the Covenant renders the threat of litigation remote or nonexistent even if [Fenix] continues to market and sell" its diamonds. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir.

---

[3] In dismissing Fenix's counterclaims under the '189 Patent, the Court preserved Fenix's claim for attorneys' fees in connection with the litigation. While Plaintiffs disagree that an award of fees is warranted, the instant motion does not seek to dismiss Fenix's claim for fees incurred to date in connection with the '078 Patent.

2011) (affirming dismissal of declaratory judgment action in view of covenant not to sue), *aff'd*, 568 U.S. 85 (2013).

Plaintiffs have not elected to appeal the June 16 Order (reserving their right to do so at the appropriate time). If Plaintiffs never appeal the Order, Plaintiffs' covenant unequivocally ensures that Fenix cannot be liable for past, present, or future products manufactured by Nouveau. The result is identical if Plaintiffs appeal the Order and the Federal Circuit upholds this Court's claim constructions. In either case, Fenix—and its customers, and its manufacturer—can never be liable under the '078 Patent for any activity involving Fenix/Nouveau's past, present, or future products. Proceeding to trial of invalidity of the '078 Patent under these circumstances, in the shadow of only a hypothetical appeal, would yield an "advisory opinion" and a decision for Fenix that is "speculative," if not moot. *See Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.*, 933 F.3d 1367, 1374 (Fed. Cir. 2019). A covenant need not "ma[k]e future litigation between the parties impossible" to remove jurisdiction, and the "hypothetical possibility" of continued litigation does not create a "definite and concrete" dispute. *Nike*, 663 F.3d at 97 n.5 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Plaintiffs' covenant, by its express terms, could only cease to apply if Plaintiffs appeal the June 16 Order and then the Federal Circuit reverses it through modification of the Court's constructions. As a general proposition, this Court has held that such a covenant leaves the parties with no controversy having the "'sufficient immediacy' needed to invoke the Declaratory Judgment Act." *WundaFormer, LLC v. Flex Studios, Inc.*, No. 15 Civ. 4802(JSR), 2015 WL 7181249, at *2 (S.D.N.Y. Nov. 10, 2015). That Plaintiffs "***might*** file an appeal on which [they] ***might*** prevail 'does not provide the immediacy and reality required for a declaratory judgment.'" *Id* (emphasis in original) (quoting *Benitec*, 495 F.3d at 1346). The prospect of being charged with

"future infringement" of a patent—with what would have, in effect, "non-identical claims"—is precisely the sort of "wholly speculative" circumstance that does not support the Court's jurisdiction. *See Amana Refrigeration*, 172 F.3d at 856. Given the resources that Plaintiffs have invested in the litigation, and the limited life remaining on the '078 Patent, there may be good reason to forgo an appeal. But that is a decision for another day; at present, the Court is without subject-matter jurisdiction over Fenix's invalidity counterclaim.

A comparison of this case to the circumstances in *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) is instructive. In *Fort James*, the Federal Circuit held that a district court could retain jurisdiction to hold a bench trial over a defendant's claim for a declaratory judgment of patent **unenforceability**, notwithstanding a prior jury verdict of non-infringement and plaintiff's subsequent issuance of a covenant not to sue. In finding that subject-matter jurisdiction was preserved, the Federal Circuit emphasized the "unique procedural posture" of the case. *Id.* at 1348. The case had already proceeded to trial, resulted in a jury verdict, and plaintiff's particular covenant had "no effect" because of that verdict. *Id.* Moreover, the defendant's counterclaims were "not disposed of by a decision of non-infringement." *Id.* This is because a finding of inequitable conduct, as the defendant's counterclaim alleged, would have rendered the patent unenforceable **whether or not** the jury's findings on non-infringement were reversed on appeal. As a later panel explained, *Fort James* thus affirmed the "unremarkable proposition" that a court's reliance on "one of two possible **alternative grounds**" does not strip it of the jurisdictional authority to decide the other. *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1026 (Fed. Cir. 2021) (emphasis added) (citation omitted).

In contrast to *Fort James*, under this case's "unique procedural posture," this Court lacks jurisdiction over Fenix's counterclaims. Fenix did not secure a jury verdict—nor has the Court

- 13 -

undertaken the effort of a jury trial. Plaintiffs' covenant is broader than the relief Fenix secured on summary judgment. Plaintiffs' covenant applies to every claim in the '078 Patent, protects more parties and acts than are covered by the Court's Order, and covers all future acts involving Fenix/Nouveau's products. Even if *arguendo* Plaintiffs appeal the June 16 Order, their covenant still stands unless the Court's claim constructions are revised.

Significantly, Fenix's remaining counterclaim does not provide an "alternative ground" to uphold a judgment if the Court's claim construction is reversed. Unlike the defendant in *Fort James*, Fenix has never pled claims of inequitable conduct which might render the entire '078 patent unenforceable. Rather, Fenix has only pled invalidity, and its arguments are inextricably tied to claim construction. The Court recognized in its summary judgment ruling that Fenix's enablement claim questions the ability to grow single crystal diamond without polycrystalline growth on the edges—a question directly affected by whether those edges are included within the construction of "growth surface." *See* ECF No. 133 at 18–19. Fenix's subject-matter and prior-art challenges likewise apply the Court's constructions, as set forth *supra*. If Fenix's counterclaim proceeds to trial, a jury would decide patent validity in view of the Court's constructions; if those constructions are ever vacated or changed by the Federal Circuit, noninfringement **and** invalidity will have to be reconsidered in light of a new construction. A jury will invariably have to undertake the entire validity exercise again, and any ruling by this Court on the invalidity counterclaims would not be available to sustain the Court's judgment on appeal. The instant covenant is thus more like that which this Court found removed jurisdiction in *WundaFormer*.

### B.  Even If the Court Did Have Jurisdiction Over Fenix's Counterclaim, It Would Be Imprudent To Proceed To Trial

Even when there is an actual controversy and thus jurisdiction, exercise of the Court's jurisdiction to hear a declaratory judgment claim is discretionary. *Liquid Dynamics*, 355 F.3d at

1371; *see Clalit Health Servs. v. Israel Humanitarian Found.*, No. 02 Civ. 6552(DC), 385 F. Supp. 2d 392, 402 (S.D.N.Y. 2005) (granting of a declaratory judgment "rests in the sound discretion of the trial court" (citation omitted)).

In *WundaFormer*, this Court recognized that "it would be imprudent and a potential waste of both the parties' and judicial resources for the Court to proceed to determine the validity of [a patent-in-suit], when plaintiff has categorically dropped its infringement allegations barring a reversal of the Court's construction." *WundaFormer,* 2015 WL 7181249, at *2. There would be "nothing expedient about the Court undertaking to determine validity now, where there may never be cause for it or any court to do so." *Id*. The same reasoning applies here.

Fenix's invalidity positions are limited to the "Asserted Claims" and depend directly or indirectly on the Court's claim constructions. Under the law of the case (which includes legal findings of non-infringement of the Asserted Claims), any invalidity finding on the limited counterclaim would be superfluous to the summary judgment ruling. Fenix, and its manufacturers and suppliers, would gain no extra relief or rights under the counterclaim than they have under the Court's Order and Plaintiffs' covenant not to sue. The covenant would be disturbed only if Plaintiffs appeal and prevail. Plaintiffs have not elected to appeal the Court's June 16 Order at this time. But even if they do and prevail, any judgement on the pending invalidity counterclaim would also be disturbed since, as above, invalidity turns on claim construction. Trial on invalidity would have to be repeated, wasting judicial and party resources. And if there is no appeal—or an unsuccessful one—resources would have been wasted.

The Court should exercise its discretion and decline to hold a trial that would provide Fenix and its manufacturers and suppliers no further relief than they have already obtained.

## V. CONCLUSION

Plaintiffs respectfully request that the Court dismiss Fenix's counterclaim for invalidity of the Asserted Claims of the '078 Patent.

July 1, 2021

Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Matthew J. Moffa*
Matthew J. Moffa
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 261-6857
Fax: (212) 399-8057
e-mail: MMoffa@perkinscoie.com

Terrence J. Wikberg (*admitted pro hac vice*)
Michael A. Chajon (*admitted pro hac vice*)
PERKINS COIE LLP
607 14th Street, NW
Washington, DC 20005
Telephone (202) 434-1649
Fax: (202) 654-9149
e-mail: TWikberg@perkinscoie.com
           MChajon@perkinscoie.com

Amy E. Simpson (*admitted pro hac vice*)
Kevin Patariu
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-3334
Telephone: (858) 720-5702
Fax: (858) 720-5799
e-mail: ASimpson@perkinscoie.com
           KPatariu@perkinscoie.com

Michelle Umberger (*admitted pro hac vice*)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7466

Fax: (608) 663-7499
e-mail: MUmberger@perkinscoie.com

Sarah Fowler (*admitted pro hac vice*)
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 943041212
Telephone: (650) 838-4489
e-mail: SFowler@perkinscoie.com

*Counsel for Plaintiffs Carnegie Institution of
Washington and M7D Corporation*

# Exhibit 5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARNEGIE INSTITUTION OF WASHINGTON,

M7D CORPORATION,

       *Plaintiffs*,

v.

FENIX DIAMONDS LLC,

       *Defendant*.

Civil Action No. 1:20-cv-00200-JSR

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 1

    A. Fenix Misinterprets Applicable Case Law and Rationale ...................................... 1

    B. Plaintiffs Pursued Colorable Infringement Claims After Claim Construction ....... 3

    C. Significant Resources Would Be Expended at Trial ................................................ 4

    D. Fenix Ignores the Scope of Plaintiffs' Covenant Not To Sue ................................ 5

    E. Any Public Interest in Invalidity Challenges Cannot Overcome a Lack of Subject Matter Jurisdiction ................................................................................................. 6

III. CONCLUSION .......................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**

ABS Global, Inc. v. Cytonome/ST, LLC,
 984 F.3d 1017, 1026 (Fed. Cir. 2021)...................................................................1, 2

ArcelorMittal v. AK Steel Corp.,
 856 F.3d 1365, 1371–72 (Fed. Cir. 2017)............................................................1, 2

Cardinal Chemical Co. v. Morton Int'l, Inc.,
 508 U.S. 83, 98 (1993)...............................................................................................2

Dow Jones & Co. v. Ablaise Ltd.,
 606 F.3d 1338, 1347–48 (Fed. Cir. 2010).................................................................7

Fort James Corp. v. Solo Cup Co.,
 412 F.3d 1340, 1342, 1348 (Fed. Cir. 2005)......................................................1, 2, 4

Fox Grp., Inc. v. Cree, Inc.,
 819 F. Supp. 2d 520, 523 (E.D. Va. 2011) ...............................................................6

Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.,
 No. SACV 15-00246-CJC(JPRx), 2018 WL 1896310, at *6 (C.D. Cal. Mar.
 28, 2018) .....................................................................................................................7

WundaFormer, LLC v. Flex Studios, Inc.,
 No. 15-CIV-4802(JSR), 2015 WL 7181249, at *2 (S.D.N.Y. Nov. 10, 2015) ...........1, 2, 3, 4

## I.    INTRODUCTION

Plaintiffs Carnegie Institution of Washington and M7D Corporation ("Plaintiffs") granted Defendant Fenix Diamonds LLC ("Fenix") a covenant not to sue on U.S. Patent No. 6,858,078 ("the '078 Patent"). The covenant covers every claim of the patent, for all time. Plaintiffs then appropriately moved to dismiss Fenix's counterclaim for a declaratory judgment of invalidity.

In opposing Plaintiffs' motion, Fenix urges the Court to press forward to trial and waste Court and party resources. But Fenix ignores the full scope of the covenant, mischaracterizes cases from this Court and the Federal Circuit, and makes policy arguments that are beside the point. Fenix also disparages Plaintiffs for pursuing plausible claims of infringement and abiding by the Court's efficient case schedule. Fenix's aspersions should be set aside and the motion to dismiss granted.

## II.    ARGUMENT

### A.    Fenix Misinterprets Applicable Case Law and Rationale

In opposing Plaintiffs' motion, Fenix mischaracterizes the Federal Circuit's rulings in *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005), *ABS Global, Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1026 (Fed. Cir. 2021), and *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365 (Fed. Cir. 2017), as well as this Court's ruling in *WundaFormer, LLC v. Flex Studios, Inc.*, No. 15-CIV-4802(JSR), 2015 WL 7181249, at *2 (S.D.N.Y. Nov. 10, 2015).

First, Fenix tries to extend *Fort James* beyond its facts. *Fort James* considered jurisdiction over a "counterclaim for a declaration of unenforceability of a patent," not of invalidity of a subset of patent claims. 412 F.3d at 1342. Fenix seeks shelter in the Federal Circuit's statement that "a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement," emphasizing the inclusion of validity in that statement.   ECF No. 137 (hereinafter, "Opp.") at 3 (emphasis

omitted) (citing *Fort James*, 412 F.3d at 1348). Plaintiffs do not dispute that invalidity raises different issues than infringement and that, in certain circumstances, a decision of non-infringement may not provide the full scope of relief sought under an invalidity counterclaim that covers, *e.g.*, all the patent claims and future conduct. But that is not the case here, where Fenix's invalidity counterclaim provides no additional cover beyond the combined effect of the Court's summary judgment Order and Plaintiffs' covenant not to sue. *Fort James* applied the "unremarkable position" that a ruling on "one of two possible alternative[s]" for relief (non-infringement) does not extinguish jurisdiction over an independent, alternative ground (unenforceability). *ABS Glob.,* 984 F.3d at 1026 (citation omitted). As detailed in Plaintiffs' opening brief, no such "alternative ground" is sought by Fenix. ECF No. 135 ("Motion") at 14.

Fenix next accuses Plaintiffs of ignoring a statement in *ABS Global* that pertained to *Cardinal Chemical Co. v. Morton International, Inc.,* 508 U.S. 83 (1993). Plaintiffs cited *ABS* for its assessment of *Fort James*, not *Cardinal Chemical*. Motion 13. Regardless, *Cardinal Chemical* too fails to support Fenix's position, since *Cardinal Chemical*, like *Fort James*, also involved an "alternative" ground for relief. 508 U.S. at 98. Here, the covenant and the Court's Order together grant Fenix all the relief they could expect to obtain at trial under the Court's current claim constructions. Fenix also misapplies *ArcelorMittal*, which found that a covenant **delivered** conditionally—*i.e.*, subject to the resolution of other active, pending motions—did not remove subject matter jurisdiction. 856 F.3d at 1371–72. Here, Plaintiffs' covenant was made to Fenix's counsel not subject to any pending motion. ECF No. 136-2.

Finally, Fenix mischaracterizes *WundaFormer*. Fenix states that, as "the Court recognized in *WundaFormer*, Plaintiffs' conditional covenant not to sue does not divest the Court of subject matter jurisdiction over Fenix's invalidity counterclaim." Opp. 2. Plaintiffs respectfully submit

that this Court recognized no such thing and had "no trouble finding" that a conditional covenant—of the very type offered here—extinguished subject matter jurisdiction. *WundaFormer*, 2015 WL 7181249, at *2 (finding that "this Court does not have jurisdiction to entertain the invalidity claim" "[i]n light of the parties' joint stipulation of non-infringement and plaintiff's covenant not to sue on the [asserted] Patent barring a change in the law of the case").

Also, according to Fenix, *WundaFormer* fails to support Plaintiffs because the covenant at issue there was granted before a judicial decision on non-infringement. Opp. 4. But this timing supports Plaintiffs' argument, not Fenix's. At the time this Court issued its order in *WundaFormer*, the plaintiff had stipulated to non-infringement and offered a covenant not to sue. Under those circumstances, this Court correctly found that the "defendants [had] no immediate interest in the validity of" the asserted patent "barring a change in the law of the case." *WundaFormer*, 2015 WL 7181249, at *2. Here, the Court's summary judgement ruling and Plaintiffs' covenant not to sue likewise eliminate Fenix's immediate interest in the validity of the '078 Patent. That this case proceeded through summary judgment has further eliminated, not escalated, any actual controversy.

### B. Plaintiffs Pursued Colorable Infringement Claims After Claim Construction

Fenix characterizes the Court's claim construction ruling as case-dispositive and accuses Plaintiffs of thereafter proceeding with pointless discovery and motion practice. Opp 4. But the claim construction ruling did not render Plaintiffs' infringement claims frivolous. The claim constructions still needed to be applied to the facts and evidence of Fenix and Nouveau's manufacturing processes—facts and evidence which Plaintiffs moved expeditiously to discover and analyze. For example, the constructions of "single-crystal diamond," "growth surface," and "controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20°C" all had to be applied to a process in order to ascertain

infringement. This required at least (1) determining if the accused processes yielded "insubstantial non-monocrystalline growth" in all cases, (2) identifying the "growth surface" in Fenix and Nouveau's processes, and (3) assessing if Fenix and Nouveau could control temperature so "all temperature gradients across the growth surface are maintained at less than 20°C." Plaintiffs expeditiously gathered evidence under the Court's efficient schedule, and then turned to its experts to analyze that evidence under the Court's constructions, just as Fenix did. Meanwhile, Fenix itself pushed the litigation forward, noticing subpoenas to various third parties and expanding discovery. Fenix cannot cast Plaintiffs as belligerent litigants simply for developing the facts. Were Fenix serious about the argument that the Court's claim construction order was dispositive, Fenix would have moved for summary judgment on the day that Nouveau provided its declaration, or on the day that fact discovery closed.

Fenix cites no authority for the notion that a covenant not to sue can eliminate subject matter jurisdiction over invalidity counterclaims only if issued before a jury or court determination on infringement. Opp. 2–4. Although Fenix cites *Fort James* for this argument, as *supra*, that case related to a counterclaim of patent unenforceability that provided an alternative basis to uphold a jury verdict of non-infringement; Fenix provides no authority applying *Fort James* to the present circumstances. Nor does Fenix suggest that *WundaFormer* was wrongly decided. It was not, and this case presents even stronger reasons to conclude that no immediate controversy remains between the parties.

### C. Significant Resources Would Be Expended at Trial

The trial Fenix seeks will be complicated and require several days of court time. Fenix proffers "a short, focused trial on discrete issues under 35 U.S.C. §§ 101, 112," but then identifies at least four invalidity arguments it intends to try to the jury including patent ineligibility, non-

enablement, lack of written description, and indefiniteness. Opp. 7.[1] While Fenix today characterizes these issues as "discrete," its past actions reveal that these issues are far from simple to try. On these four issues, Fenix obtained discovery from at least two inventors (Russell Hemley and Yogesh Vohra), three technical 30(b)(6) witnesses for the Plaintiffs (Yarden Tsach, Michael Walter, Joseph Lai), and multiple third party witnesses (including the University of Alabama Birmingham and research librarian Jeffrey Graveline). Fenix has also produced and sought thousands of pages of documents bearing on these issues and has cited dozens of paragraphs from expert reports just to oppose the instant motion. *Id.* at 7–8.

Just last month, Fenix indicated to the Court that trial would take three to four days, an estimate Plaintiffs now fear is conservative given the issues Fenix has identified in briefing this motion. Fenix acknowledges that the subject matter will be technical and will require presentation of a full record on *e.g.* the capabilities of temperature sensors used in chemical vapor deposition. *Id.* at 7. Court and party resources should not be expended on these complex issues just to grant Fenix an academic victory.

### D.     Fenix Ignores the Scope of Plaintiffs' Covenant Not To Sue

Fenix asserts that Plaintiffs' covenant not to sue "adds nothing to the judgment." Opp. 1; *see also id.* at 4. But Fenix only compares the ***parties*** covered by the covenant and the summary judgement Order. *Id.* at 4–5. When comparing the full scope of the covenant and the summary judgement Order, the covenant is broader. Plaintiffs' covenant extends to future acts and covers all claims of the '078 Patent, while the Order covers only past acts and only the asserted claims of the '078 Patent.

---

[1] Plaintiffs note Fenix's use of the word "including," suggesting that it reserves the right to try even *more* than these four invalidity arguments.

Fenix also describes Plaintiffs' covenant as "conditional upon the judgment." Opp. 1. Not so. Plaintiffs have reserved the right to revisit the covenant *only* if a certain few of this Court's claim constructions are modified; no other change to this Court's judgement can affect Plaintiffs' binding promise. And, to repeat, Plaintiffs have not elected to appeal those claim constructions at this time.[2] Although Fenix lingers on the possibility of an appeal, a plaintiff's "reservation of its right to appeal [a] court's claim construction, and the accompanying specter that the Federal Circuit or the Supreme Court could vacate the noninfringement judgment," is *not* enough "to make a 'definite and concrete' dispute over the [asserted] patent." *Fox Grp., Inc. v. Cree, Inc.*, 819 F. Supp. 2d 520, 523 (E.D. Va. 2011) (citations omitted). To accept Fenix's position that the remaining possibility creates subject matter jurisdiction, "the court would have to find that its claim construction is likely erroneous, and, therefore, tacitly abandon that ruling." *Id.*

At bottom, because of its broader scope, the covenant eliminates the immediacy and reality of Fenix's invalidity counterclaim.

### E. Any Public Interest in Invalidity Challenges Cannot Overcome a Lack of Subject Matter Jurisdiction

To justify a needless trial, Fenix appeals to the "public importance" of validity issues and alleges that "Plaintiffs have cast a shadow over the entire lab-grown diamond industry," Opp. 1, and will "continue to use its patent *in terrorem* to steer would-be diamond purchasers away from the competition," *id.* at 5. Those accusations are unwarranted. Plaintiffs have exercised their patent rights appropriately, reaching settlements and licenses with a number of parties. But Plaintiffs have

---

[2] At least for this reason, Fenix's concerns regarding the Court's Section 101 Order (Opp. 5–6) are also misplaced.

neither threatened nor sued "the entire lab-grown industry."[3] Nor has anyone in that industry other than Fenix sought to invalidate Plaintiffs' patents at trial or at the Patent Office.

In the end, while Fenix may cast aspersions, it cannot overcome the lack of subject matter jurisdiction following the Courts' summary judgment Order and Plaintiffs' covenant not to sue. "Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case, and no amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1347–48 (Fed. Cir. 2010) (overturning denial of motion to dismiss based on "prudential reasons" that included the "important public interest in protecting the legal system against manipulation by parties . . . prone to involvement in repeat litigation" (citation omitted)); *see also Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, No. SACV 15-00246-CJC(JPRx), 2018 WL 1896310, at *6 (C.D. Cal. Mar. 28, 2018) ("[A] general public interest in adjudicating the merits of a legal claim or the protection of the legal system do not supply a controversy 'faced by the parties,' as required for an 'actual controversy' to exist.").

## III.    CONCLUSION

For these reasons and those in Plaintiffs' earlier memorandum of law, Plaintiffs respectfully request that the Court dismiss Fenix's counterclaim for invalidity of the Asserted Claims of the '078 Patent for lack of subject matter jurisdiction or, alternatively, in an exercise of the Court's discretion.

---

[3] Nor, to be clear, does Fenix's cited testimony say so. Tellingly, Fenix cites no evidence from anyone in the "industry" that Plaintiffs' patents have such an effect. Rather, Fenix relies on deposition testimony of M7D's CEO designated Highly Confidential under the case Protective Order (a designation Fenix never contested), and then accuses Plaintiffs in an email to the Court of "object[ing] to making certain information available to the public." That Fenix has no public evidence to support its "public importance" factors speaks for itself.

July 22, 2021

Respectfully submitted,

**PERKINS COIE LLP**

_/s/ Matthew J. Moffa_
Matthew J. Moffa
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 261-6857
Fax: (212) 399-8057
e-mail: MMoffa@perkinscoie.com

Terrence J. Wikberg (_admitted pro hac vice_)
Michael A. Chajon (_admitted pro hac vice_)
PERKINS COIE LLP
607 14th Street, NW
Washington, DC  20005
Telephone (202) 434-1649
Fax: (202) 654-9149
e-mail:  TWikberg@perkinscoie.com
                MChajon@perkinscoie.com

Amy E. Simpson (_admitted pro hac vice_)
Kevin Patariu
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-3334
Telephone: (858) 720-5702
Fax: (858) 720-5799
e-mail: ASimpson@perkinscoie.com
                KPatariu@perkinscoie.com

Michelle Umberger (_admitted pro hac vice_)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7466
Fax: (608) 663-7499
e-mail: MUmberger@perkinscoie.com

Sarah Fowler (_admitted pro hac vice_)
PERKINS COIE LLP

3150 Porter Drive
Palo Alto, CA 943041212
Telephone: (650) 838-4489
e-mail: SFowler@perkinscoie.com

*Counsel for Plaintiffs Carnegie Institution of
Washington and M7D Corporation*

# Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CARNEGIE INSTITUTION OF WASHINGTON :
and M7D CORP.,                      :
                                    :
        Plaintiffs,                 :
                                    :       20-cv-200 (JSR)
        -v-                         :
                                    :       OPINION
FENIX DIAMONDS, LLC,                :
                                    :
        Defendant.                  :
                                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     The Court here assumes the parties' familiarity with the facts
and prior proceedings of this case concerning two patents for
manufacturing diamonds in the laboratory. Carnegie Institution of
Washington ("Carnegie") and M7D Corporation ("M7D") — the assignee
and licensee, respectively, of the patents-in-suit — alleged that
Fenix Diamonds, LLC ("Fenix") infringed the patents by importing
and selling diamonds that were manufactured by non-party Nouveau
Diamonds LLP ("Nouveau") using the patented methods.

     In a June 16, 2021 opinion and order, the Court granted
summary judgment in favor of Fenix, finding Fenix did not infringe
either of Carnegie's patents in this case (the '189 and '078
patents, respectively), and entered judgment for Fenix on all of
Carnegie's claims. ECF No. 133. That left Fenix's counterclaims
under the Declaratory Judgment Act as to both the '189 and '078

1

patents, as well as Fenix's claim for attorney's fees under 35 U.S.C. § 285.

Regarding Fenix's counterclaim on the '189 patent, the Court found that it lacked subject matter jurisdiction because Carnegie had issued a covenant not to sue Fenix for present or future use as to any claim of the '189 patent. ECF No. 133 at 28–30. At the time of the Court's summary judgment opinion, there was no covenant not to sue as to the claims of the '078 patent. Shortly after the Court's summary judgment opinion issued, however, Carnegie issued a covenant not to sue Fenix, Nouveau, or Fenix's subsidiaries for present or future use as to any of the claims of the '078 patent. ECF No. 136, Ex. 2.

Now before the Court is plaintiffs' motion to dismiss Fenix's remaining counterclaim as to the '078 patent for lack of subject matter jurisdiction. ECF No. 134. By bottom-line order dated July 29, 2021, the Court granted plaintiffs' motion. ECF No. 140. This opinion sets forth the reasons for that order.

For the reasons that follow, the Court finds that it lacks subject matter jurisdiction over Fenix's counterclaim for invalidity of the '078 patent based on Carnegie's covenant not to sue as to all present and future uses on any claim of the '078 patent.

2

## LEGAL STANDARD

The Declaratory Judgment Act authorizes federal courts to declare "the rights and other legal relations of any interested party seeking such declaration" in cases "of actual controversy." 28 U.S.C. § 2201(a). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). "A case becomes moot — and therefore no longer a Case or Controversy for purposes of Article III — when the issues presented are no longer live or the parties lack a legally recognizable interest in the outcome." ArcelorMittal v. AK Steel Corp., 856 F.3d 1365, 1370 (Fed. Cir. 2017) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed." Id. at 1345 (quoting Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974)).

3

## ANALYSIS

Carnegie and M7D contend that this Court does not have subject matter jurisdiction to adjudicate Fenix's counterclaim for invalidity of the '078 patent because there is no longer an "actual controversy" for purposes of the Declaratory Judgment Act. Plaintiffs point to their covenant not to sue Fenix, Nouveau, or Fenix's subsidiaries for infringement of any claim of the '078 patent with respect to "previous or current or future . . . products manufactured by Nouveau's manufacturing process." Moffa Decl., ECF No. 136, Ex. 2; ECF No. 135 at 11. Because the covenant is explicitly conditioned upon this Court's constructions of the '078 patent claims remaining the law, Moffa Decl. Ex. 2, Carnegie and M7D argue that Fenix has a legal interest in its invalidity counterclaim only in the event that this Court's summary judgment order is appealed and the Federal Circuit reverses this Court's claim constructions.[1] ECF No. 135 at 11-12. Carnegie and M7D maintain that such a remote future possibility is insufficiently immediate or real under the MedImmune standard to warrant the issuance of a declaratory judgment. Id. at 12-13. The Court agrees.

Fenix makes two main arguments in opposition. First, Fenix argues that Carnegie and M7D's covenant not to sue cannot divest

---

[1]    Carnegie and M7D note that they have not yet filed an appeal. ECF No. 135 at 12.

this Court of subject matter jurisdiction because the covenant was issued <u>after</u> the Court's summary judgment order finding that Fenix did not infringe the '078 patent. ECF No. 137 at 2-4. Second, Fenix argues that because Carnegie and M7D's covenant not to sue is contingent on the Court's claim constructions remaining law, the covenant is insufficient to divest the Court of subject matter jurisdiction. <u>Id.</u> Neither argument is availing.

As for Fenix's first argument, the timing of the covenant not to sue — issued after the Court's opinion granting summary judgment in favor of Fenix and finding noninfringement on both patents at issue in this case — is not determinative of the Court's subject matter jurisdiction. Fenix's reliance on <u>Fort James Corp. v. Solo Cup Co.</u> to this effect is misplaced. 412 F.3d 1340, 1348-49 (Fed. Cir. 2005). In <u>Fort James</u>, the court found the Court still had subject matter jurisdiction over the enforceability of the patent at issue, which had been bifurcated prior to trial, even after a jury verdict resolved the issue of non-infringement. <u>Id.</u> The court's holding was not, as Fenix would have it, based on timing. Instead, <u>Fort James</u> makes clear that issues of patent enforceability are distinct from infringement, and that a covenant not to sue — depending on its scope — <u>may</u> extinguish questions of infringement, but <u>does not automatically</u> extinguish questions of validity or

5

enforceability. 412 F.3d at 1348–49. As discussed below, the scope of the covenant at issue here does, in fact, extinguish any "actual controversy."

As for Fenix's second argument, the terms of Carnegie and M7D's covenant not to sue on any of the claims of the '78 patent do not make the covenant conditional such that the Court would retain subject matter jurisdiction. It is true that unconditional and conditional covenants are treated differently in analyzing whether there is an "actual controversy" for purposes of determining whether the Court has subject matter jurisdiction under the Declaratory Judgment Act. Only if a covenant not to sue obviates any viable claim the plaintiff would otherwise have against the defendant is there no "actual controversy" and the court lacks subject matter jurisdiction under the Declaratory Judgment Act. See Benitec, 495 F.3d at 1344. Fenix is not, however, correct in reading the covenant at issue here as conditional such that there remains an actual controversy giving the Court continued subject matter jurisdiction.

Take the very case Fenix cites — Wundaformer, LLC v. Flex Studios, Inc., No. 15-cv-4802, 2015 WL 7181249, at *1 (S.D.N.Y. Nov. 9, 2015). ECF No. 137 at 2. In Wundaformer this Court considered a covenant essentially identical to the one at issue here and ultimately held that the covenant extinguished any actual controversy because it was not sufficiently real or immediate.

6

2015 WL 7181249, at *2. The contingency and scope of the covenant at issue in Wundaformer was identical to Carnegie's covenant here as to the '078 patent — the covenant not to sue is conditioned on the court's claim constructions remaining the law, and covered any claim of the patent, not just the asserted claims. In fact, Carnegie's covenant covers more than the one at issue in Wundaformer, including both present and future uses.

While Wundaformer involved a joint stipulation of noninfringement rather than a summary judgment order finding noninfringement, this makes no difference for analyzing the Court's subject matter jurisdiction over an invalidity counterclaim where there is a covenant not to sue. The nominal condition rests on the speculative and distant possibility that the defendants will appeal the court's claim constructions and persuade the Federal Circuit to adopt different claim constructions, which does not render the controversy of "sufficient immediacy" to give the court subject matter jurisdiction under the Declaratory Judgment Act. See Wundaformer, 2015 WL 7181249, at *5 ("While defendants might gain such an interest [to justify jurisdiction under the DJA] if plaintiff both appeals the Court's Markman Order and persuades the Federal Circuit of what it could not persuade this Court, there is no certainty that plaintiff will even take an appeal . . . . A controversy this

speculative simply cannot be considered to have the 'sufficient immediacy' needed to invoke the Declaratory Judgment Act.").

Because Carnegie and M7D's covenant not to sue, in combination with the Court's finding of noninfringement in granting summary judgment in favor of Fenix, precludes any liability apart from a hypothetical appeal and reversal of this Court's claim constructions, there is no actual controversy for purposes of the Declaratory Judgment Act. As such, this Court does not have subject matter jurisdiction over Fenix's counterclaim as to the '078 patent. Fenix's claim for attorney's fees pursuant to 35 U.S.C. § 287 remains.

## CONCLUSION

For the reasons above, the Court held by bottom-line order on July 29, 2021 that Carnegie and M7D's motion to dismiss is granted. ECF No. 140.

Dated:    New York, NY
Aug 7, 2021

JED S. RAKOFF, U.S.D.J.

# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CARNEGIE INSTITUTION OF WASHINGTON :
and M7D CORP.,                      :
                                    :
        Plaintiffs,                 :
                                    :    20-cv-200 (JSR)
        -v-                         :
                                    :    FINAL JUDGMENT
FENIX DIAMONDS, LLC,                :
                                    :
        Defendant.                  :
                                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     Final judgment is hereby entered in this case, as the parties'
remaining claims and counterclaims have been dismissed. See ECF
Nos. 133, 140, 141. The schedule for briefing Fenix's remaining
motion for attorney's fees is set as follows: opening brief to be
filed by August 30, 2021, opposition brief by September 20, 2021,
and reply brief by October 4, 2021.

     SO ORDERED.

Dated:    New York, NY
          Aug 13, 2021          _____
                                JED S. RAKOFF, U.S.D.J.

1

# Exhibit 8

| 06/23/2021 | | Minute Entry for proceedings held before Judge Jed S. Rakoff: Telephone Conference held on 6/23/2021, ( Jury Trial set for 12/13/2021 at 09:30 AM before Judge Jed S. Rakoff.)Briefing schedule set for motion to dismiss: initial papers due July 1; answering papers due July 15; reply due July 22. No oral argument.. (Kotowski, Linda) (Entered: 06/24/2021) |

# Exhibit 9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

CARNEGIE INSTITUTION OF WASHINGTON,

M7D CORPORATION,

     *Plaintiffs*,

v.

FENIX DIAMONDS LLC,

     *Defendant.*

</td><td>

Civil Action No. 1:20-cv-00200-JSR

</td></tr>
</table>

## PLAINTIFFS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

NOTICE IS GIVEN that Plaintiffs Carnegie Institution of Washington and M7D Corporation appeal to the United States Court of Appeals for the Federal Circuit from the Final Judgment entered in this action on August 13, 2021 (ECF No. 142) and from any and all other orders, decisions, rulings, findings, and conclusions underlying and related to that judgment, including but not limited to the June 16, 2021 Opinion and Order granting Defendant Fenix Diamonds LLC's motion for partial summary judgment of non-infringement (ECF No. 133) and the May 8, 2020 Opinion and Order regarding, in part, claim construction (ECF No. 42).

The docketing fee of $500 required by 28 U.S.C. § 1913, and the Notice of Appeal fee of $5 required by 28 U.S.C. § 1917, totaling $505, are being submitted herewith.

August 24, 2021

Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Matthew J. Moffa*
Matthew J. Moffa
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Telephone: (212) 261-6857
Fax: (212) 399-8057
e-mail: MMoffa@perkinscoie.com

Terrence J. Wikberg (*admitted pro hac vice*)
Michael A. Chajon (*admitted pro hac vice*)
PERKINS COIE LLP
700 Thirteenth Street, NW, Suite 800
Washington, DC 20005
Telephone (202) 654-6200
Fax: (202) 654-9149
e-mail: TWikberg@perkinscoie.com
        MChajon@perkinscoie.com

Amy E. Simpson (*admitted pro hac vice*)
Kevin Patariu
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
Telephone: (858) 720-5702
Fax: (858) 720-5799
e-mail: ASimpson@perkinscoie.com
        KPatariu@perkinscoie.com

Michelle M. (Umberger) Kemp (*admitted pro hac vice*)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7466
Fax: (608) 663-7499
e-mail: MUmberger@perkinscoie.com

Sarah Fowler (*admitted pro hac vice*)
PERKINS COIE LLP

2

3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4489
e-mail: SFowler@perkinscoie.com

*Counsel for Plaintiffs Carnegie Institution of
Washington and M7D Corporation*