UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARNEGIE INSTITUTION OF WASHINGTON, and M7D CORPORATION,<br><br>        Plaintiffs,<br><br>  -against-<br><br>FENIX DIAMONDS LLC,<br><br>        Defendant. | 20-cv-0200 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

    Plaintiffs Carnegie Institution of Washington ("Carnegie") and M7D Corporation ("M7D") brought this patent infringement action against defendant Fenix Diamonds LLC ("Fenix") regarding methods for producing laboratory-formed diamonds. The Court granted summary judgment for Fenix because there was no genuine dispute that Fenix did not infringe either of the two patents at issue. After plaintiffs executed a binding covenant not to sue, the Court denied as moot Fenix's counterclaims for invalidity. Plaintiffs initiated an appeal, but withdrew it as appellate briefing was underway. Fenix now seeks attorneys' fees under 35 U.S.C. § 285 and asks the Court to exercise its "inherent power" to award non-taxable expenses because of the objective unreasonableness of plaintiffs' claims and plaintiffs' vexatious litigation conduct. The Court hereby grants Fenix's motion.

    I.    Factual and Procedural Background

On January 9, 2020, plaintiffs filed this suit accusing Fenix of infringing two patents -- of which Carnegie was assignee and M7D was licensee -- for methods of producing high-clarity diamonds in a laboratory. See ECF No. 1. On May 8, 2020, after full briefing and oral argument, the Court denied Fenix's motion to dismiss and resolved various claim construction disputes regarding the meaning of the two patents. ECF No. 42. The first patent -- U.S. Patent No. 6,858,078 ("the '078 Patent") -- "describes a method for improving upon earlier production techniques" for laboratory-produced diamonds through what is called microwave plasma chemical vapor deposition ("MPCVD") "to overcome a limitation inherent in those methods." Id. at 4. "The '078 Patent . . . improve[s] upon the prior art by describing a method for producing single crystal MPCVD diamond at a higher growth rate" than prior art. Id. "[T]his result is achieved by creating temperature and pressure conditions that fall within particular ranges and -- importantly -- by controlling the temperature gradients across the growth surface of the diamond seed such that they are less than 20°C." Id. The second patent -- U.S. Patent No. RE41,189 ("the '189 Patent") -- "describes a method for repairing visual and other defects, such as impurities and structural flaws, in lab-grown diamonds." Id. at 4-5. "The claimed method involves encapsulating the diamond in an outer body, typically of graphite, and 'annealing' it, i.e.,

applying very high temperatures and pressures within specific ranges." Id. at 5.

Key to the litigation was the Court's construction of the phrase, "the growth surface," in two claims at issue in the '078 Patent. Plaintiffs urged a narrow interpretation, restricted to "the diamond seed surface or diamond surface that is closest to the plasma, upon which single-crystal growth primarily occurs as the diamond grows." Id. at 18. The Court instead adopted Fenix's construction -- "the surface upon which diamond growth is occurring" -- as more faithful to the patent's text. Id. at 18-20. The Court explained that "[p]laintiffs' proposed construction . . . would wrongly restrict the term to include only surface area where single-crystal diamond is growing." Id. at 19 (emphasis added). But "[t]he Patent notes that, even where its method of growing single-crystal diamond is followed, small amounts of polycrystalline diamond will nonetheless grow in localized places on the diamond." Id. "[S]uch areas should still be included within the definition of 'growth surface,'" the Court concluded, because a skilled artisan in the field would understand the term to include both single-crystal and "polycrystalline growth." Id. at 19-20.

Framed by the claim constructions, the Court entered summary judgment of non-infringement for Fenix on June 16, 2021. ECF No. 133 ("Summary Judgment Op."). To show infringement of the '078 Patent, plaintiffs would have needed to demonstrate that Fenix's

- 3 -

manufacturer, Nouveau, somehow prevented "the formation of twins or polycrystalline diamond along the edges of the growth surface of the diamond." Id. at 14. But "plaintiff's own expert," Dr. Capano, "concede[d] that Nouveau's diamond blocks contain 'non-diamond or graphitized polycrystalline diamond,' which 'is something different than the single-crystal diamond.'" Id. at 15. Indeed, plaintiffs offered no evidence "from which a reasonable factfinder could conclude that Nouveau grows single-crystal diamond on the growth surface." Id. at 17. Plaintiffs' expert Dr. Capano in fact further conceded that "it would be impossible to grow single crystal material via MPCVD because polycrystalline growth on the edges . . . during MPCVD is inevitable." Id. at 18. Dr. Capano acknowledged that "no MPCVD diamond process could ever infringe because of a necessary byproduct," namely, polycrystalline growth. Id.

At the same time, other aspects of Dr. Capano's analysis were premised on a plain flouting of the Court's construction of the term "growth surface," which the Court had held "must . . . not exclude polycrystalline growth." Id. (quoting ECF No. 42, at 20); see id. (quoting Dr. Capano's report, which stated, "I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the periphery of the single crystal diamond."); id. at 20 (quoting Dr. Capano's report, which stated, "In my opinion, the growth surface is the region where

single-crystal diamond grows . . . and does not include the surrounding areas.").

The Court also held that another, independent reason entitled Fenix to summary judgment of non-infringement on the '078 Patent: "[P]laintiffs point[ed] to no evidence from which a reasonable factfinder could conclude that Nouveau does, in fact, maintain gradients that do not exceed 20°C during growth"; indeed, "Nouveau does not even measure temperature gradients during diamond growth." Id. at 27-28. Similarly, the Court granted summary judgment of non-infringement on the '189 Patent because plaintiffs offered "no evidence" to support those claims. Id. at 31. Indeed, plaintiffs had already given up the ghost on those claims, going so far as making a belated "oral motion to dismiss [the] claims relating to the '189 Patent" at the summary judgment argument. Id.

Because plaintiffs eventually executed a binding covenant not to sue regarding both patents, the Court dismissed as moot Fenix's counterclaims for invalidity. Id. at 30; see ECF No. 141. Plaintiffs filed a timely notice of appeal on August 24, 2021. ECF No. 144. But plaintiffs withdrew the appeal after briefing before the Federal Circuit had begun. ECF No. 148.

On September 21, 2023, Fenix moved for attorneys' fees and other non-taxable expenses. ECF No. 161 ("Mem.").[1] Carnegie filed

---

[1] Fenix also filed a bill of taxable costs. ECF No. 173. Although Carnegie initially intended to file objections to that bill of

an opposition on November 3, 2023, ECF No. 178 ("Opp."), and Fenix filed a reply on November 10, 2023, ECF No. 182 ("Reply").[2]

II. Legal Background

A. Attorneys' Fees Under 35 U.S.C. § 285

"Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 548 (2014). "It provides, in its entirety, that '[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.'" Id. (quoting 35 U.S.C. § 285). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 554. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. "[T]here is no precise rule or formula for making these determinations, but instead equitable discretion

---

costs, the parties resolved their differences and submitted a stipulation of taxable costs to Fenix, which the Court endorsed on November 13, 2023. ECF No. 185.

[2] M7D is undergoing bankruptcy and has ceased operations; it did not file any opposition to Fenix's motion. The delay before Carnegie filed its opposition to the motion occurred because Carnegie substituted its counsel.

should be exercised in light of the considerations" the Supreme Court has "identified." Id.³ Such considerations include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 n.6.

"[S]anctionable conduct is not the appropriate benchmark." Id. at 555. "[A] district court may award fees in the rare case in which a party's unreasonable conduct -- while not necessarily independently sanctionable -- is nonetheless so 'exceptional' as to justify an award of fees." Id. As such, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Id.

### B. The Court's Inherent Power to Award Attorneys' Fees and Non-Taxable Costs

"[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). For instance, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45-46. "In this regard, if a court finds that fraud has been

---

³ Here and elsewhere, all internal alterations, citations, and quotation marks have been omitted unless otherwise indicated.

practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." Id. at 46. "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Id. at 50. "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal] Rules [of Civil Procedure], the court should ordinarily rely on the Rules rather than the inherent power." Id. "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id.

In addition to attorneys' fees, "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008). "The use of this inherent power is reserved for cases with a finding of fraud or abuse of the judicial process," which can include "bad faith and vexatious litigation conduct." Id.

III. Analysis

The Court grants Fenix's motion for attorneys' fees for work performed after July 14, 2020, one month after Fenix's production

from its manufacturer, Nouveau, that made clear that plaintiffs' litigating position was objectively unreasonable. The Court also grants Fenix's request for non-taxable expenses, including expert fees, because plaintiffs' filings both in this Court and the Federal Circuit were affirmatively misleading about the parties' discovery conduct. Similarly, plaintiffs' counsel acted vexatiously in waiting until the eleventh hour to drop the claims of infringement on the '189 Patent, forcing Fenix to incur unnecessary additional expenses.

This case is "exceptional," first and foremost, because of the substantive weakness of plaintiffs' arguments for infringement. This is clear from the Court's Opinion and Order granting summary judgment for Fenix of non-infringement. As the Court explained, plaintiffs continued to rely on a theory of infringement of the '078 Patent -- advanced by their expert, Dr. Capano -- that was flatly at odds with the Court's claim construction. While the Court had held that "[t]he construction of the term 'growth surface' must . . . not exclude polycrystalline growth," Dr. Capano's report stated, "I do not interpret growth surface to include the non-diamond or polycrystalline diamond that grows at the periphery of the single crystal diamond." Summary Judgment Op. at 19. To give another example, while the Court was clear that "[p]laintiffs' proposed construction . . . would wrongly restrict growth surface to include only surface area where

single-crystal diamond is growing," Dr. Capano's report conversely stated that "the growth surface is the region where single-crystal diamond grows . . . and does not include the surrounding areas." Id. at 20. As the Court pointed out in its Opinion and Order, plaintiffs' opposition to Fenix's motion for summary judgment was in actuality a "disguised motion for reconsideration, which identifie[d] no legal or factual basis for departing from the law of the case." Id.; see id. ("[P]laintiffs' argument is premised not on a factual dispute but on a disagreement with the Court's claim construction.").

When it came to the '189 Patent, plaintiffs made no effort whatsoever to support any claim of infringement in opposing Fenix's motion for summary judgment. See ECF No. 114, at 19. In apparent recognition that any such effort would have been meritless, plaintiffs' counsel, at the summary judgment argument, orally moved "to dismiss [the] claims relating to the '189 Patent." Summary Judgment Op. at 31. Indeed, plaintiffs never even served an expert report on infringement of the '189 Patent, and, a week before the summary judgment argument, plaintiffs granted Fenix a covenant not to sue on the '189 Patent. See id.; Mem. at 7. Rather than dismiss the '189 Patent infringement claims at an earlier stage, when it was apparent that plaintiffs would not be pursuing them, plaintiffs' delay forced Fenix to incur the expense of time and resources to commission its own expert reports of non-

- 10 -

infringement and to move for summary judgment of non-infringement on the '189 Patent. Mem. at 7. The Court granted Fenix's motion for summary judgment because plaintiffs provided "no evidence" of such infringement. Summary Judgment Op. at 31.

The record reflects that Fenix's counsel repeatedly informed plaintiffs' counsel that there was no reasonable argument for infringement. On March 26, 2020 -- shortly after plaintiffs filed an amended complaint -- Fenix's counsel represented in a letter to plaintiffs' counsel that Fenix could not have infringed the '078 Patent because its "process does not involve controlling temperature based on temperature gradients on the growth surface of the diamond" and "cannot possibly infringe the asserted claims of the '189 patent" because "any pressure in the process is an order of magnitude below 4.0 GPa." ECF No. 183-6, at 2-3. That same letter put plaintiffs' counsel on notice that "[i]f Plaintiffs nonetheless continue with this meritless action, Fenix will seek both a determination that this case is exceptional under 35 U.S.C. § 285 and an award of all costs and attorneys' fees." Id. at 3.

On July 15, 2020, while discovery was in swing after the Court's claim construction order, Fenix's counsel reminded plaintiffs' counsel that Fenix's manufacturer, Nouveau, "has provided extensive information about its manufacturing process used to produce CVD diamonds that are supplied to Fenix." Id. at 4. Yet plaintiffs had not supplemented their allegations of

infringement, as required by Local Patent Rule 9, even though plaintiffs' previous Local Patent Rule 6 Disclosure "only vaguely refer[red] to processes used to make CVD diamonds" without "identify[ing] the allegedly infringing processes at issue." Id. at 2, 4. Plaintiffs refused to provide any supplementation of their infringement contentions in advance of their opening expert reports, requiring Fenix to retain its own experts without any real information about what plaintiffs intended to argue. Id. at 9.

The Court thus grants attorneys' fees to Fenix, subject to a later review for reasonableness, for work performed after July 14, 2020, one month after Fenix sent plaintiffs the production from its manufacturer Nouveau that clearly demonstrated non-infringement.[4] The production included several photographs of Nouveau's diamonds during the production process. See ECF No. 164-6 ("Nouveau Prod."), at 13-17. As the Court noted in its Opinion and Order granting summary judgment to Fenix, "one can plainly see that the non-monocrystalline growth is extensive," meaning that the production method could not infringe the '078 Patent. Summary Judgment Op. at 19. Plaintiffs put forth no evidence whatsoever that contradicted those images or otherwise demonstrated infringement. See id. ("[P]laintiffs offer no basis for a

---

[4] The one-month grace period is to accommodate time that it may have taken for plaintiffs to assess the production.

reasonable factfinder to conclude that Nouveau's non-monocrystalline growth is insubstantial.").

The objective baselessness of plaintiffs' suit is itself sufficient to support a finding of exceptionality under 35 U.S.C. § 285. In AdjustaCam, LLC v. Newegg, Inc., 861 F.3d 1353 (Fed. Cir. 2017), the Federal Circuit reversed a district court's denial of attorneys' fees under Section 285 because "the evidence proffered by [the plaintiff] showed that [the plaintiff]'s lawsuit was baseless." Id. at 1360. Much like the plaintiff in that case, plaintiffs here "did not introduce any evidence" that supported infringement. Id. at 1361. Here as in AdjustaCam, "[n]o reasonable factfinder could conclude that [defendant]'s products infringe; therefore, [plaintiffs'] litigation position was baseless." Id. "These are traits of an exceptional case." Id.; see also Blackbird Tech LLC v. Health In Motion LLC, 944 F.3d 910, 914 (Fed. Cir. 2019) (affirming award of attorneys' fees under Section 285 where plaintiff's "litigation position was meritless and frivolous").

The Court likewise grants, under its inherent power, Fenix's request for non-taxable expenses because plaintiffs affirmatively misled the Court about their efforts to obtain evidence.[5] In

---

[5] The case that Fenix relies on to support the Court's authority to order payment of such expenses, Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc., 549 F.3d 1381 (Fed. Cir. 2008), refers only to "reasonable expert fees," rather than, as Fenix requests, to any category of non-taxable expenses. Id. at 1391. However, because Carnegie's opposition does not question that the

opposing Fenix's motion for summary judgment, plaintiffs contended that they "were given no access to the information needed to fully assess [Nouveau's] productions" and were not given "access to Nouveau's manufacturing facilities." ECF No. 108, at 4. But, in reality, plaintiffs' counsel "decline[d] Nouveau's offer of inspection" before the close of discovery in exchange for remote depositions of Nouveau witnesses. ECF No. 162-17 (September 11, 2020 letter from plaintiffs' counsel to Fenix's counsel). Compounding the deception, plaintiffs maintained their misleading posture in their opening appellate brief before the Federal Circuit. "Despite extensive efforts," plaintiffs' counsel told the Federal Circuit, "Plaintiffs were unable to inspect Nouveau's manufacturing plant to witness and assess Nouveau's manufacturing process in person." ECF No. 162-22, at 12. Yet plaintiffs' Federal Circuit brief made no mention of the fact that Nouveau had offered its facility for plaintiffs' inspection and plaintiffs' counsel declined the offer. See ECF No. 162-17. In addition to demonstrating bad faith, these misleading representations evidence that plaintiffs "litigated the case in an unreasonable manner,"

---

Court possesses such authority, see Opp. at 24, the Court proceeds on the undisputed understanding that its inherent power to award attorneys' fees for vexatious litigation conduct includes the ability to award non-taxable expenses.

- 14 -

which is "another reason why this case is exceptional." AdjustaCam, 861 F.3d at 1361.[6]

Additional aspects of plaintiffs' conduct confirm the finding that this is an exceptional case in which plaintiffs acted vexatiously. In particular, the owner of plaintiff M7D gave a presentation to lenders that was wholly at odds with the notion that the '078 Patent was valid. The presentation stated that "Carnegie's patents . . . do not disclose the necessary detail . . . needed to grow high quality diamonds." ECF No. 164-3, at 4. Contrast that with the following statement that plaintiffs' counsel made in their opposition to summary judgment, which contends the opposite: "The '078 patent discloses a way to grow high-quality, single-crystal diamonds by enabling control over growth surface temperatures and growth surface temperature gradients." ECF No. 108, at 3. Take another remark from the M7D lender presentation: "Most importantly, the ['078] Patent does not provide detail around the process and equipment necessary to work within the parameters described in the patent for commercially

---

[6] In considering whether to award non-taxable expenses, the Court is mindful that it "should ordinarily rely on the [Federal] Rules [of Civil Procedure] rather than the inherent power." Chambers, 501 U.S. at 50. But here, "neither the statute," 35 U.S.C. § 285, "nor the Rules are up to the task" of sanctioning plaintiffs' misrepresentations. Id. Section 285 authorizes only "attorney fees," not other expenses. And Federal Rule of Civil Procedure 37, the relevant rule for discovery sanctions, does not specifically cover a misrepresentation to the Court.

viable production." ECF No. 164-3, at 4. One of plaintiffs' own experts said the exact opposite in her report: "[T]he inventors of the '078 Patent discovered how to grow large, high-quality, single crystal diamonds in a way that would make commercial production viable." ECF No. 164-2, ¶ 69. Over the course of discovery, plaintiffs claimed privilege without basis and firmly resisted producing unredacted slides from the lender presentation -- doing so only after the Court compelled their production. See ECF No. 91.[7]

The Court rejects Carnegie's assertion that any award of attorneys' fees and expenses should be payable only by its co-plaintiff, M7D, which has ceased operations and is undergoing bankruptcy, rather than be imposed jointly and severally. Carnegie contends that "[a]ll of the purported misconduct identified by Fenix's motion is specific to M7D and none relates to Carnegie Science." Opp. at 25. But the case that Carnegie relies on for this argument, Evident Corp. v. Church & Dwight Co., 399 F.3d 1310 (Fed. Cir. 2005), hurts rather than helps its position. In Evident, the Federal Circuit affirmed the district court's decision to hold plaintiffs jointly and severally accountable for attorneys' fees that the court imposed under Section 285. Id. at 1315-17. The

---

[7] M7D was also baselessly suggesting to would-be customers "that it was impossible to manufacture lab-grown diamonds without infringing" the '078 Patent. ECF No. 162-24 (deposition testimony of Susanne Rechner, M7D's CEO), at 149:8-22.

Federal Circuit identified several factors supporting that decision, one of which was that the plaintiffs had a "close, intertwined relationship." Id. at 1316.

Carnegie acknowledges that it had a license agreement with M7D, under which M7D was to pay "Carnegie Science 10% of any net recovery" from a patent infringement suit. Opp. at 24. The other relevant factors even more strongly support a joint and several award. Carnegie "was a party to the litigation . . . from the beginning." Evident, 399 F.3d at 1316. And there was never "a clear division between the arguments presented only by [Carnegie] and those presented by [M7D]." Id. In fact, there was no such separation of arguments; the two plaintiffs shared the same counsel and, at each step of the litigation, filed joint submissions. Carnegie contends that its license agreement with M7D "granted control of patent enforcement litigation decisions to M7D and obligated Carnegie Science to cooperate." Opp. at 24. That simply means that Carnegie assumed the risk of -- and, in fact, affirmatively agreed to join in -- any improper litigation tactics by M7D.

IV. Conclusion

For the reasons explained above, the Court grants Fenix's motion for attorneys' fees and non-taxable expenses for work performed after July 14, 2020. Within one week of the date of this Opinion and Order, Fenix must submit a supplemental filing that

itemizes its requested fees and expenses, which the Court will then assess for reasonableness. The Clerk is respectfully directed to close document number 160 on the docket.

    SO ORDERED.

New York, NY
February 21, 2024

                                                JED S. RAKOFF, U.S.D.J.