# EXHIBIT CC

HIGHLY CONFIDENTIAL
Transcript of Erin Herrera
Conducted on August 4, 2020

1 (1 to 4)

```
                                    1
 1        UNITED STATES DISTRICT COURT
 2     FOR THE SOUTHERN DISTRICT OF NEW YORK
 3  --------------------------------X
 4  CARNEGIE INSTITUTION OF         :
 5  WASHINGTON, M7D CORPORATION     :
 6            Plaintiffs,  :
 7        v.               :Civil Action No:
 8                         :1:20-CV-00200JSR
 9  FENIX DIAMONDS LLC,             :
10            Defendant.   :
11  --------------------------------X
12
13           HIGHLY CONFIDENTIAL
14         DEPOSITION OF ERIN HERRERA
15   APPEARING REMOTELY FROM GLENDORA, CALIFORNIA
16           TUESDAY, AUGUST 4, 2020
17                12:00 P.M.
18
19
20
21  Job No.: 312088
22  Pages 1 - 163
23  Reported by: Adrienne Mignano, RPR
24  Appearing remotely from
25  Suffolk County, New York
```

```
                                    2
 1        Deposition of ERIN HERRERA, held via Zoom
 2  videoconferencing, Pursuant to Notice, before Adrienne
 3  M. Mignano, a Registered Professional Reporter and a
 4  Notary Public in and for the State of New York.
```

```
                                    3
 1              A P P E A R A N C E S
 2
 3  ON BEHALF OF PLAINTIFFS:
 4      MICHELLE UMBERGER, ESQUIRE
 5      PERKINS COIE LLP
 6      33 East Main Street
 7      Suite 201
 8      Madison, Wisconsin 53703
 9      (608) 663-7466
10
11  ON BEHALF OF DEFENDANTS
12      NICOLE KOPINSKI, ESQUIRE
13      MICHAEL SCHUBERT, ESQUIRE
14      LEYDIG, VOIT & MAYER
15      Two Prudential Plaza
16      180 North Stetson Avenue
17      Suite 4900
18      Chicago, Illinois 60601
19      (312) 616-5600
20
21
22  ALSO PRESENT:
23      GABRIEL BINA, ESQ. - Perkins Coie
24      ARMANDO FORTE - Videographer
25      RYAN GRZELAK - Remote Tech
```

```
                                    4
 1              C O N T E N T S
 2
 3  EXAMINATION OF ERIN HERRERA              PAGE
 4  BY MS. UMBERGER                           6
 5
 6
 7              E X H I B I T S
 8          (Attached to the Transcript)
 9  HERRERA DEPOSITION EXHIBIT               PAGE
10  Exhibit 1   Printout from website         50
11  Exhibit 2   E-mail string                 53
12  Exhibit 3   E-mail string                 69
13  Exhibit 4   E-mail                        74
14  Exhibit 5   E-mail                        79
15  Exhibit 6   Attachment to E-mail          82
16  Exhibit 7   Three-page e-mail string      94
17  Exhibit 8   Attachment to E-mail          95
18  Exhibit 9   E-mail                        112
19  Exhibit 10  E-mail chain                  121
20  Exhibit 11  Attachment to E-mail          122
21  Exhibit 12  E-mail chain                  130
22  Exhibit 13  E-mail                        133
23  Exhibit 14  Attachment to E-mail          133
```

**Page 5**

1  THE VIDEOGRAPHER: We're now on the
2  record. The following is a videotaped deposition.
3  Here begins Tape Number 1 in the videotaped
4  deposition of Erin Herrera. It's taken in the
5  matter of Carnegie Institution of Washington and
6  M7D Corporation versus Fenix Diamonds LLC.
7  Today's date is August 4, 2020. The
8  time on the video monitor is 12:03 p.m. My name
9  is Armando Forte. I'm the videographer
10  representing Planet Depos. All parties are
11  attending this deposition remotely. Will counsel
12  please identify themselves and who they represent.
13  Ms. Umberger.
14  MS. UMBERGER: This is Michelle
15  Umberger, and I represent the Carnegie Institute
16  of Washington and M7D Corporation.
17  THE VIDEOGRAPHER: Ms. Kopinski.
18  MS. KOPINSKI: Nicole Kopinski, and I
19  represent Ms. Erin Herrera subject to her
20  subpoena, and with me is Mike Schubert, from
21  Leydig, Voit & Mayer, Limited.
22  THE VIDEOGRAPHER: Our court reporter
23  for today is Adrienne Mignano, representing Planet
24  Depos, she will now swear in the witness, or
25  affirm, and we will proceed.

**Page 6**

1  Whereupon,
2  ERIN HERRERA,
3  being first duly sworn or affirmed to testify to
4  the truth, the whole truth, and nothing but the
5  truth, was examined and testified as follows:
6  EXAMINATION BY COUNSEL FOR THE PLAINTIFF
7  EXAMINATION BY
8  MS. UMBERGER:
9  Q  Good morning, Ms. Herrera. My name is
10  Michelle Umberger and, as I said, I represent M7D
11  and the Carnegie Institute of Washington in this
12  matter.
13  Have you ever had your deposition taken
14  before?
15  **A  I have not. And good morning.**
16  Q  Good morning. Were you -- are you
17  being represented by counsel today?
18  **A  Yes, I am.**
19  Q  And that is Ms. Kopinski; is that
20  correct?
21  **A  Yes.**
22  Q  I'm going to go over a couple of ground
23  rules for the deposition that will just hopefully
24  make it easier on everyone, including the court
25  reporter, and everyone else we have on the line

**Page 7**

1  today. And your counsel may have gone over this,
2  but let's first try not to talk over each other.
3  So I will try to make it clear when I finish my
4  question and give you the opportunity to fully
5  answer before I ask another question.
6  If you don't understand a question that
7  I ask, please ask me to restate it or let me know.
8  If you respond to a question that I ask, I will
9  assume you understood the question as it was
10  asked. But sometimes I really mess up and it's a
11  very confusing question, and I'm happy to restate
12  if you don't understand the question.
13  Also, you know that you're under oath
14  today; is that correct?
15  **A  Yes.**
16  Q  And you are here to tell the truth,
17  just as if you were in a court of law?
18  **A  Yes.**
19  Q  And is there any reason you cannot
20  testify truthfully and accurately today, such as
21  are you on any medication or have any illnesses
22  that might prevent you from testifying truthfully
23  and accurately today?
24  **A  No.**
25  Q  All right. Finally, if you need any

**Page 8**

1  breaks, just please just let me know. I will try
2  to stop probably every hour and 15 minutes or so
3  because that seems to be a good time. Everyone
4  gets a little tired at that point, so I'll try to
5  do that, but if there is a point in which you need
6  to take a break other than when a question is
7  pending, just let me know, and we'll take a break.
8  **A  Okay.**
9  Q  Oh, finally, technical issues. Now,
10  Ryan is very optimistic everything will go
11  smoothly, and I am every time a deposition starts
12  out. But there may be times when my voice cuts
13  out for some reason, the microphone or we have
14  some other technical issue, but I appreciate your
15  patience with those. And if my voice does cut
16  out, again, just ask me to restate the question.
17  **A  I will.**
18  Q  The court reporter usually does a good
19  job of that too.
20  All right. So can you describe for me
21  your education beyond high school?
22  **A  Can you be more specific?**
23  Q  Yes. Do you have any post high school
24  education? Did you go to college?
25  **A  No.**

HIGHLY CONFIDENTIAL
Transcript of Erin Herrera
Conducted on August 4, 2020

3 (9 to 12)

---

Page 9

1  Q  Did you have any other post high school
2  education, associate school, technical school,
3  anything like that?
4  A  On-the-job training, industry-specific
5  types of trainings, company trainings, but nothing
6  in a formalized institution.
7  Q  So when you first started, you consider
8  yourself an experienced sales executive at this
9  point?
10  A  Yes.
11  Q  How did you start out in sales?
12  A  In high school. I worked in the mall.
13  Q  Nice. After high school, can you
14  describe for me your first, kind of, few positions
15  in sales after that?
16  A  I worked retail for a long time and
17  then I entered into the world of wholesale in
18  apparel, transitioned into a short stint in
19  marketing and ad sales, and then into the jewelry
20  industry.
21  Q  When did you start getting into the
22  jewelry industry?
23  A  2013 -- I'd have to double-check to be
24  100 percent accurate, but yeah, 2013.
25  Q  And was that with a particular company?

Page 10

1  A  Yes, it was.
2  Q  What company was that?
3  A  Pandora Jewelry.
4  Q  How long did you work at Pandora?
5  A  Four or five years.
6  Q  What was your title there?
7  A  I had various titles in that company.
8  Q  Let's talk about the title you had at
9  the time you left Pandora. What was your title at
10  that point?
11  A  Senior key account manager.
12  Q  And what were your responsibilities as
13  senior key account manager?
14  A  I managed everything for a variety of
15  key accounts identified by Pandora. Sales,
16  marketing, et cetera.
17  Q  How long did you work at Pandora?
18  A  About four to five years. Again, dates
19  elude me. I'd have to reference something to be
20  sure.
21  Q  Would you have left Pandora then about
22  2017, 2018?
23  A  Yes.
24  Q  And did you become employed after that?
25  A  Yes, I did.

Page 11

1  Q  Now, where were you employed after
2  that?
3  A  Diamond Foundry.
4  Q  And what is the business of Diamond
5  Foundry?
6  A  Diamond Foundry is a lab-grown diamond
7  grower, and they also sell their own diamonds.
8  Q  When you say they are their own grower,
9  what do you mean by that?
10  A  They grow diamonds.
11  Q  And do you know the process by which --
12  do you know the process by which Diamond Foundry
13  grows diamonds?
14       MS. KOPINSKI: Objection to form.
15  A  Can you be more specific?
16  Q  Were these diamonds that were produced
17  by CVD or chemical vapor deposition?
18       MS. KOPINSKI: Objection to form. And
19  I'll caution the witness not to answer to the
20  extent that your answer would violate any
21  non-disclosure agreement.
22  Q  You can answer unless there is an issue
23  that was identified by your counsel.
24  A  I am not technical. I'm on the sales
25  side. So the specifics are not really something I

Page 12

1  can speak to.
2  Q  Do you know what a CVD-grown diamond
3  is?
4       MS. KOPINSKI: Objection. Form.
5  Foundation.
6  A  I know that a CVD diamond is a type of
7  lab-grown diamond.
8  Q  Now, Ms. Herrera, I've reviewed a
9  number of your documents, and you said you
10  consider yourself an experienced sales
11  representative; is that correct?
12       MS. KOPINSKI: Objection. Form.
13  Q  You can answer.
14  A  Yes.
15  Q  Okay. And, now, as I review your
16  documents, it seems like you are someone who takes
17  your career seriously?
18       MS. KOPINSKI: Objection. Form.
19  Q  Is that right?
20  A  Yes.
21  Q  And you care about your professional
22  reputation?
23  A  Yes.
24       MS. KOPINSKI: Objection. Form.
25  Q  And so when you are at a company such