NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CARNEGIE INSTITUTION OF WASHINGTON,**
*Plaintiff-Appellant*

**M7D CORPORATION,**
*Plaintiff*

**v.**

**FENIX DIAMONDS LLC,**
*Defendant-Cross-Appellant*

---

2024-1804, 2024-1824

---

Appeals from the United States District Court for the Southern District of New York in No. 1:20-cv-00200-JSR, Judge Jed S. Rakoff.

---

Decided: September 17, 2026

---

JULIE S. GOLDEMBERG, Morgan, Lewis & Bockius LLP, Philadelphia, PA, argued for plaintiff-appellant. Also represented by NATALIE A. BENNETT, Washington, DC.

LAURA A. LYDIGSEN, Crowell & Moring LLP, Chicago, IL, argued for defendant-cross-appellant. Also represented by DAWSON GERSHUNY, MARK HERBERT REMUS; MAXWELL

SNOW, General Corporate Counsel Professional Corporation, Chicago, IL.

---

Before REYNA, TARANTO, and STOLL, *Circuit Judges*.

REYNA, *Circuit Judge*.

Carnegie Institution of Washington and M7D Corporation sued Fenix Diamonds LLC for infringing two patents directed to methods for making lab-grown diamonds. The district court granted summary judgment of non-infringement for both patents, and Carnegie and M7D appealed to this court. During the appeal, the parties entered a consent stipulation of dismissal and the action returned to the district court to address issues related to Fenix's claim for attorney fees and expenses. The district court entered judgment in favor of Fenix and found Carnegie and M7D jointly and severally liable for $3,240,669.66 in attorney fees, expenses, and post-judgment interest. The district court, however, denied Fenix's claim for pre-judgment interest. Carnegie returns to this court challenging the award of attorney fees and expenses. Fenix cross-appeals the district court's denial of pre-judgment interest. We conclude that the district court did not abuse its discretion in its award of attorney fees and expenses, or in its denial of pre-judgment interest. We affirm.

## BACKGROUND

On January 9, 2020, Carnegie Institution of Washington ("Carnegie") and M7D Corporation ("M7D") (collectively, "plaintiffs") sued Fenix Diamonds LLC ("Fenix") for patent infringement in the United States District Court for the Southern District of New York. Plaintiffs asserted two patents: U.S. Patent Nos. 6,858,078 (the "'078 patent") and RE41,189 (the "'189 patent"). Carnegie owns both patents and granted M7D a license to the patents with the right to enforce them.

The asserted patents relate to methods for making lab-grown diamonds. Specifically, the patents disclose a method known as chemical vapor deposition, or CVD. Diamonds are a solid form of carbon where the carbon atoms are arranged in a crystalline, i.e., ordered and repeated, structure. The CVD method starts with a diamond seed, a microscopic slice of an old diamond that provides a template for growing a new, larger diamond. The diamond seed is placed in a chamber with hydrocarbon gases. Within the chamber, which is set to specific elevated temperature and pressure conditions, carbon atoms from the hydrocarbon gas attach to the diamond seed. The seed grows and eventually produces a new diamond. Diamonds grown using a CVD method can be characterized as (i) single-crystal, also known as monocrystalline, or (ii) polycrystalline. The CVD method can also produce non-diamond carbon material, such as graphite.

A. The ’078 and ’189 Patents

The ’078 patent issued in 2005 and is titled “Apparatus and Method for Diamond Production.” J.A. 91. It describes an improved method of growing diamonds using CVD methods. The specification explains that prior art CVD methods allowed diamonds to grow at only a few micrometers per hour because techniques to grow diamonds at higher rates resulted in undesirable structures, such as polycrystalline diamonds or non-diamond structures. J.A. 101, 1:52–59. The claimed method purportedly permits higher growth rates without the drawbacks associated with the prior art CVD methods. J.A. 101, 1:64–2:4. These higher growth rates are achieved by creating certain temperature and pressure conditions and by controlling the temperature gradients across the surface where diamond is growing. J.A. 91.

Claim 12 of the ’078 patent is representative and recites:

12. A method for diamond production, comprising:

> controlling temperature of a growth surface of the diamond such that all temperature gradients across the growth surface are less than 20°C.; and
>
> growing single-crystal diamond by microwave plasma chemical vapor deposition on the growth surface at a temperature of 900–1400°C.

J.A. 108, 15:31–37.

The ’189 patent issued in 2010 and is titled “Method of Making Enhanced CVD Diamond.” J.A. 111. Unlike the ’078 patent, which focuses on growing diamonds, the ’189 patent focuses on improving diamonds after they are grown. It discloses a method for improving the optical clarity of a single-crystal CVD diamond by annealing the diamond, i.e., treating it with heat. J.A. 113, 2:34–50. The claimed method involves encapsulating a diamond in an outer body, typically made from graphite, and using the outer body to apply high temperature and high pressure to the diamond. J.A. 113, 2:51–67. This process purportedly removes impurities from the diamond and transforms it “into a more perfect diamond.” J.A. 113, 2:47–50.

Claim 1 of the ’189 patent is representative and recites:

> 1. A method to improve the optical clarity of CVD diamond where the CVD diamond is single crystal CVD diamond, by raising the CVD diamond to a set temperature of at least 1500°C. and a pressure of at least 4.0 GPA outside of the diamond stable phase.

J.A. 114, 4:10–14.

The plaintiffs accused Fenix of importing and selling diamonds manufactured using the claimed methods of the two patents.

B. Claim Construction

On April 24, 2020, the district court held a claim construction hearing and on May 8, 2020, issued a claim construction order. The district court construed three terms that are subject to this appeal.

First, the district court broadly construed "growth surface" from the '078 patent to mean "the surface upon which *diamond growth* is occurring," to include areas of the surface where either single-crystal diamond growth or "polycrystalline growth" occurs. J.A. 256–58 (emphasis added). It rejected plaintiffs' narrower position that would limit "growth surface" to include "only a surface area where single-crystal diamond is growing." J.A. 257.

Second, the district court construed "single-crystal diamond" from the '078 patent and "single crystal CVD diamond" from the '189 patent to mean "a stand alone diamond [made by chemical vapor deposition] having *insubstantial non-monocrystalline growth*." J.A. 265–66 (emphasis added); J.A. 267. The district court rejected Fenix's proposed construction—a stand alone diamond [made by chemical vapor deposition] having *insubstantial polycrystallinity"*—because "[i]t is not clear how Fenix's construction, for example, would categorize an otherwise-single crystal diamond containing more than an insubstantial amount of twinned diamond or diamond-like carbon." J.A. 267 (emphasis added). It noted that "insubstantial non-monocrystalline growth" "correctly captures that polycrystalline diamond is not the only type of non-single crystal growth." *Id.*

C. Discovery

Fenix's accused diamonds are manufactured in India by Nouveau Diamonds LLC ("Nouveau") using a CVD method. Accordingly, during discovery, Carnegie sought discovery from Fenix concerning Nouveau's manufacturing process. J.A. 268–74. In particular, Carnegie requested documents,

Case 1:20-cv-2018-04JSR Document: 78 225-1 Page: 6 Filed 09/17/2026 Page 6 of 23



depositions, and an in-person inspection of Nouveau's diamond manufacturing facilities in India. J.A. 275–304.

In June 2020, Fenix produced an affidavit from Nouveau, supported by images and schematics, that described in detail Nouveau's manufacturing process. J.A. 501–20. Fenix also produced additional documents from Nouveau including purchase invoices, product descriptions, its diamond manufacturing recipe, images of manufacturing equipment and manufactured diamonds, and videos of the manufacturing process. J.A. 1467–88; J.A. 1490–95.

Nouveau also confirmed willingness to host an on-site inspection noting that "Nouveau's plant is in a COVID hotzone" and that "[t]he inspector will need to acknowledge and waive this risk." J.A. 1175–76. "[U]nable to make the necessary arrangements" for an inspection, plaintiffs' counsel negotiated to remotely depose a Nouveau representative in lieu of inspecting Nouveau's manufacturing facility. Appellant Br. 13 n.2, 22. The case proceeded to expert discovery, and the parties exchanged opening expert reports on September 18, 2020.

### D. Summary Judgment

After the close of discovery in October 2020, Fenix moved for summary judgment of non-infringement for both patents. On June 16, 2021, the district court granted summary judgment in favor of Fenix. J.A. 1064–95.

For the '078 patent, the district court found that no reasonable factfinder could conclude that Nouveau infringes claim 12's limitation that requires "grow[ing] single-crystal diamond . . . on the growth surface." J.A. 1085. The district court explained that the Nouveau affidavit and supporting images show "thick polycrystalline" growth on Nouveau's diamonds, J.A. 1078, and that Carnegie's own expert conceded that this growth was "some combination of polycrystalline diamond, polycrystalline graphite, and non-diamond carbon – not single-crystal diamond," J.A. 1085.

It reasoned that "because that growth is obviously not insubstantial," Nouveau does not grow[] single-crystal diamond . . . on the growth surface," as construed. J.A. 1078. It rejected plaintiffs' argument to the contrary because "one can plainly see that the non-monocrystalline growth is extensive." J.A. 1082 (citing J.A. 510–14).

The district court also noted that plaintiffs' infringement contention that Nouveau's diamonds have "insubstantial non-monocrystalline growth" was improperly premised on a construction of "growth surface" that contradicted the district court's construction of this term. Specifically, contrary to the district court's construction, which broadly construed "growth surface" to include single-crystal diamond and polycrystalline growth, plaintiffs' position would construe "growth surface" to "include only the surface on which single-crystal diamond growth is occurring" and is thus premised on a "disagreement" with the claim construction order. J.A. 1081–83.

As to the '189 patent, the district court granted summary judgment of non-infringement because plaintiffs failed to present any evidence that Fenix infringed the '189 patent and represented that they were no longer asserting this patent. J.A. 1091–95.

### E. Prior Appeal

On August 24, 2021, plaintiffs appealed to this court the district court's summary judgment ruling of non-infringement for the '078 patent. J.A. 1105–07. Plaintiffs challenged the district court's construction of "growth surface" and argued that there were genuine disputes of material fact as to whether Nouveau grows "single-crystal diamond" on the "growth surface." J.A. 2020–22; J.A. 2033–40.

During the appeal, M7D's financial situation purportedly declined. As a result, M7D and Carnegie filed an unopposed motion to dismiss and remand the appeal.

J.A. 144–45. Fenix conditioned its consent to the dismissal on including a request that the case be returned to the district court for resolution of Fenix's application for attorney fees, which was stayed pending resolution of the appeal. J.A. 1145. On September 5, 2023, without addressing the merits of the appeal, we dismissed the appeal and noted that the district court may act on remaining matters. J.A. 1108–09.

F. Motion for Attorney Fees and Expenses

The case returned to the district court, where Fenix moved for attorney fees under 35 U.S.C. § 285 and non-taxable expenses,[1] including expert witness fees.[2] J.A. 55.

On April 10, 2024, the district court granted the motion and awarded Fenix attorney fees and non-taxable expenses for work performed after July 14, 2020—one month after Carnegie and M7D received discovery from Nouveau. J.A. 1–18. The district court found that the case was "exceptional" under 35 U.S.C. § 285, "first and foremost, because of the substantive weakness of plaintiffs' arguments for infringement." J.A. 9. It explained that "[t]his is clear" from its order granting summary judgment of non-infringement. J.A. 9. On the '078 patent, the district court reasoned that plaintiffs' infringement position became objectively baseless after Fenix produced documents from Nouveau showing that its manufacturing process produces "extensive" non-monocrystalline growth because the claim constructions allow for only "insubstantial non-

---

[1] Non-taxable expenses are reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client. *See, e.g.*, *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 581 (9th Cir. 2010).

[2] While the parties were briefing Fenix's motion, M7D filed for bankruptcy and ceased operations. As a result, only Carnegie moved forward with the case.

monocrystalline growth." J.A. 9–12. The district court concluded that plaintiffs never put forth evidence to the contrary but rather advanced an infringement theory that was "flatly at odds" with the claim construction order. J.A. 9–12. On the '189 patent, the district court pointed to the fact that plaintiffs never served an expert report regarding infringement of this patent and made "no effort whatsoever" to support their infringement claim when opposing Fenix's motion for summary judgment. J.A. 10–11.

Separate and apart from the determination that plaintiffs pursed objectively baseless infringement claims, the district court explained that plaintiffs "litigated the case in an unreasonable manner" and acted "vexatiously." J.A. 13–16. The district court also exercised its inherent power to award non-taxable expenses. J.A. 13–14.

As to allocation of liability, the district court held Carnegie and M7D jointly and severally liable for the fees and expenses. J.A. 16–17. Regarding the amount of liability, the district court ordered Fenix to submit supplemental filings itemizing its requested fees and expenses. J.A. 17–18.

Fenix's supplemental filings identified $2,547,594.94 in attorney fees and $693,119.72 in non-taxable expenses. J.A. 20; J.A. 2356–72. The district court found these fees and expenses to be "reasonable" and thus awarded Fenix the full amount that it requested, totaling $3,240,669.66, plus post-judgment interest. J.A. 21. The district court, however, denied Fenix's request for pre-judgment interest. J.A. 21–22.

Carnegie now appeals the district court's grant of attorney fees and non-taxable expenses. Fenix cross-appeals the district court's denial of pre-judgment interest. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We first address Carnegie's appeal followed by Fenix's cross-appeal.

I

On appeal, Carnegie challenges four rulings: (1) the grant of attorney fees under 35 U.S.C. § 285 and (2) the grant of non-taxable expenses under the district court's inherent power. If an award of fees and expenses is proper, Carnegie also challenges (3) the award amount and (4) the joint and several liability determination.

We review "all aspects of a district court's § 285 determination" for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). We review a district court's award of non-taxable expenses, including expert fees, under its inherent power for abuse of discretion. *See AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1358 (Fed. Cir. 2017). Similarly, we review a district court's award of joint and several liability for abuse of discretion. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1305–06 (Fed. Cir. 2009). A district court abuses its discretion when it "'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (quoting *Highmark*, 572 U.S. at 563 n.2). "A factual finding is clearly erroneous if, despite some supporting evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks and citation omitted).

A. Attorney Fees Under 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional case" under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is

'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Here, the district court made two relevant findings: (1) plaintiffs pursued objectively baseless infringement positions as to each patent, and (2) plaintiffs litigated in an unreasonable manner. J.A. 8–17. Either finding can independently support an exceptional case determination, and we can affirm on either ground. *Octane Fitness*, 572 U.S. at 554; *Nova Chems. Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017) ("The substantive strength of a party's litigating position can—i.e., whether it is objectively baseless—independently support an exceptional-case determination."). Explained below, we affirm the exceptional case determination because the district court did not abuse its discretion in finding plaintiffs' infringement positions to be objectively baseless. We therefore do not reach the district court's determination that plaintiffs litigated in an unreasonable manner.

i. The '078 Patent

The district court determined that plaintiffs' infringement position regarding the '078 patent was objectively baseless because, following the evidence that Fenix produced from Nouveau, it became clear that plaintiffs could not show that Fenix infringed claim 12's limitation that requires "growing single-crystal diamond . . . on the growth surface," as construed. J.A. 9–13. Carnegie takes issue with this conclusion, arguing that plaintiffs' infringement position as to this limitation was reasonable.

A case may be exceptional when a party pursues infringement claims that become objectively baseless in view of a district court's claim construction order. For example, in *AdjustaCam*, we held that "AdjustaCam's suit became baseless after the district court's *Markman* order" because that order construed the claimed "rotatably attached" objects as "rotating over a single axis," yet AdjustaCam continued to accuse Newegg's cameras when there was "no

dispute that Newegg's cameras rotate about at least two axes." *AdjustaCam*, 861 F.3d at 1360–61. Similarly, in *Taurus*, we held that "no reasonable litigant in Taurus's position could have expected a finding" of infringement based on a term construed by the district court, noting that "Taurus appears to have understood, but merely disagreed with the court's construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326–29 (Fed. Cir. 2013).

Here, the district court did not abuse its discretion when it determined that plaintiffs' infringement position as to the '078 patent was objectively baseless in view of the district court's claim construction order.

Claim 12 requires "growing *single-crystal diamond* . . . on the *growth surface*." J.A. 108, 15:36–36 (emphases added). The district court construed "growth surface" to mean "the surface upon which diamond growth is occurring," to include the surface where single-crystal diamond growth and "polycrystalline growth" occurs. J.A. 256–58. It construed "single-crystal diamond" to mean "a stand alone diamond . . . having insubstantial non-monocrystalline growth," noting that "non-monocrystalline growth" captures multiple types of non-single crystal growth such as polycrystalline diamond and diamond-like carbon growth. J.A. 265–67. Taken together, these terms thus allow for both single-crystal diamond and polycrystalline growth on the "growth surface," so long as any polycrystalline growth, i.e., non-monocrystalline growth, is "insubstantial."[3]

---

[3] This appeal does not involve challenges to the district court's claim construction order but instead is about the reasonableness of plaintiffs' positions in view of the district court's claim construction order. *See, e.g.*, Oral Arg. at 2:39–3:09 (Carnegie's counsel stating, "we're not up here to discuss whether or not the claim construction was

At summary judgment, the district court concluded that evidence produced by Nouveau established that Nouveau's method does not infringe because there was no genuine dispute of material fact that its method resulted in "extensive" (i.e., more than "insubstantial") non-monocrystalline growth on the "growth surface" of the diamond. J.A. 1078–82 (citing J.A. 502, J.A. 476 ¶ 172). The district court thus granted summary judgment of non-infringement as to the '078 patent.[4]

When ruling on Fenix's motion for attorney fees, the district court rejected plaintiffs' argument that its infringement position as to the '078 patent was reasonable, instead concluding that its position was "flatly at odds" with its construction of "growth surface." J.A. 9. Specifically, the district court noted that plaintiffs' infringement theory relied on the narrower construction of "growth surface," i.e., that this surface includes only the surface where single-crystal diamond grows, which the district court previously rejected. *Id.*; *see also* J.A. 1083. It provided two examples of Dr. Michael Capano, plaintiffs' expert who opined on infringement, contradicting the claim construction order. J.A. 9–10. First, the claim construction order stated "growth surface" must "not exclude polycrystalline growth," J.A. 258, yet Dr. Capano testified "I do not interpret growth surface to include the non-diamond or

---

correct"), *available at* https://www.cafc.uscourts.gov/04-09-2026-2024-1804-carnegie-institution-of-washington-v-fenix-diamonds-llc-audio-uploaded/.

[4] The district court also granted summary judgment of non-infringement of the "controlling temperature" limitation from claim 12. But we need not discuss this limitation here because Fenix's motion for attorney fees under 35 U.S.C. § 285 argued that plaintiff's infringement position was frivolous as to only the "growing" limitation. *See* J.A. 1288–1318.

polycrystalline diamond that grows at the periphery of the single crystal diamond," J.A. 1519 ¶ 173. Second, the claim construction order stated "plaintiffs' proposed construction . . . would wrongly restrict the term to include only surface area where single-crystal diamond is growing," J.A. 257, but Dr. Capano testified "the growth surface is the region where single-crystal diamond grows . . . and does not includ[e] the surrounding areas," J.A. 1518 ¶ 167.

The district court thus concluded that plaintiffs "put forth no evidence whatsoever that contradicted [the images from Nouveau] or otherwise demonstrated infringement." J.A. 12–13. It then concluded that plaintiffs' litigating position as to the '078 patent was baseless and found the case exceptional under § 285. J.A. 13 (citing *AdjustaCam*, 861 F.3d at 1360–61).

Carnegie, however, argues that its infringement position was not in tension with the district court's construction of "growth surface" and thus was reasonable. Specifically, Carnegie argues that it was reasonable for Dr. Capano to interpret "growth surface"—construed as "the surface upon which *diamond* growth is occurring"—as "limited to the surface upon which diamond growth is occurring, and not to include non-diamond carbon." Appellant Br. 33 (emphasis in original). And because Dr. Capano "clarified" his infringement theory at deposition by explaining that he had "no evidence" that the extensive polycrystalline growth on Nouveau's diamond was "pure polycrystalline diamond free of non-diamond carbon or polycrystalline graphite," Carnegie argues that it was reasonable to exclude that growth from the "growth surface" when opining on infringement. Appellant Br. 34 (quoting J.A. 1852, 96:9–19). In other words, Carnegie does not dispute that "growth surface" includes "polycrystalline growth," but it argues that it was reasonable for Dr. Capano to conclude that the district court's construction of "growth surface" captures only diamond "polycrystalline growth." *See id.* We reject this argument.

Dr. Capano's "clarified" position is still ultimately premised on disagreement with the claim construction order because it excludes some types of polycrystalline growth from the growth surface, e.g., excluding polycrystalline growth when it is not "pure polycrystalline diamond." While the district court noted that "growth surface" captures "polycrystalline diamond," it plainly concluded that "'growth surface' must . . . not exclude *polycrystalline growth*." J.A. 258 (emphasis added). The district court could have used the more limiting term ("pure polycrystalline diamond") but chose not to do so. The district court gave no reasonable indication in its claim construction order that "growth surface"—which plainly includes "polycrystalline growth"—is limited to only one type of "polycrystalline growth," such as "pure polycrystalline diamond," and necessarily excludes other types of "polycrystalline growth," such as "polycrystalline graphite," as suggested by Dr. Capano. Thus, plaintiffs' infringement position, even as clarified by Dr. Capano deposition testimony, still runs contrary to the district court's construction.

Under these circumstances, we see no abuse of discretion with the district court's determination that the evidence proffered by Nouveau showed that plaintiffs' infringement position for the '078 patent was baseless in light of the claim construction order. *See AdjustaCam*, 861 F.3d at 1360–61; *Taurus*, 726 F.3d at 1326–29.[5]

---

[5] The district court did not err by confining the objective-baselessness portion of its inquiry to the evidence and arguments that Carnegie clearly advanced (after the claim construction), rather than construct and consider alternative positions Carnegie did not clearly advance. Notably, the claim language and the claim constructions, together with the key image of Fenix's production sample, raise the question whether Carnegie could have

ii. The ’189 Patent

Carnegie does not contend on appeal that its infringement position for the ’189 patent was reasonable after receiving the evidence from Nouveau. Nor could it. The ’189 patent requires an annealing process with a “pressure of at least 4.0 GPA.” J.A. 114, 4:10–14. The evidence from Nouveau confirmed that Nouveau’s process operates outside this pressure range. J.A. 503–04. As such, the district court observed that plaintiffs failed to present any evidence of infringement in expert reports or at summary judgment, “[i]n apparent recognition that any such effort would have been meritless.” J.A. 10.

We therefore hold that the district court did not abuse its discretion by determining that plaintiffs’ infringement positions were objectively baseless as of July 14, 2020. We affirm the determination that this case is exceptional under 35 U.S.C. § 285.

B. Non-Taxable Expenses Under Inherent Power

Carnegie argues that the district court abused its discretion in awarding non-taxable expenses under its

---

(1) accepted the claim constructions; (2) argued that the method step of “growing single-crystal diamond . . . on the growth surface” does not require growing only single-crystal diamond everywhere on the growth surface; and (3) urged that, as a consequence, the limitation is met when single-crystal diamond is grown on identifiable subsets of the surface even while other diamond is grown on other subsets of the surface (as might be so if the surface contained islands of single-crystal diamond areas bordered by interstitial areas of non-single-crystal diamond). But Carnegie did not clearly put forth that position in opposing (or appealing) summary judgment. On the fees motion, the district court therefore did not need to explore such a potential position.

inherent power. Carnegie contends that awarding sanctions under a district court's inherent power requires a higher threshold than awarding fees under § 285. Carnegie argues that the record does not support the finding of bad faith or vexatious conduct required under that heightened standard. We disagree.

To award non-taxable expenses, such as expert witness fees, a district court must invoke its inherent power. *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). A district court properly invokes its inherent power to award non-taxable expenses when a party engages in bad faith or vexatious conduct. *Id.*

Here, the district court made several findings that plaintiffs engaged in bad faith and vexatious conduct. First, the district court found that plaintiffs acted vexatiously by pressing forward with their infringement case that they "must have known" was objectively baseless after Fenix produced evidence from Nouveau. J.A. 20. Second, the district court found plaintiffs' representation that it did not have access to inspect Nouveau's facilities was deceptive and misleading, and made in bad faith. J.A. 14. Third, the district court found that plaintiffs acted vexatiously because they waited until the "eleventh hour" to drop the '189 patent, causing Fenix extra work. J.A. 9. Fourth, the district court pointed to M7D's presentation to third-party lenders that suggested the '078 patent was invalid and to M7D's improper assertion of privilege over the presentation to conceal it from discovery. J.A. 15–16. We cannot say the district court clearly erred in its assessment of the evidence as to these findings, and we therefore affirm the district court's decision to exercise its inherent power and award non-taxable expenses.

### C. Amount of Fees and Expenses

Carnegie next argues that, if awarded, we should reduce the amount of attorney fees and non-taxable expenses awarded to Fenix.

As to attorney fees, Carnegie argues that the district court "provided no oversight for Fenix's attorney bills" because it awarded an unreasonably high amount for "what should have been—under the [district] court's view—a simple summary judgment motion based on photographs" from Nouveau. Appellant Br. 45–46.

After determining that this case was exceptional under § 285, the district court required Fenix to submit supplemental documentation itemizing its fees. J.A. 17–18. The district court "carefully reviewed" Fenix's supplemental filings and concluded that the amount requested was "reasonable." J.A. 20–21. It explained, for example, that the "hourly rates of Fenix's attorneys and their paralegals are consistent with the legal market and the caliber of the law firms Fenix hired" and further explained that the billing entries were reasonable considering the "quantity and quality of the work" performed. J.A. 21. Analyzing hourly rates and the numbers of hours worked, a type of lodestar calculation of fees, provides a presumptively reasonable amount. *See Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). Even assuming Carnegie is correct that Fenix had a "simple" non-infringement position based on the evidence from Nouveau, Carnegie provides no legal support that limits a fee award on this basis. The district court did not fault Fenix for moving for summary judgment after expert discovery, i.e., when plaintiffs' infringements theories were fully disclosed, even though the evidence from Nouveau came months sooner. We see no error because, as the district court explained, Fenix was "without any real information about what plaintiffs intended to argue" before expert discovery. J.A. 11–12. Thus, we conclude that the amount of attorney fees awarded by the district court was not an abuse of discretion.

As to non-taxable expenses, Carnegie argues that the district court erred by shifting all expenses incurred after July 14, 2020, without attributing specific instances of bad

faith or vexatious misconduct as the "but-for" cause of the incurred expenses. Appellant Br. 47–48 (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017)). According to Carnegie, under *Goodyear,* the district court was required to engage in such a but-for analysis, which would have resulted in a lower award.

Carnegie is correct that the amount of a sanctions award must generally bear relation to the extent of the misconduct. Specifically, an award of sanctions for bad faith conduct must be "limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear*, 581 U.S. at 104. Additionally, "[i]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 110. For example, if a district court finds that a lawsuit would have terminated at a specific time, "then the court may grant all fees incurred from that moment on." *Id.* at 110–11.

That is what happened here. The district court found that "plaintiffs must have known" that their case was objectively baseless by July 14, 2020, and thus acted "vexatiously" by prolonging the case after this point. J.A. 20. In other words, plaintiffs' continued pursuit of the case after it became objectively baseless (according to the district court, July 14, 2020) constitutes relevant misconduct. But for this misconduct, Fenix would not have incurred any additional fees and expenses. The but-for causation standard is satisfied without parsing individual instances of misconduct. *See Goodyear*, 581 U.S. at 110–11. Thus, we conclude that the amount of non-taxable expenses awarded by the district court was not an abuse of discretion.

### D. Joint and Several Liability

Carnegie argues that the district court abused its discretion by holding Carnegie and M7D jointly and severally

liable. Specifically, Carnegie argues that this result improperly penalizes Carnegie for misconduct attributable solely to M7D. Carnegie argues that it was a passive patent owner with no role in strategic litigation decisions and instead participated in the lawsuit only for standing purposes and pursuant to its license agreement with M7D. For these reasons, Carnegie argues that the district court improperly relied on our precedent in *Evident Corporation v. Church & Dwight Company*, 399 F.3d 1310, 1316 (Fed. Cir. 2005).

In *Evident*, we affirmed a determination that a patent owner and its licensee were jointly and severally liable where the parties shared a "close, intertwined relationship." 399 F.3d at 1316. We explained that the parties were involved in the litigation together "almost from the beginning," and they shared counsel and arguments throughout the litigation. *Id.*

Relying on *Evident*, the district court held Carnegie and M7D jointly and severally liable. J.A. 16–17. As the district court noted, Carnegie and M7D were both involved in this case from the beginning, shared counsel, filed joint submissions, and presented unified arguments. J.A. 17. The license agreement between Carnegie and M7D reinforces their alignment. *Id.* The license entitles Carnegie to a portion of any recovery from a lawsuit, requires M7D to consult Carnegie throughout the suit, requires that Carnegie provide prior written consent before any voluntary final disposition of the suit, and requires Carnegie to "reasonably cooperate" in any litigation. J.A. 1660–61. Thus, Carnegie's arguments on appeal are belied by the record.

Carnegie tries to distinguish *Evident* by arguing that joint and several liability was appropriate there because the misconduct was attributable to both parties whereas, here, the misconduct is attributable to only M7D. Appellant Br. 59–60. Carnegie misreads *Evident*. There, our determination that the patent owner "cannot be said to be

innocent" did not stem from specific factual findings unique to the patent owner; rather, it stemmed from the conclusion that patent owner maintained a "close, intertwined relationship" with the licensee. *Evident*, 399 F.3d at 1316. Because the district court correctly recognized that the same relationship exists here, J.A. 17, we reject Carnegie's attempt to distinguish *Evident*.

Because we find no error in the district court's reliance on our precedent or its assessment of the evidence, we hold that it did not abuse its discretion in finding Carnegie and M7D jointly and severally liable.

II

We next address Fenix's cross-appeal concerning the district court's denial of prejudgment interest.

Fenix first requested prejudgment interest in a supplemental filing itemizing its fees and expenses, after the district court ruled on its motion for fees and expenses. J.A. 2370–71. In response, Carnegie argued that Fenix was not entitled to prejudgment interest because the "imposition of a fee award, by itself, renders any further exercise" of the district court's inherent power against Carnegie unwarranted, and Carnegie also challenged Fenix's proposed interest rate. J.A. 3058–59. On reply, Fenix did not address Carnegie's argument that no prejudgment interest should be awarded. J.A. 21–22 (citing J.A. 3069). Against this backdrop, the district court found that Fenix's request for prejudgment interest was "waived two times over" because (1) its briefing in support of its motion for attorney fees and non-taxable expenses did not request pre-judgment interest and (2) its supplemental filings that detailed the amount of fees and expenses did not respond to Carnegie's argument that pre-judgment interest should not be awarded. *Id.*

In cases of "bad faith or other exceptional circumstances," a district court has discretion under its "inherent

equity power" to award prejudgment interest on an award made under § 285. *Mathis v. Spears*, 857 F.2d 749, 759, 761 (Fed. Cir. 1988). A district court must exercise its discretion "in light of all the facts and circumstances" but is under no obligation to award prejudgment interest. *Id.* at 761. We review denials of prejudgment interest for abuse of discretion. *Id.* We apply the same standard when reviewing a district court's decision to find waiver. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1132 (Fed. Cir. 2019).

Fenix challenges the district court's waiver finding. Fenix argues that requesting prejudgment interest in its initial motion for attorney fees would have been "premature" because, before an exceptional-case finding and accounting, "there was no basis (total amount of fees) to which Fenix could have applied a prejudgment interest rate and calculated a sum certain for what Carnegie ultimately owed." Appellee Br. 73. Relying on *Jones v. UNUM Life Insurance Company of America*, 223 F.3d 130 (2d Cir. 2000), Fenix argues that it was not required to request prejudgment interest until a sum certain could be determined. *Id.*

*Jones* dealt with prejudgment interest on a claim for disability benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001. *Jones*, 223 F.3d at 139–40. While *Jones* held that the "request for prejudgment interest was premature" because the underlying "claim for further disability payments had yet to be determined," *id.* at 141, Fenix cites no binding authority that applies a similar rule to requests for prejudgment interest under 35 U.S.C. § 285. We see no principled reason to do so here. Thus, Fenix presents no valid reason why it was permissible to have waited to make its request until it could calculate a sum certain. Nothing prevented Fenix from generally requesting prejudgment interest in its fee motion while reserving the sum certain calculation for later. Because district courts have wide discretion whether to award

prejudgment interest under § 285, we conclude that the district court did not abuse its discretion in finding Fenix's request to be belated under the circumstances of this case and thus denying it.

## CONCLUSION

On Carnegie's appeal, we affirm the district court's judgment holding Carnegie and M7D jointly and severally liable to Fenix for Fenix's attorney fees and non-taxable expenses incurred after July 14, 2020—totaling $3,240,669.66, plus post-judgment interest. On Fenix's cross-appeal, we affirm the district court's denial of prejudgment interest on the award of fees and expenses.

**AFFIRMED**

## COSTS

Each party shall bear its own costs for this appeal and cross-appeal.